1  LAW OFFICE OF B. KWAKU DUREN
   B. KWAKU DUREN, ESQ. - SB# 147789
2  2033 WEST COMPTON BLVD.
   COMPTON, CA. 90220
3  Tel:  (323) 290-6146
   Fax: (323) 290-1645
4  Email:  bkwakuduren@gmail.com

5

6

7

8

9
                    UNITED STATES DISTRICT COURT
10
             FOR THE NORTHERN DISTRICT OF CALIFORNIA
11

12

13

14  HOOMAN PANAH [J-556OO], an          )    **Case No. _____**
    Individual,                         )
15                   Plaintiff,         )
                                        )    **COMPLAINT FOR DAMAGES AND**
16       vs.                            )    **INJUNCTIVE RELIEF, arising from**
                                        )    **the following causes of action:**
17                                      )
    STATE OF CALIFORNIA DEPART-         )    **1.  Violation of Civil Rights:**
18  MENT OF CORRECTIONS AND             )        **California Civil Code § 43 & § 51.7**
    REHABILITATION, a Public Entity,    )
19  KEVIN R. CHAPPELLE, in his Individ- )    **2)  Violation of 42 USC §1983:**
    ual and Official Capacities; Correctional )    **Deprivation of 4th Amendment**
20  Officer STEVE ODOM, in his Individual )       **Rights Under Color of State Law**
    and Official Capacities; Lt. JACKSON, )
21  in his Individual and Official Capacities; )  **3)  Violation of 42 USC §1983:**
    Lt. LUNA, in his Individual and Official )       **Deprivation of  8th Amendment**
22  Capacities; Correctional Officer HAM- )         **Rights Under Color of State Law**
    ILTON; in his Individual and Official )
23  Capacities; Correctional Officer J. AN- )   **4)  Violation of 42 USC §1983:**
    DERSON, in her Individual and Official )       **Negligent Training and/or Super-**
24  Capacities; and Does 1- 50, Inclusive, )       **vision and/or Unconstitutional**
                                        )          **Customs, Procedures, Policies &**
25                   Defendants.        )          **Practices**
                                        )
26                                      )
                                        )
27  _____     )    **DEMAND FOR JURY TRIAL**

28  //

    *Complaint for Damages, etc.*

1    Plaintiff HOOMAN PANAH [hereinafter "Plaintiff" or "PANAH"]  alleges as

2  follows:

3                              **INTRODUCTION**

4    1.    Plaintiff is an inmate on the death row, at the San Quentin State Prison who

5  was a victim of an *"attempted murder,"* which was either, or both, instigated by indivi-

6  dual prison guards, and/or abetted by their inaction, gross negligence, and/or deliberate

7  indifference, and/or alleged, in cooperation with his prisoner attacker, who was a well-

8  known, officially documented  member of the *"Aryan Brotherhood."* This action seeks

9  monetary damages and injunctive relief, to remedy the deprivation of Plaintiff's federal

10  and state constitutional rights.

11                          **JURISDICTION AND VENUE**

12    2.    This Court has jurisdiction over the federal civil rights claims under 28

13  U.S.C. §§ 1331 and 1343. Declaratory and/or injunctive relief is authorized under 28

14  U.S.C. §§ 2201 and 2202. This Court has supplemental jurisdiction over any state law

15  claims pursuant to 28 U.S.C. § 1367(a).

16    3.    Venue is proper in this Court under 28 U.S.C. § 1391(b) because Defen-

17  dants reside in, or employed in San Quentin Prison, and all incidents, events, and occur-

18  rences giving rise to this action, occurred at San Quentin Prison, in the County of Marin,

19  State of California.

20    4.    On or about **February 19, 2012**, Plaintiff filed an Institutional Administra-

21  tive Claim [i.e., a CDCR 602], stating the following:

22    *"On **February 4, 2012** I was stabbed & almost killed by Inmate Barrett, a known
Aryan Brotherhood (AB) gang member. By staff  actions and inactions: (1)
23    Barrett was improperly Classified to my Group [sic] Yard #1 despite his 20+
years history of being an AB member* [Continued Attachment] *who murdered his
24    cellmate in  Calipatria at behest of AB leader. He had many other attacks &
weapons possessions. (2) C. O. Steve  Odum provoked and instigated the
25    attempts to murder me by posting my Iranian heritage & case on his "Wall of
Shame," maintained in his First Tier Office more than a year before supervisors
26    Ordered it down due to numerous constant complaints. (3) Mandatory Unit
Security Procedures, if  followed would have kept the large steel knife from
27    getting on the yard; (a) Inmates and their clothing are hand-searched before
exiting the cell; (b) are under constant observation while cuffed behind their
28    backs as they make their way to the Rapid-scan X-ray machine downstairs; ( c)*

*Complaint for Damages, etc.*                                    Page 2 of  16

*carried items go through the Rapidscan while they receive a body-scan by a hand-held metal detector; (d) clothing roll is hand-ed back to them & they are escorted out the door to the yards under constant observation. If staff performed these mandatory tasks, no large steel knives can get on the yards. All inmates are mandated to be subjected to the same security procedures; this is strong evidence C.O's were involved in intentionally trans-porting the knife to the yard for the assassin, or they allowed him to carry it through the security network as part of a conspiracy to murder me for Odum, et al & he encouraged inmates to openly bully me."*

*(1) Do an independent investigation to identify all inmates and staff who are in any manner responsible for my getting stabbed; discipline them all & supply me the names & ID Numbers of all staff who sat on the Classification Committee [Continued Attachment] which approved Barrett for Grade-A and Placement on Group Yard #1, rather than "walk-alone." (2) Supply me names & Employee ID Numbers of all staff: (a) who searched Barrett in his cell for yard release; (b) who operated Rapidscan machine; ( c) operated hand-held metal detector wand; (d) (sic) searched Exercise Yards before yard; (d) all Yard Gunners; (e) Emer-gency Responders; (f) staff who responded with lethal and non-lethal weaponry (specify which) (g) staff who used either one; (h) staff who blew whistles; (I) staff who sounded automatic personal alarms; (j) sounded other alarms; (k) all staff who worked in East block the February 3, 2012 & February 4, 2012(l) all staff who in any manner were involved in placing Inmate Barrett or Kennedy on yard on Feb. 4, 2012; (n) identify where steel for weapon came from; (o) pay me and my mother....five million dollars each in damages; (p) place all requested names with this 602 so they are all fully exhausted for a civil suit....Thank you very much (ID SQSP Medical Staff)"*

5.      Having exhausted all required *"prison administrative remedies,"* Plaintiff has thus satisfied all applicable statutory requirements prior to commencing this federal civil rights action.

## **PARTIES**

6.      At all times material to this complaint, Plaintiff was, and is, a prisoner in SAN QUENTIN STATE PRISON [herein "SQSP"], a facility under the direct supervis-ion and control of the State of California Department of Corrections and Rehabilitation.

7.      At all times material to this complaint, defendant STATE OF CALIFOR-NIA DEPARTMENT OF CORRECTIONS AND REHABILITATION (hereinafter "SCDCR") was, and is, an agency of the State of California, the employer of the herein-named individual Defendants, managers, supervisors, and/or correctional officers/ employees of the SCDCR, and liable for the wrongful conduct, unconstitutional policies and practices herein alleged.

//

**Complaint for Damages, etc.**

8.   At all times material to this complaint, defendant KEVIN R. CHAPPELLE [hereinafter "Warden" or "CHAPPELLE"], sued herein in his Individual and Official Capacities, was duly employed as the Warden of SQSP, and the individual officially responsible for the operations, including training, supervision, and disciplinary policies and practices applicable to all correctional officers at SQSP.

9.   At all times material to this complaint, defendant STEVE ODOM, [hereinafter "ODOM" or "Defendant"] sued herein in this Individual and Official Capacities, was a correctional officer, and duly employed as such at SQSP.

10.   At all times material to this complaint, defendant Lt. JACKSON [hereinafter "JACKSON" or "Defendant"] sued herein in his Individual and Official Capacities, was a correctional officer, supervisor or manager, and duly employed as such at SQSP.

11.   At all times material to this complaint, defendant Correctional Officer Lt. LUNA [hereinafter "LUNA" or "Defendant"], sued herein in his Individual and Official Capacities, was a was a correctional officer, supervisor or manager, and duly employed as such at SQSP.

12.   At all times material to this complaint, defendant Correctional Officer HAMILTON [hereinafter "HAMILTON" or "Defendant"], sued herein in his Individual and Official Capacities, was duly employed as such at SQSP.

13.   At all times material to this complaint, defendant Correctional Officer J. ANDERSON [hereinafter "ANDERSON " or "Defendant"], sued herein in her Individual and Official Capacities, was duly employed as such at SQSP.

14.   Plaintiff is ignorant of the true names and capacities of other defendants sued herein as DOES 1- 50, Inclusive, and therefore sues these defendants by such fictitious names.  Plaintiff will amend this complaint to allege their true names and capacities when ascertained.

15.   Plaintiff is informed and believes and based thereon alleges that each of the fictitiously named defendants is responsible in some manner for the damages sustained by Plaintiff as alleged herein, and that such damages as herein alleged were proximately

*Complaint for Damages, etc.*

caused by such defendants, acting in concert, as either agents, representatives, employees acting within the course and scope of such agency and employment, or co-conspirators or co-defendants, in doing, or participating in, the wrongful things before and hereinafter alleged.

16.   On information and belief, Plaintiff alleges that each of the Defendants designated herein as a DOE is legally responsible in some manner for the occurrences alleged in this Complaint, and directly involved in unlawfully causing the injuries and damages to Plaintiff as alleged in this Complaint.

17.   At all times mentioned in this Complaint, unless otherwise alleged, each Defendant was the agent, employee, and/or co-conspirator of every other Defendant, and in doing the acts alleged in this Complaint, was acting within the course, scope, and authority of that agency or employment, and in furtherance of the conspiracy to violate Plaintiff's constitutional, statutory, and common law rights, with the knowledge and consent of each of the other Defendants.

18.   Plaintiff is informed and believes, and on that basis further alleges that the one or more of the individual Defendants continue to interfere with, and conceal other Administrative *"appeals"* he has filed regarding the herein described *"violent assault" and "attempted murder,"* and other subsequently filed appeals regarding his health and safety within the institution.

## GENERAL FACTUAL ALLEGATIONS

19.   For approximately one year prior to the herein incident, described more specifically below, Plaintiff was subjected to terrorist threats and harassments at the encouragement and behest of Defendant ODUM that culminated in the **February 4, 2012** stabbing, and attempted murder, of Plaintiff, by an officially  documented *"White Supre-macist Inmate"* [i.e., Inmate Barrett] ,during which incident Plaintiff was stabbed through the back, sustained damage to his liver, lung,  physical pain and emotional injury, and the need for psychological therapy for his *"flashbacks"* regarding this attempt to kill him.

//

*Complaint for Damages, etc.*                                        Page 5 of  16

20.     During this *"unprovoked attack"* Plaintiff ran from his attacker, and his attacker chased him, and continued to try and stab him and to finish him off.

21.     This incident happened in plain view of the guard tower. The gunner in the guard tower, Defendant ANDERSON watched, but did not raise her gun, while the attacker, a known member of the *"Aryan Brotherhood,"* chased PANAH around the yard with his weapon for several minutes before being subdued, and PANAH, bleeding profusely, collapsed to the ground.

22.     After this *"unprovoked attack,"* and *"attempted murder,"* while Plaintiff was on the East Block yard, his serious injuries required that he be rushed to Marin General Hospital (MGH), where he was admitted to the Intensive Care Unit. The initial stab wound was on the right side of his back. The knife nicked his liver and punctured his lung; had the knife cut a few millimeters further into his liver, PANAH may not have survived the attack. He was kept at MGH for four days before being transferred back to the San Quentin infirmary.

23.     Plaintiff's injuries suggest that the blade used in the attack was smooth, unlike that of common prison *"shanks,"* and it had a handle, like that of a larger knife. One of the concerns Plaintiff has is how a weapon such as the one used in the attack was brought into the institution and onto the yard.

24.     It is prison procedure that when inmates come onto the yard from their cells, they undergo several levels of security that include a *"strip search,"* a *"Rapid Scan X-ray"* machine check of any belongings, and a metal detecting wand. It would be extremely difficult, if not nearly impossible, to bring such a weapon onto the yard without *"prison staff assistance,"* that would *"by-pass"* the normal screening process.

25.     Additionally, based on information obtained by Plaintiff's appellate counsel, it appears that the attack on Plaintiff on the yard may have been, at least in part, a result of a climate perpetuated, or at a minimum, tolerated by *"prison staff"* that created hostility against Plaintiff among segments of the inmate population.

//

**Complaint for Damages, etc.**                                    Page 6 of  16

26.    Specifically, Defendant ODOM occupied an office on the First Tier and had placed clippings about different inmates and their cases, including Plaintiff's, on a wall in his  office. The wall was named the *"Wall of Shame."*

27.    Another concern of Plaintiff is that the institution has not confirmed whether or not photos were taken of Plaintiff's injuries or the *"crime scene."* During a visit by Plaintiff's attorney and an investigator to the institution on **February 16, 2012**, neither counsel nor the investigator were permitted to take photos of Plaintiff's injuries. However, Plaintiff's attorney was allowed to visibly inspect Plaintiff's injuries.

28.    On **February 17, 2012**, Plaintiff was advised by Prison staff that the reason for the *"attempt on his life,"* and whether the attacker acted alone were still under *"investigation."* As a result, Plaintiff's *"yard privileges"* were changed and he was *"re-assigned"* to a single-man exercise yard, which resembles a small cage with no direct sunlight, until the *"completion of the investigation."* Also, Plaintiff's clothing and legal materials were not returned to him during this meeting; he was advised that these materials were be treated as *"evidence"* since they had blood on them.

29.    On **April 4, 2012**, during a follow-up meeting, Plaintiff was essentially told the same information again and he was continued on the single-man yard.

30.    As of the time of filing the herein lawsuit, it is still unknown whether any photos have been taken by SCSP Staff, as part of  their *"internal investigation,"* or what evidence has been preserved, as the Defendants have entirely refused to provide to Plaintiff or his attorney with any such *"evidence,"* or even the *"results of their investigation,"* notwithstanding numerous requests by Plaintiff, his attorney, and others on his behalf.

31.    Plaintiff's appellate counsel has made numerous inquiries of the authorities at SQSP, including Defendant CHAPPELLE into, the circumstances surrounding the attack and expressed  to them concerns  based on counsel's investigation into the incident. Counsel's inquiries have consisted of phone calls as well as letters, requesting a meeting with the authorities to discuss Plaintiff's safety and other concerns identified by counsel's investigation. To date, Plaintiff's counsel has not heard back from the institution.

*Complaint for Damages, etc.*

32.     In addition to counsel's inquiries, Plaintiff and his family have also made numerous inquiries to the institution about the investigation, including the Prison Warden, Defendant CHAPPELLE. For instance, on **April 17, 2012**, Plaintiff made specific written requests for materials connected to his attack, pursuant to a Request for Inspection of Public Records Act by way of California Department of Corrections and Rehabilitation (CDCR) and pursuant to Marsy's Law, the California Victims' Bill of Rights Act of 2008.

33.     On **May 8, 2012**, Plaintiff received a letter advising that his Public Records Request was denied and that *"Marsy's Law did not apply"* to him or the attack against him, although the Marin County District Attorney thought otherwise and stated so in a letter to Plaintiff dated **July 7, 2012.**

34.     On **May 10, 2012**, the SQSP investigation was allegedly completed.

35.     On **May 15, 2012**, Plaintiff was advised that pursuant to a Confidential Memorandum authored by Defendant JACKSON on **March 8, 2012**, Plaintiff, may have *"safety concerns"* on any *"group yard"* due to his *"case factors."* The reasoning offered by the institution makes little, if any, sense, prior to this incident, Plaintiff had been on a *"group yard"* at the institution, without incident, for over 16 years. He has always had the same *"case factors,"* and he was fine on the *"group yard."* Now, without any reason-able explanation, was being confined to a *"single- man yard,"* and even though he was the *"victim"* in this attack, it appears that he was the one being punished for it.

## SPECIFIC ALLEGATIONS

36.     Plaintiff is informed and believes, and on that basis alleges that Defendants have mis-reported, mis-characterized, and minimized the seriousness of the herein *"violent assault"* and *"attempted murder"* as an *"inmate fight"* and *"battery with a weapon,"* not only to the United States Department of State but also to state officials. This conduct by SQPS can only be reconciled with an effort by SQPS to *"cover-up"* the seriousness of the incident and the apparent complicity of prison staff.

37.     Plaintiff is informed and believes, and on that basis further alleges that, in fact, one or more of individual Defendants conspired with Inmate Barrett to *"murder"*

*Complaint for Damages, etc.*

Plaintiff, and have continued to conceal, and/or suppress, evidence of their "conspiracy"

to unlawfully murder Plaintiff.

## FIRST CAUSE OF ACTION

### *Violation of Civil Rights (California Civil Code § 43 & 51.7)*

### **[Against Each and Every Defendant]**

38.     Plaintiff re-pleads and incorporates herein by reference all of the allegations

contained in paragraphs 1-37, inclusive as though fully set forth herein.

39.     California Civil Code § 43 provides, in relevant, as follows:

*"Besides the personal rights mentioned or recognized in the Government Code, every person has, subject to the qualifications and restrictions provided by law, the right of protection from bodily restraint or harm..."*

40.     California Civil Code § 51.7(a) provides, in relevant part, as follows:

*"All persons within the jurisdiction of this state have the right to be free from any violence....on account of...any characteristic listed or defined in subdivision (b) or (e) of Section 51"* [i.e., *"religion, ancestry, national origin"*].

41.     California Civil Code § 52 and  § 52.1 authorize civil actions for actual and

exemplary damages, equitable relief for denial of the rights provided in section 51.7, and

interference by threats, intimidation or coercion, with those constitutional and other rights

provided by law.

42.     The actions, and/or omissions, of each of the herein defendants were carri-

ed out under color of law, subjected or caused Plaintiff to be subjected to the threat of

violence, deprivation of state and federal rights, privileges, and immunities secured by the

California Constitution and federal civil rights laws, including without limitation the

right to be free from state instigated violence, cruel and unusual punishment, and the

violation of Plaintiff's civil rights under state and federal law.

43.     By engaging in the *"unreasonable and unconstitutional conduct"* alleged in

the herein Complaint, the herein Defendants, and DOES 1-50, violated the provisions of

said state civil statutes, which provide for injunctive and other appropriate equitable

relief, the award of compensatory money damages, costs of the litigation, and reasonable

attorneys' fees in an amount to be fixed by the court.

*Complaint for Damages, etc.*

44.     As a further direct and foreseeable result of the *"wrongful and/or unconsti-*
*tutional conduct"* of said Defendants, Plaintiff suffered non-economic losses, including
without limitation physical and psychological injuries, including but not limited to fear,
nervousness, severe mental and emotional distress, shock, anxiety, humiliation, anger,
frustration, loss of dignity, and emotional and mental depression, all to plaintiff's
damages in an amount in excess of $1,000,000.00, and/or according to proof at trial.

45.     Under California Civil Code § 52(b), Plaintiff is also entitled to exemplary
damages and a civil penalty of twenty-five thousand dollars ($25,000) against each of the
individual Defendants as well as an award of attorneys' fees.

46.     As a further proximate result of the defendants acts and omissions, Plaintiff
was subjected to an *"unprovoked attack"* while Plaintiff  was on the East Block yard by a
known *"White Supremist Inmate."* The initial stab wound was on the right side of  his
back, and the knife also nicked his liver and punctured his lung; had the knife cut a few
millimeters further into his liver, PANAH may not have survived the attack.

47.     The above-described acts and omissions of the individually named SQSP
officers and managers, including DOES 1-50, were done in a deliberate, reckless, callous,
and intentional manner so as to cause injury and damage to Plaintiff, and/or committed
with a conscious and reckless disregard of Plaintiff's civil and constitutional rights. Such
acts were sufficiently reckless, despicable, malicious, fraudulent, and/or oppressive
within the meaning of California Civil Code section 3294, entitling Plaintiff to an award
of punitive damages against the individual Defendants only in an amount to be
determined at trial.

## SECOND CAUSE OF ACTION

### *[Violation of 42 USC §1983 - Deprivation of 4th and 8th*

### *Amendment  Rights Under Color of State Law]*

### (Against Each and Every Named Defendant and DOES 1-10, Inclusive)

48.     Plaintiff re-pleads and incorporates herein by reference all of the allegations
contained in paragraphs 1-37 and 39-44,  Inclusive, as though fully set forth herein.

**Complaint for Damages, etc.**                                              Page 10 of  16

49.    Penal Code § 2650 provides, in relevant part, as follows:

*"The person of a prisoner sentenced to imprisonment in the state prison....is under the protection of the law, and any injury to his person, not authorized by law, is punishable in the same manner as if he were not convicted or sentenced."*

50.    Penal Code § 2652 provides, in relevant part, as follows:

*"It shall be unlawful to....allow any lack of care whatever which would injure or impair the health of the prisoner, inmate or person confined..."  Any person who violates the provisions of this section or who aids, abets, or attempts in any way to contribute to the violation of this section shall be guilty of a misdemeanor."*

51.    California Code of Regulations, § 3271 [Responsibility of Employees], provides, as follows:.

*"Every employee, regardless of his or her assignment, is responsible for the safe custody of the inmates confined in the institutions of the department."*

52.    California Code of Regulations, § 3341.5 [Segregated Program Housing Units], provides, in relevant part,  as follows:.

*"Special housing units are designated for extended term programming of inmates not suited for general population. Placement into and release from these units requires approval by a classification staff representative (CSR).....( c) Security Housing Unit (SHU). An inmate whose conduct endangers the safety of others or the security of the institution shall be housed in a SHU. (1) Assignment criteria. The inmate has been found guilty of an offense for which a determinate term of confinement has been assessed or is deemed to be a threat to the safety of others or the security of the institution. (2) Length of SHU Confinement. Assignment to a SHU may be for an indeterminate or for a fixed period of time. (A) Indeterminate SHU Segregation. 1.  An  inmate  assigned to a security housing  unit  on  an indeterminate SHU term shall be reviewed by a classification committee at least every 180 days for consideration of release to the general inmate population.....2. Except as provided in section 3335(a), section 3378(d) and subsection (c)(5), a validated prison gang member or associate is deemed to be a severe threat to the safety of others or the security of the institution and will be placed in a SHU for an indeterminate term."*

53.    At all times relevant, Inmate Barrett was a self-proclaimed, and well documented, member of the *"Aryan Brotherhood."*  At the time that he attempted to kill Plaintiff, he had been improperly assigned to the *"General Population,"* in violation of the CCR, requiring that he remain segregated in the Adjustment Center's Security Housing Unit (SHU) Program for an indeterminate term; he should have never been released to the General Population, or mixed with other inmates, so as to prevent violent attacks on inmates, since he had a lengthy prison record of assaulting/stabbing other inmates, possessing dangerous/deadly weapons, and had in the past attempted to murder other inmates.

**Complaint for Damages, etc.**                                                        Page 11 of  16

54.     Yet in 2009, the Prison's Classification Committee placed Inmate  Barrett in the General Population.

55. The herein described *"statutes"* and *"regulations"* were designed to protect inmates, like Plaintiff, from harm, caused by inmates so classified as Inmate Barrett.

56.     The herein defendants violated each of the herein described regulations and/or statutes, and their  individual actions, or failures to act, proximately caused the kind of injury that said regulations and/or statutes were designed to protect the plaintiff (and those like him) from harm from inmates so classified as Inmate Barrett.

57. Plaintiff is informed, and believes, and on that basis, alleges that the herein described *"unprovoked attack"* on Plaintiff by inmate Barrett was substantially motivated by, or proximately resulted from, said defendants' deliberate indifference, intentional or negligent failure or refusal, to comply with said regulations and/or statutes.

58.     As a direct, legal, and proximate cause thereof, Plaintiff suffered and con-tinues to suffer, pain and suffering, severe mental and emotional distress, fear, loss of dignity, harm to his reputation, including, but not limited to, violation of his civil and constitutional rights, loss income, medical expenses, and legal fees that may be incurred in pursuit of justice, including injunctive and/or other equitable relief, and monetary damages for violations of his civil and constitutional rights, in an amount in excess of $1,000,000.00 or an amount to be determined at trial.

59.     The actions, and/or omissions, of each of the herein defendants were carried out under *"color of law,"* subjected or caused Plaintiff to be subjected to an *"unprovoked attack"* by Inmate Barrett while Plaintiff  was on the East Block yard; his serious injuries required that he be rushed to Marin General Hospital (MGH), where he was admitted to the Intensive Care Unit. The initial stab wound was on the right side of  his back. The knife nicked his liver and punctured his lung; had the knife cut a few millimeters further into his liver, he may not have survived the attack.

60.     By engaging, under color of law, in the unreasonable and unconstitutional conduct alleged in the herein Complaint, the herein Defendants, and DOES 1-10, violated Plaintiff's Constitutional rights, including but not limited to the Fourth and Eighth Amendments to the United States Constitution.

61.     As a further direct and foreseeable result of the wrongful conduct of said Defendants, Plaintiff suffered non-economic losses, including without limitation physical and psychological injuries, including but not limited to fear, nervousness, severe mental

**Complaint for Damages, etc.**

and emotional distress, shock, anxiety, humiliation, anger, frustration, loss of dignity, and emotional and mental depression, all to plaintiff's damages in an amount in excess of $1,000,000.00, and/or according to proof at trial.

62.     The above-described acts and or omissions of the individually named SQSP officers and supervisors, including DOES 1-10, were done in a deliberate, reckless, callous, and intentional manner so as to cause injury and damage to Plaintiff, and/or committed with a conscious and reckless disregard of Plaintiff's civil and constitutional rights. Such acts were sufficiently reckless, despicable, malicious, fraudulent, and/or oppressive within the meaning of California Civil Code § 3294, entitling Plaintiff to an award of punitive damages against the individual Defendants in an amount to be determined at trial.

63.     Plaintiff is also entitled to, and does seeks, injunctive, and or declaratory, relief from the herein described unconstitutional conduct arising from unconstitutional customs, practices, policies, and/or procedures [or lack thereof] of the Defendant State of California SQSP, which authorized, condoned, or ratified the unconstitutional conduct, policies, customs, procedures, and practices, described herein.

## THIRD CAUSE OF ACTION

*[Violation of 42 USC §1983: Negligent Training and/or Supervision*
*and/or Unconstitutional Customs, Procedures, Policies, Practices]*
**[Against Defendant State of California SQSP and Defendants CHAPPELLE,**
**JACKSON and LUNA]**

64.     Plaintiff re-pleads and incorporates herein by reference all of the allegations contained in paragraphs 1-37 and 39-44, and 49-57, as though fully set forth herein.

65.     Plaintiff is informed, and believes, and on that basis, alleges that the herein described *"unprovoked attack"* on Plaintiff was substantially motivated by, or proximate-ly resulted from, the unconstitutional customs, practices, policies and/or procedures of the public entity defendant, Defendant State of California SQSP, and Defendant CHAPPEL-LE, which, in effect, authorized, condoned, and/or ratified plaintiff's *"unprovoked attack"* by a known *"White Supremist Inmate,"* failed or refused to conduct a procedurally compliant investigation, took action to conceal or mis-characterize the incident, and destroyed and/or concealed evidence related to said *"unprovoked attack."*

66.     Plaintiff is further informed, and believes, and on that basis, alleges that his resulting injuries and damages were proximately caused, in part, by the herein alleged unconstitutional *"customs," "practices,"* and/or <u>constitutionally inadequate</u> *"policies,"*

*Complaint for Damages, etc.*                                      Page 13 of  16

and/ or *"procedures"* effectuated by the systematic condoning, ratifying, adopting, and/ or explicitly authorizing such unconstitutional customs, practices, and/or constitutionally inadequate policies, and/ or procedures, by the herein defendant's policy-makers and/or management officials.

67.     Plaintiff is further informed, and believes, and on that basis, alleges that said individual defendants conspired to effect a *"cover-up"* of the herein alleged unconstitutional conduct, including but not limited to Defendant's constitutional inadequate *"customs," "practices "policies,"* and/ or *"procedures."*

68.     In light of the different duties assigned to the herein specifically-named individual correctional officers, the need for more or different training is so obvious, and the inadequacy so likely to result, and have resulted, in the violation of Plaintiff's constitutional rights, that the herein policymakers can reasonably be said to have been *"deliberately indifferent"* to the need for more specific training of said individual correctional officers.

69.     An important and relevant General Policy objective of the CDC, is set forth in California Code of Regulations, Title 15 § 3270, which states, in part, the following:

> *"[e]ach employee must be trained to understand how physical facilities, degree of custody classification, personnel, and operative procedures affect the maintenance of inmate custody and security."*

70.     As a direct, legal, and proximate cause of the grossly negligent, unreasonable, and unconstitutional customs, practices, policies and/or procedures, as alleged herein, Plaintiff suffered, and continues to suffer, pain and suffering, severe mental and emotional distress, fear, loss of dignity, harm to his reputation, including, but not limited to, violation of his civil and constitutional rights, loss income, medical expenses, and legal fees that may be incurred in pursuit of justice, including injunctive and/or other equitable relief, and monetary damages for violations of his civil and constitutional rights, in an amount in excess of $1,000,000.00 or an amount to be determined at trial.

71.     Plaintiff is also entitled to, and does seeks, injunctive, and or declaratory, relief from the herein described unconstitutional customs, practices, policies, and/or procedures [or lack thereof] of the Defendant State of California SQSP, which authorized, condoned, or ratified the unconstitutional conduct, policies, customs, described herein.

//

*Complaint for Damages, etc.*

**PRAYER FOR RELIEF**

**ON THE FIRST CAUSE OF ACTION:**
**Violation of Civil Rights (California**
**Civil Code § 43 & 51.7)**
**[Against Each and Every Defendant]**

1.      For General Damages in the amount of no less than $1,000,000.00

2.      For exemplary damages;

3.      For a civil penalty of twenty-five thousand dollars
        ($25,000) against each of the individual Defendants;

4.      For an award of attorneys' fees pursuant to California Civil Code §52(b)(3);

5.      For Injunctive and/or Declaratory Relief; and -

6.      For cost of suit herein incurred;

**ON THE SECOND CAUSE OF ACTION**
**( Violation of 42 USC §1983: Deprivation of**
**  Plaintiff's 4th and 8th Amendment**
**  Rights Under Color Of State Law:)**
**[Against Each and Every Named Defendant**
**and DOES 1-10, Inclusive]**

1.      For General Damages in the amount of no less than $1,000,000.00;

2.      For Special Damages;

3.      For Punitive Damages against the Individual Defendants Only;

4.      For injunctive, and or declaratory, relief from the herein described unconstitutional
        conduct of the Defendant State of California SQSP;  and -

5.      For Statutory Attorneys fees, if any incurred.

**ON THE THIRD CAUSE OF ACTION**
**(Violation of 42 USC §1983: Negligent**
**Training and/or Supervision and/**
**or Unconstitutional Procedures,**
**Policies, Practices and Customs)**
**[Against Defendant State of California**
**SQSP and Defendant CHAPPELLE]**

1.      For General Damages in the amount of no less than $1,000,000.00;

2.      For Special Damages;

*Complaint for Damages, etc.*                                          Page 15 of  16

3.    For injunctive, and or declaratory, relief from the herein described unconstitutional customs, practices, policies, and/or procedures [or lack thereof] of the Defendant State of California SQSP;

4.    For Injunctive Relief; and -

5.    For reasonable Attorneys fees, if any incurred.


Date: January 13, 2014                    Respectfully submitted by:

                                          LAW OFFICE OF B. KWAKU DUREN:


                                          /s/    B. Kwaku Duren
                                          B. KWAKU DUREN, Attorney
                                          for Plaintiff HOOMAN PANAH

-----------------------------------------------------------------------------------------

## DEMAND FOR JURY TRIAL

Plaintiff hereby does demand a Jury Trial on all issues of disputed material facts.


Date: January 13, 2014                    Respectfully submitted by:

                                          LAW OFFICE OF B. KWAKU DUREN:


                                          /s/    B. Kwaku Duren
                                          B. KWAKU DUREN, Attorney
                                          for Plaintiff HOOMAN PANAH



-----------------------------------------------------------------------------------------

## VERIFICATION

    I know the contents of the herein COMPLAINT FOR DAMAGES, etc. of my own personal knowledge, and as to those matters stated on information and belief, I also believe them to be true and correct. I declare under the penalty of perjury under the laws of the State of California that all of the foregoing factual statements are true and correct. Executed this 13th day of January, 2014.

                                          /s/ Hooman Panah
                                          HOOMAN PANAH [J-556OO]

*Complaint for Damages, etc.*                              Page 16 of  16