# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| HOOMAN PANAH,<br><br>         Plaintiff,<br><br>   v.<br><br>STATE OF CALIFORNIA DEPT. OF CORRECTIONS AND REHABILITATION, et al.,<br><br>        Defendants. | Case No.  14-cv-00166-BLF<br><br>**ORDER:**<br>**(1) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT;**<br>**(2) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS;**<br>**(3) DENYING DEFENDANTS' MOTION FOR A MORE DEFINITE STATEMENT**<br><br>[Re:  ECF 9, 10] |

Plaintiff Hooman Panah, an inmate on death row at California's San Quentin State Prison, brings suit against various defendants, including the California Department of Corrections and Rehabilitation ("CDCR"), Warden Kevin Chappelle, and several correctional officers.

On February 4, 2012, Plaintiff was stabbed by a fellow inmate, Barrett. Plaintiff alleges that the individual Defendants, all prison employees or officials, "conspired with inmate Barrett to murder Plaintiff, and have continued to conceal, and/or suppress, evidence of their conspiracy to unlawfully murder Plaintiff." Compl. ¶ 37.[1] Plaintiff also contends that the individual Defendants have attempted to interfere with and conceal the administrative appeals he has attempted to file with regard to this attack and other grievances. *See* Compl. ¶ 18. Plaintiff thus brings suit, alleging violations of the California Civil Code, 42 U.S.C. § 1983, and for negligent training and supervision. Defendants jointly move for summary judgment, contending that Plaintiff has failed

---

[1] Both Plaintiff's Complaint and joint opposition to Defendants' motions contain extensive bolding, italicization, and capitalization. Unless otherwise noted in this Order, the Court omits these stylistic differences in any direct quotations of Plaintiff's filings.

United States District Court
Northern District of California

to exhaust his administrative remedies as required by the Prison Litigation Reform Act. Defendants further move to dismiss, or, in the alternative, for a more definite statement.[2]

For the reasons below, the Court GRANTS IN PART AND DENIES IN PART Defendants' motion for summary judgment. The Court finds that Defendants have not established undisputed facts upon which the Court can determine as a matter of law that Plaintiff has failed to exhaust his administrative remedies, or that Plaintiff's failure to so exhaust should not be excused. However, having reviewed the language of the 602-administrative appeal that Plaintiff claims he attempted to file (hereinafter the "602-appeal"), the Court finds that Plaintiff has failed to exhaust a number of the claims he now attempts to bring in this Complaint, and has further failed to exhaust against four of the individual Defendants: Warden Chappelle, Lieutenant Luna, Lieutenant Jackson, and Officer Hamilton. The Court therefore GRANTS summary judgment on behalf of those four Defendants.

With regard to the remaining three Defendants, CDCR and Officers Odum and Anderson, the Court GRANTS IN PART AND DENIES IN PART Defendants' motion to dismiss, and DENIES Defendants' motion for a more definite statement. CDCR is DISMISSED with prejudice. As to Plaintiff's state law claims asserted in his first cause of action against Officers Odum and Anderson, the Court DENIES the motion to dismiss with regard to Plaintiff's Bane Act claim

---

[2] Plaintiff's Complaint and joint opposition to Defendants' instant motions were filed in this action by counsel, B. Kwaku Duren. A review of Mr. Duren's State Bar of California Status History reveals that on November 17, 2014, after this motion was fully briefed, his status became "Not Eligible to Practice Law." *See* http://members.calbar.ca.gov/fal/Member/Detail/147789 (last accessed March 16, 2015). Mr. Duren has not informed this Court that he is currently ineligible to practice law in California, despite being listed as attorney of record on this case.

Mr. Duren was disciplined by the Bar on May 10, 2013, which included a 30-day suspension. On July 10, 2013, he returned to "Active" status. All of counsel's filings in this action were made during the period in which, according to his Bar Status History, Mr. Duren was an Active member of the Bar – the Complaint was filed on January 12, 2014, and the joint opposition was filed on May 27, 2014. *See* ECF 1, 17. As such, the Court will adjudicate this motion as briefed.

However, because Mr. Duren is currently not eligible to practice law in California, the Court will provide Plaintiff time to either find new counsel, elect to pursue this action pro se, or file a statement with the Court that Mr. Duren has been returned to active status by the State Bar and will remain counsel of record. *Cf.*, *e.g.*, *Bailey v. Ramirez*, 2006 WL 1050163, at *1 (E.D. Cal. Apr. 20, 2006) (permitting a petitioner to substitute himself as pro se counsel after his attorney was declared ineligible to practice law in California).

against Officer Odum, but GRANTS the motion to dismiss as to all other state law claims, with leave to amend. As to Plaintiff's second cause of action for violations of his Fourth and Eighth Amendment rights, also against Officers Odum and Anderson, the Court GRANTS the motion to dismiss, with leave to amend.

## I.    BACKGROUND

### A.    Plaintiff's Complaint

For purposes of the motion to dismiss or for a more definite statement, the Court treats Plaintiff's factual allegations in the Complaint as true.

Plaintiff is an inmate on death row at San Quentin State Prison. On February 4, 2014, he was attacked and stabbed by a fellow inmate, Barrett, while both were in the prison's exercise yard. Compl. ¶¶ 19-21. Barrett is a white supremacist and member of the Aryan Brotherhood. Compl. ¶¶ 4, 19. During the attack, Plaintiff ran from his attacker, and Barrett chased him around the yard. Compl. ¶ 20. This happened in view of the guard tower, where one of the individual Defendants, Officer Anderson, was stationed as a "gunner." Compl. ¶ 21. Anderson saw the attack but did not raise her gun or shoot Barrett. *See id.* At the time of the stabbing attack, Plaintiff alleges that Barrett had been improperly assigned to the general prison population, and should have instead been segregated in the Security Housing Unit ("SHU") program, because of his "lengthy prison record of assaulting/stabbing other inmates, possessing dangerous/deadly weapons, and . . . attempt[ing] to murder other inmates." Compl. ¶ 53.

The stabbing injured several of Plaintiff's internal organs, as well as caused him to require psychological therapy to deal with flashbacks. Compl. ¶¶ 19, 22. The injuries suffered by Plaintiff "suggest that the blade used in the attack was smooth, unlike that of common prison shanks," Compl. ¶ 23, and Plaintiff contends that it would be "extremely difficult, if not nearly impossible, to bring such a weapon onto the yard without prison staff assistance." Compl. ¶ 24.

For approximately one year prior to the stabbing attack, Plaintiff alleges that he was "subjected to terrorist threats and harassments at the encouragement and behest of" another individual Defendant, Officer Odum. Compl. ¶ 19. Officer Odum placed clippings of different inmates and their cases on a wall in his office in the prison – the wall was named the "Wall of

1   Shame." Compl. ¶ 26. Officer Odum included on that wall clippings about Plaintiff's case. *Id.*

2       Plaintiff states that, on February 19, 2012, fifteen days after his stabbing, he filed an

3   Institutional Administrative Claim Form (a "CDCR 602-appeal form") regarding the attack.

4   Compl. ¶ 4. Plaintiff alleges that the individual defendants have interfered with and concealed his

5   administrative appeals filed "regarding the herein described violent assault and attempted murder,

6   and other subsequently filed appeals regarding his health and safety within the institution." Compl.

7   ¶ 18. Additionally, Plaintiff alleges that "one or more of [the] individual Defendants conspired

8   with Inmate Barrett to murder Plaintiff, and have continued to conceal, and/or suppress, evidence

9   of their conspiracy to unlawfully murder Plaintiff." Compl. ¶ 37.

10       **B.       Defendants' Alleged Undisputed Facts in Support of Summary Judgment**

11       Defendants contend that Plaintiff has not properly exhausted his internal prison

12   administrative remedies, as required under California law and the Prison Litigation Reform Act

13   ("PLRA"). Under California law, an inmate must submit an Inmate/Parolee Appeal form,

14   commonly known as a 602-appeal form, within thirty calendar days of the event or decision about

15   which the grievance is being brought. *See* 15 Cal. Code Regs. ("CCR") § 3084.2; *see also id.* §

16   3084.8(b). The inmate must also identify the personnel against whom a complaint is being made,

17   or, if the inmate does not have the requisite identifying information about a staff member, include

18   "any other available information that would assist the appeals coordinator in making a reasonable

19   attempt to identify" the staff member. *Id.* § 3084.2(a)(3). An inmate must submit a signed original

20   appeal form and supporting documents to the appeals coordinator. *Id.* § 3084.2(b). To be

21   considered properly exhausted, an appeal must be subjected to three levels of review. *Id.*§

22   3084.1(b). Appeals may be rejected or cancelled by the appeals coordinator for a number of

23   reasons, outlined in Section 3084.6(b) and (c).

24       Defendants state that Panah has not attached a copy of a 602-appeal form to his Complaint,

25   nor provided an appeal log number for the grievance he allegedly filed. *See* Defs.' Mot. for Summ.

26   J., ECF 9 at 2.[3] Defendants include with their motion a declaration from M. Davis, who holds the

27   _____

28   [3] Plaintiff has, however, attached a signed copy of a 602-appeal form to the declaration he filed
     with his joint opposition. *See* Panah Decl. Exh. A; *see also* 15 CCR §3084.2(b) (requiring Plaintiff

United States District Court
Northern District of California

United States District Court
Northern District of California

1   position of Inmate Appeals Coordinator at San Quentin State Prison, in which Davis states that a

2   602-appeal filed at San Quentin is "screened to ensure that it complies with the applicable rules

3   and regulations." Davis Decl., ECF 9-1 ¶ 6. If the appeal fails to comply, it is "rejected and the

4   original 602-appeal form is returned to the inmate with an Inmate/Parolee Screening Form," which

5   explains to the inmate the reason that his appeal was rejected. *Id.* Whether an appeal is accepted or

6   rejected, "every appeal that [the appeals] office receives is assigned a log number or is otherwise

7   tracked." *Id.*

8        Davis states that all grievances, and CDCR's responses to those grievances, are tracked in

9   a computerized system called the Inmate Appeals Tracking System, or IATS. *See* Davis Decl. ¶ 8.

10  Davis claims that "[e]very inmate appeal—including appeals rejected for procedural deficiencies

11  at the screening stage—is logged into IATS at every level of review." *Id.* San Quentin "keeps an

12  electronic record of each inmate appeal that has proceeded through" the first two levels of review,

13  as well as every appeal that has been screened for procedural deficiencies. *Id.* ¶ 9.

14       Davis states that she conducted a computerized IATS search for appeals submitted by

15  Plaintiff concerning the allegations he has raised regarding the February 4 stabbing. *See id.* ¶ 10

16  Exh. A (a copy of Plaintiff's IATS Level I and Level II report). The computerized search reveals

17  that San Quentin has logged nine appeals submitted by Plaintiff since January 2012, *see id.* ¶ 11,

18  but that "no appeal was received related to the [] claims in Panah's Complaint. There is no record

19  indicating that the appeals office ever received a 602-appeal that contained the language

20  referenced in Panah's Complaint." *Id.* ¶ 12. Plaintiff does not dispute that there is no logged 602-

21  appeal; instead, he claims his 602-appeal was purposefully not processed by Defendants. *See, e.g.*,

22  Panah Decl. ¶¶ 2, 7.

23

24

---

25  to file a signed appeal). Plaintiff contends that he attempted to file this document and was
    prevented from doing so by the affirmative inaction of prison officials. This dispute is the subject

26  of Defendants' motion for summary judgment for failure to exhaust administrative remedies.

27  Regardless of the dispute over administrative exhaustion, this 602-appeal contains the grievances
    that Plaintiff tried to file with prison officials. Thus, for purposes of determining whether Plaintiff

28  has exhausted certain claims, or has exhausted against certain individual Defendants, the Court
    considers this 602-appeal as containing the entirety of Plaintiff's administrative grievance.

United States District Court
Northern District of California

## II.     LEGAL STANDARDS

### A.     Motion for Summary Judgment on the Failure to Exhaust

In this circuit, a defendant may raise an affirmative defense that a prisoner plaintiff has failed to properly exhaust available prison administrative remedies through a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. *See Albino v. Baca*, 747 F.3d 1162, 1169 (9th Cir. 2014) (overruling *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003), which previously held that a defendant should allege failure to exhaust prison administrative remedies through an "unenumerated Rule 12(b) motion rather than a motion for summary judgment"). If the Court denies the motion for summary judgment on the question of exhaustion, "disputed factual questions relevant to exhaustion should be decided by the judge, in the same manner a judge rather than a jury decides disputed factual questions relevant to jurisdiction and venue." *Id.* at 1170-71.[4] If the district court determines that the prisoner has "exhausted available administrative remedies, that administrative remedies are not available, or that a prisoner's failure to exhaust available remedies should be excused, the case may proceed on the merits." *Id.* at 1171.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). A court draws all reasonable inferences in favor of the party against whom summary judgment is sought. *See, e.g.*, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

In the context of prisoner administrative exhaustion, the defendant bears the burden of proving a failure to exhaust. *See, e.g.*, *Brown v. Valoff*, 422 F.3d 926, 936 (9th Cir. 2005). The defendant must first show that an available administrative remedy existed, and that the prisoner failed to exhaust that remedy. *See, e.g.*, *Meredith v. Ada Cnty. Sheriff's Dep't*, 2014 WL 4793931, at *5 (D. Idaho Sept. 25, 2014). The burden then shifts to the plaintiff to bring forth evidence

---

[4] The Court may, if necessary, hold an evidentiary hearing in order to resolve questions of credibility or determine disputed facts. *See, e.g.*, *Meredith v. Ada Cnty. Sheriff's Dep't*, 2014 WL 4793931 at *4 (D. Idaho Sept. 25, 2014) (citing *Lake v. Lake*, 817 F.2d 1416, 1420 (9th Cir. 1987)).

United States District Court
Northern District of California

1  "showing that there is something in his particular case that made the existing and generally

2  available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d 1162, 1173.

3  Conclusory and speculative testimony, however, is insufficient to defeat summary judgment. *See,*

4  *e.g.*, *Soremekum v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). The district court

5  "does not make credibility determinations or weigh conflicting evidence, and is required to draw

6  all inferences in a light most favorable to the nonmoving party." *First Pac. Networks, Inc. v. Atl.*

7  *Mut. Ins. Co.*, 891 F. Supp. 510, 513–14 (N.D. Cal. 1995).

8      **B.**    **Motion to Dismiss for Failure to State a Claim**

9      A motion to dismiss under Rule 12(b)(6) concerns what facts a plaintiff must plead on the

10  face of his complaint. Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint

11  must include "a short and plain statement of the claim showing that the pleader is entitled to

12  relief." Any complaint that does not meet this requirement can be dismissed pursuant to Rule

13  12(b)(6). A "short and plain statement" demands that a plaintiff plead "enough facts to state a

14  claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007),

15  which requires that "the plaintiff plead factual content that allows the court to draw the reasonable

16  inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662,

17  678 (2009). The Court must "accept factual allegations in the complaint as true and construe the

18  pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire &*

19  *Marine Ins. Co.*, 519, F.3d 1025, 1031 (9th Cir. 2008). The Court, however, "need not accept as

20  true allegations contradicted by judicially noticeable facts," nor "assume the truth of legal

21  conclusions merely because they are cast in the form of factual allegations." *Kane v. Chobani,*

22  *Inc.*, 973 F. Supp. 2d 1120, 1127 (N.D. Cal. 2014) (citing *Fayer v. Vaughn*, 649 F.3d 1061, 1064

23  (9th Cir. 2011) (per curiam)).

24      **C.**    **Motion for a More Definite Statement**

25      A motion for a more definite statement, brought pursuant to Rule 12(e), addresses

26  pleadings that are "so vague or ambiguous that a party cannot reasonably be required to frame a

27  responsive pleading." Fed. R. Civ. P. 12(e). Motions under Rule 12(e) are not appropriate when

28  the complaint merely lacks detail, and should be denied "where the complaint is specific enough to

United States District Court
Northern District of California

apprise the defendant of the substance of the claim being asserted." *QTL Corp. v. Kaplan*, 1998 WL 303296, at *2 (N.D. Cal. Feb. 2, 1998); *see also Famolare, Inc. v. Edison Bros. Stores, Inc.*, 525 F. Supp. 940, 949 (E.D. Cal. 1981) ("A motion for a more definite statement should not be granted unless the defendant cannot frame a responsive pleading.").

## III.   DISCUSSION

### A.   Defendants' Motion for Summary Judgment on Plaintiff's Alleged Failure to Exhaust Administrative Remedies

Under the Prison Litigation Reform Act of 1995 ("PLRA"), a prisoner must exhaust his administrative remedies within the prison system before the prisoner may bring a federal suit seeking redress for the same harm or harms. *See* 42 U.S.C. § 1997e. The Supreme Court has held that a prisoner must "properly exhaust" the prison's available administrative remedies, which means that the prisoner must comply with the prison's "deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90-91, 93 (2006) ("We are persuaded that the PLRA exhaustion requirement requires proper exhaustion."). The Supreme Court has held that there is "no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). A defendant must prove that a prisoner failed to exhaust *each* of his claims, however – if a prisoner has some claims that were properly exhausted and some that were not, those that were properly exhausted may go forward, while those not properly exhausted must be dismissed. *See, e.g.*, *id.* at 220-24.

#### 1.   Whether Administrative Remedies Were "Effectively Unavailable" to Plaintiff

Plaintiff claims that he filed a 602-appeal on February 19, 2012, stating the following:

> On February 4, 2012 I was stabbed & almost killed by Inmate Barrett, a known Aryan Brotherhood (AB) gang member. By staff actions and inactions: (1) Barrett was improperly Classified to my Group [sic] Yard #1 despite his 20+ years history of being an AB member] who murdered his cellmate in Calipatria at behest of AB leader. He had many other attacks & weapons possessions. (2) C. O. Steve Odum provoked and instigated the attempts to murder me by posting my Iranian heritage & case on his "Wall of Shame," maintained in his First Tier Office more than a year before supervisors Ordered it down due to numerous constant complaints. (3) Mandatory Unit Security Procedures, if followed would have

kept the large steel knife from getting on the yard; (a) Inmates and their clothing are hand-searched before exiting the cell; (b) are under constant observation while cuffed behind their backs as they make their way to the Rapid-scan X-ray machine downstairs; (c) carried items go through the Rapidscan while they receive a body-scan by a handheld metal detector; (d) clothing roll is hand-ed back to them & they are escorted out the door to the yards under constant observation. If staff performed these mandatory tasks, no large steel knives can get on the yards. All inmates are mandated to be subjected to the same security procedures; this is strong evidence C.O's were involved in intentionally trans-porting the knife to the yard for the assassin, or they allowed him to carry it through the security network as part of a conspiracy to murder me for Odum, et al & he encouraged inmates to openly bully me."

(1) Do an independent investigation to identify all inmates and staff who are in any manner responsible for my getting stabbed; discipline them all & supply me the names & ID Numbers of all staff who sat on the Classification Committee which approved Barrett for Grade-A and Placement on Group Yard #1, rather than "walk-alone." (2) Supply me names & Employee ID Numbers of all staff: (a) who searched Barrett in his cell for yard release; (b) who operated Rapidscan machine; (c) operated hand-held metal detector wand; (d) (sic) searched Exercise Yards before yard; (d) all Yard Gunners; (e) Emergency Responders; (f) staff who responded with lethal and non-lethal weaponry (specify which) (g) staff who used either one; (h) staff who blew whistles; (I) staff who sounded automatic personal alarms; (j) sounded other alarms; (k) all staff who worked in East block the February 3, 2012 & February 4, 2012; (l) all staff who in any manner were involved in placing Inmate Barrett or Kennedy on yard on Feb. 4, 2012; (n) identify where steel for weapon came from; (o) pay me and my mother....five million dollars each in damages; (p) place all requested names with this 602 so they are all fully exhausted for a civil suit....Thank you very much (ID SQSP Medical Staff)"

Compl. ¶ 4.[5]

Plaintiff does not dispute that, to be properly exhausted under California law, a 602-appeal

must be subject to three levels of review. *See* 15 CCR § 3084.1(b). It is undisputed that Plaintiff's

602-appeal did not go through three levels of review. Defendants claim this is because Plaintiff

never filed the 602-appeal, while Plaintiff claims it is because he attempted to file the 602-appeal

but it was intentionally not processed. *See* Panah Decl. ¶¶ 2, 7, 13, 14, 16. Thus, the question

before the Court is not whether Plaintiff properly exhausted, as it is clear he did not, but whether

---

[5] This text, included in Plaintiff's Complaint, matches the text included in the signed 602-appeal form Plaintiff attaches to his declaration. *See* Panah Decl. Exh. A. This appeal form does not include any marks from the prison noting that any official received or reviewed the form, however.

1    or not Plaintiff brings forth sufficient evidence to create a triable question of fact that "there is

2    something in [this] particular case that made the existing and generally available administrative

3    remedies *effectively unavailable to him*." *Albino*, 747 F.3d 1162, 1172 (emphasis added).

4         This circuit has considered several cases in which a plaintiff alleged that administrative

5    remedies were unavailable to him. *Cf. Albino*, 747 F.3d 1162, 1173 (compiling cases). When a

6    prison has made a necessary appeal form "nearly unobtainable," *Nunez v. Duncan*, 591 F.3d 1217

7    (9th Cir. 2010), or when a prisoner did not have access to the necessary forms within the time

8    limit for appeal, *Marella v. Terhune*, 568 F.3d 1024 (9th Cir. 2009) (per curiam), this circuit has

9    held that the administrative remedy was effectively unavailable to the prisoner, and excused the

10   prisoner from the exhaustion requirement. Similarly, this circuit has found remedies effectively

11   unavailable when a prison official failed to reach the merits of a grievance "for reasons

12   inconsistent with or unsupported by applicable regulations." *Sapp v. Kimbrell*, 623 F.3d 813, 823-

13   24 (9th Cir. 2010); *see also Meredith*, 2014 WL 4793931, at *5 (D. Idaho Sept. 25, 2014)

14   ("Administrative remedies will be deemed unavailable and exhaustion excused if . . . the prison

15   improperly processed an inmate's grievance, . . . or if prison staff took any similar actions that

16   interfered with an inmate's efforts to exhaust.").

17        Other circuits have also found that a showing that a prisoner was somehow prevented from

18   exhausting his administrative remedies renders those remedies effectively unavailable. *See Kaba*

19   *v. Stepp*, 458 F.3d 678 (7th Cir. 2006) (holding that when a prison official does not respond to a

20   properly filed grievance, or otherwise undertakes affirmative misconduct to prevent a prisoner

21   from exhausting, the remedy is unavailable to the prisoner); *Hammett v. Cofield*, 681 F.3d 945

22   (8th Cir. 2012) (stating that a prisoner needs to make a showing that prison officials prevented him

23   from exhausting in order to be excused from the exhaustion requirement); *Turner v. Burnside*, 541

24   F.3d 1077 (11th Cir. 2008) (a warden tearing up a prisoner's formal grievance and threatening the

25   prisoner with adverse consequences if he continued to pursue relief made remedies unavailable);

26   *see also Lineberry v. Federal Bureau of Prisons*, 923 F. Supp. 2d 284 (D.D.C. 2013) (holding that

27   an inmate who was not provided the appropriate forms to file a grievance was excused from the

28   PLRA's exhaustion requirement).

United States District Court
Northern District of California

1    Defendants bring forth evidence which shows that San Quentin's IATS computerized

2 tracking system of inmate complaints did not include any 602-appeal filed by Plaintiff with regard

3 to any of the claims brought forth in his current federal lawsuit. The IATS statistics sheet included

4 as Exhibit A to the Davis Declaration shows no filing on February 19, 2012. *See* Davis Decl. Exh.

5 A at 1-2. The statistics sheet is in chronological order, and shows that Plaintiff filed a staff

6 complaint that was received for Level II review on February 2, 2012, two days prior to his

7 stabbing, but that there is no record of  other staff complaint filed in the IATS system by Plaintiff

8 until after February 21, 2013.[6]

9    Here, Plaintiff was well aware of the forms he needed to file grievances, and filed them

10 regularly. *See generally* Davis Decl. Exh. A. He alleges, instead, that his attempt to file a 602-

11 appeal on February 19, 2012, was thwarted through the affirmative misdeeds of prison officials –

12 that it was, in effect, deliberately not processed. Thus, evidence of those 602-appeals that were

13 logged into IATS is not determinative of Plaintiff's exhaustion defense. If his 602-appeal

14 regarding the incident was deliberately not processed, it would obviously not appear in his IATS

15 report. *Cf.* Davis Decl. ¶ 6.

16    Denying summary judgment based on the mere allegation of wrongdoing by prison staff

17 would be inconsistent with this circuit's precedent and the purpose of the PLRA. *See, e.g.*,

18 *Woodford*, 548 U.S. 81, 84 (discussing the purpose of the PLRA being, in part, to "reduce the

19 quantity . . . of prisoner suits"). However, Plaintiff buttresses this allegation with evidence that he

20 attempted to file not only this 602-appeal, but several other 602-appeals in the past that were

21 misfiled, lost, or otherwise went unresponded to by prison officials. *See generally* Panah Decl.,

22 ECF 18.

23    Panah states in his declaration that there were several occasions in which he filed a 602-

24

25 [6] On this IATS report, complaints or other appeals that were rejected by the appeals coordinator do
not show an exact date. It seems that only complaints or appeals that were received for Level I
26 review, i.e. those that were deemed to have complied with prison regulations for filing, are
denoted with an exact date upon which they were received. *Cf.* Davis Decl. ¶ 7. Because the read-
27 out logged all 602-appeals in chronological order regardless of whether they were accepted for
review or rejected, however, the IATS report shows clearly that no staff complaint form filed by
28 Plaintiff was logged into the system between February 2, 2012, and February 21, 2013. *See* Davis
Decl. Exh A at 1.

United States District Court
Northern District of California

1    appeal, but to which he received no response. *See, e.g.*, Panah Decl. ¶ 5 ("[O]n December 12,

2    2011, I received the original of the 602, which the Appeals Office had alleged they had 'never

3    received.'"); *see also* Exhs. B, C, and E (correspondence between Plaintiff and prison staff,

4    including the appeals coordinator and warden, regarding the prison's failure to respond to his

5    complaints). In this correspondence, Plaintiff states that documents he provided with one of his

6    appeals were not returned to him. *See, e.g.*, *id.* Exh. E at 3 ("Amongst the documents paper works

7    that contained my appeals [] I provided you with a 2 page statements from C/O D. Deseo I believe

8    with a 2-23-2011 date on it. *That document was never returned to me.*") (emphasis added).

9    Plaintiff specifically references his February 19, 2012 appeal in an October 17, 2012 letter

10   addressed to Appeals Coordinator Tate, in which he cites to "3 separate 602 inmate appeals I have

11   filed with your [San Quentin] appeals office in the past, that have remained either unresolved or

12   not answered to yet," including his February 19, 2012 appeal regarding the stabbing attack. *Id.*

13   Exh. B at 1. Most importantly, and in response to Defendants' arguments in their motion for

14   summary judgment, Plaintiff states that after he submitted the February 19, 2012 complaint, the

15   office failed to provide him with a log number. *Id.* ("I feel that at least your office should've

16   provided me with a log number."). This information, coupled with the copy of Plaintiff's

17   typewritten and signed 602-appeal form, *see* Exh. A at 1-2, creates a triable question as to whether

18   or not Plaintiff was prevented by the actions of prison officials from properly exhausting his

19   internal administrative remedies.

20        In reply, Defendants contend that the evidence provided by Plaintiff shows that he "never

21   took any step[s] regarding his instant missing 602-appeal that he did for other [appeals he had

22   filed]," thus supporting Defendants' position that Plaintiff never filed a 602-appeal. *See* ECF 21 at

23   1. Defendants specifically argue that Plaintiff would "quickly and thoroughly" follow-up on any

24   602-appeal within a "few short weeks" when he did not receive an immediate response. *See id.* at

25   2. Plaintiff, however, states in his own declaration that four days after he attempted to file his

26   February 19 appeal he was "interviewed by representatives of the Office of Internal Affairs, and

27   believe that it was in response to my 602 . . . . I was reassured that a 'thorough investigation'

28   would be made." Panah Decl. ¶ 8. He further alleges that "on at least two separate occasions" after

United States District Court
Northern District of California

12

February 19 he told that his "complaint was still under investigation." Panah Decl. ¶ 14. These facts go uncontradicted by Defendants.

Plainly, Defendants have not demonstrated as a matter of law, based upon undisputed facts, that Plaintiff did not attempt to file a 602-appeal that was thwarted by the actions of prison staff. Plaintiff's allegations and evidence, given all inferences in his favor, thus create a triable issue as to whether or not his failure to file a 602-appeal should be excused. *See Albino*, 747 F.3d 1162, 1173. Though Plaintiff did not himself move for summary judgment on this question, the Court encourages him to file such a motion. *Cf. id.*

However, Defendants argue that, even if Plaintiff had filed his 602-appeal, the appeal would be deficient in a number of ways. At this point, since Plaintiff argues that he did file the 602-appeal, but the prison took action to prevent it from being properly filed, the Court examines the language of the appeal Plaintiff contends he filed to determine whether that appeal, if properly filed, would have sufficiently exhausted all of the claims Plaintiff attempts to bring in this suit.

> 2.    *Plaintiff's Proffered 602-Appeal Failed to Identify All Claims and Defendants Subject to This Suit*

Defendants further argue that, even if Plaintiff's 602-appeal had been filed, it would be inadequate because Plaintiff did not identify by name any employees, other than Officer Odum, and thus cannot now bring suit against those employees.

California law requires an inmate to either "list all staff member(s) involved" in the conduct he seeks to grieve or, "[i]f the inmate or parolee does not have the requested identifying information about the staff member(s), he or she shall provide any other available information that would assist the appeals coordinator in making a reasonable attempt to identify the staff member(s) in question." 15 CCR § 3084.2(a)(3).

Plaintiff's 602-appeal form identifies only Officer Odum by name. However, it also requests an identification of all staff members who were involved in certain conduct that could have led to his stabbing, including "yard gunners," staff that "operated hand-held metal detector wands" in searching for weapons, staff who "searched Barrett in his cell for yard release," and who approved Barrett to be placed in the group yard. Compl. ¶ 4; *see also* Panah Decl. Exh. A. In

his Complaint, he also identifies Officer Anderson as a "gunner in the guard tower" during the attack against Plaintiff. Compl. ¶ 21. Thus, Officer Anderson was sufficiently identified for purposes of exhaustion in Plaintiff's 602-appeal, because the appeal seeks to file a grievance against any "yard gunners" present on the day of his stabbing. *Cf.* Compl. ¶ 4.

Plaintiff fails, however, to show that his 602-appeal exhausts claims against the other named Defendants in this action. His 602-appeal form did not name Defendants Jackson, Luna, or Hamilton. Unlike with Officer Anderson, Plaintiff does not make any allegations against Defendants Jackson, Luna, or Hamilton in his Complaint by which the Court could determine that those defendants were identified in his 602-appeal. He does not allege that these officers were yard gunners, or searched Barrett in his cell prior to release, or approved Barrett's placement in the group yard. Nor does he provide any evidence with his Opposition that would so identify any of these individual Defendants. *See, e.g.*, Panah Decl.

Instead, Plaintiff states in his Complaint that Officer Jackson was the author of a March 12, 2012 memorandum which discussed safety concerns regarding Plaintiff being placed back in the group yard following the stabbing. Compl. ¶ 35. Since this memorandum was written nearly a month after the stabbing, and several weeks after the 602-appeal, Plaintiff's 602-appeal does not exhaust any alleged wrongful conduct by Officer Jackson in the writing of that memorandum.

Plaintiff does not make any specific allegations against Officer Hamilton, other than stating that he was employed as a Correctional Officer at San Quentin. Compl. ¶ 12. Plaintiff's 602-appeal does not exhaust claims made against Officer Hamilton merely based on his status as a Correctional Officer. *Cf.* 15 CCR § 3084.2(a). Plaintiff needed to plead in his Complaint some conduct committed by Officer Hamilton, or otherwise some identifying characteristic, that was grieved in his 602-appeal before the Court could find that the 602-appeal exhausted claims against Officer Hamilton. Further, though Plaintiff names Defendants Jackson and Luna in his third cause of action for negligent training and supervision, he has not shown that the actions by Defendants Jackson and Luna in their alleged training or supervisory capacities were previously included in his 602-appeal. *See* Panah Decl. Exh. A. Therefore, Plaintiff has not alleged that Defendants Jackson, Luna, or Hamilton engaged in any conduct grieved by Plaintiff in his administrative

United States District Court
Northern District of California

appeal, which precludes him from bringing suit against them now. *See Jones*, 549 U.S. 199, 211.

As to Warden Chappelle, he is also not named in the 602-appeal, and the 602-appeal does not state any claim against the prison's warden. *See* Compl. ¶ 4. Plaintiff in his Complaint alleges that Chappelle "authorized, condoned, and/or ratified" the attack against Plaintiff, "failed to conduct a procedurally complaint investigation," and "concealed evidence related to said unprovoked attack." Compl. ¶ 66. He also alleges that Chappelle has failed to respond to his counsel's inquiries regarding the stabbing. Compl. ¶¶ 31-32. None of these actions, however, fall within the conduct included in Plaintiff's 602-appeal. *See* Compl. ¶ 4. Plaintiff's 602-appeal could not have exhausted claims regarding conduct undertaken in an investigation that took place after the 602-appeal was filed – thus, Plaintiff cannot bring any allegations, against Chappelle or any other Defendant individually, regarding wrongful conduct related to the investigation into his stabbing or other conduct that took place after February 19, 2012, because those claims cannot be exhausted through the 602-appeal Plaintiff filed – or attempted to file – on February 19. Insofar as Plaintiff alleges in his Complaint that Chappelle authorized or somehow ratified the stabbing attack, the 602-appeal does not contain any such allegations against Chappelle or any other supervisor. *See* Compl. ¶ 4; *see also White v. California State Prison*, 2010 WL 3929244, at *11-12 (C.D. Cal. Aug. 5, 2010) ("Respondeat superior is not a sufficient basis for imposing liability under §1983. [] *State officials are not subject to suit under § 1983 unless they play an affirmative part in the alleged deprivation*. . . . Plaintiff's allegations are insufficient to demonstrate that Defendant Warden Haws either personally participated in the constitutional violation or that he was the 'moving force' behind constitutional deprivation.") (citing *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 663-64 n.7 (1978); *id.* at 695) (emphasis added).

As such, if Plaintiff is excused from the exhaustion requirement, the proffered 602-appeal against Officers Odum and Anderson addresses his claims against them. His proffered 602-appeal, however, would not have exhausted his claims against Officers Jackson, Luna, and Hamilton, or Warden Chappelle. The Court therefore GRANTS summary judgment on behalf of these four Defendants.

1              *3.*       *The Proffered 602-Appeal Shows that Plaintiff Failed to Properly Exhaust*

2                        *Certain Claims Raised in his Complaint Against the Remaining Defendants*

3          Finally, Defendants allege that, even if Plaintiff's failure to exhaust is excused, he has

4    failed to properly exhaust all of the causes of action and claims brought in his Complaint. They

5    argue that Plaintiff's 602-appeal did not include any allegations of:

6               (1) terroristic threats and harassment; (2) failure of Defendant
                Anderson to fire her weapon; (3) any climate perpetuated or

7               tolerated by Staff regarding Panah; or (4) any alleged conspiracy to
                cover up any staff involvement.

8

9    Defs.' Mot. for Summ. J. at 9.

10         A plaintiff must administratively exhaust *each* of his claims before he can bring suit

11   regarding those claims. *See Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that

12   exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in

13   court."). A plaintiff need not have included verbatim in his 602-appeal every claim he now seeks

14   to assert in litigation, but he must have exhausted administrative review of each type of complaint

15   he now brings before the Court. *See id.* at 219-24 (holding that, when a court is presented with a

16   complaint in which some claims are exhausted and some are not, the court should permit the

17   exhausted claims to remain and dismiss the unexhausted claims).

18         Plaintiff has clearly stated in his proffered 602-appeal claims that are consistent with the

19   allegations of threats and harassment by Officer Odum, *see* 602-Appeal, Panah Decl. Exh. A at 2

20   ("Odum provoked and instigated the attempts to murder me . . ."); *see also* Compl. ¶ 4 (identical

21   allegation), and of Defendant Anderson's failure to fire her weapon, *see* 602-Appeal at 2 ("identify

22   all inmates and staff responsible for my getting stabbed, [including] . . . all Yard Gunners").

23   Plaintiff has also stated claims in his 602-appeal regarding a conspiracy between Officers and

24   inmates to bring the knife into the yard. *See* 602-Appeal at 2 ("[T]his is strong evidence C.O's

25   were involved in intentionally transporting the knife to the yard for the assassin, or they allowed

26   him to carry it through the security network as part of a conspiracy.").

27         Plaintiff has not, however, exhausted, *any* claims regarding to a cover-up of this alleged

28   conspiracy, or any negligent supervision or training on the part of prison supervisors or leadership.

United States District Court
Northern District of California

1   Plaintiff included no language in the 602-appeal about any cover-up of the investigation into his

2   stabbing, nor does he allege that he filed any other 602-appeal that includes such allegations. *See*

3   *generally* Panah Decl. Further, he did not state in his 602-appeal that the actions of any officers

4   involved in the alleged conspiracy or stabbing were "authorized, condoned, and/or ratified" by any

5   supervisor in the prison. Compl. ¶ 65. Plaintiff also did not allege in his 602-appeal that

6   supervisors or the institution were "deliberately indifferent" to the training of officers. Compl. ¶

7   68. Nowhere does Plaintiff's 602-appeal state a claim for negligent supervision or training, or any

8   unconstitutional policy or practice that resulted in his stabbing.

9        As such, any claim by Plaintiff with regard to a conspiracy to cover-up officials'

10   involvement in Plaintiff's stabbing, along with Plaintiff's third cause of action for negligent

11   supervision or training and unconstitutional policies or practices, were not exhausted by the

12   language contained in Plaintiff's 602-appeal. *See, e.g.*, *White*, 2010 WL 3929244, at *11-12.

        **4.     Conclusions**

13

14        Plaintiff has shown a triable issue of fact as to whether or not his failure to exhaust

15   administrative remedies should be excused. However, even if Plaintiff shows that his failure to

16   exhaust should be excused, the 602-appeal he attempted to file is deficient in a number of ways.

17   The proffered 602-appeal did not exhaust against Defendants Jackson, Luna, Hamilton, or

18   Chappelle. The Court therefore GRANTS summary judgment on behalf of these four Defendants.

19        Plaintiff has also failed to exhaust any claims with regard to a conspiracy to cover-up the

20   named Defendants' alleged involvement in Plaintiff's stabbing, and has failed to exhaust any

21   claims related to his third cause of action for negligent training and supervision or unconstitutional

22   policies and practices. Those claims are DISMISSED, with prejudice.

23   **B.     Motion to Dismiss or for a More Definite Statement**

24        Defendants also seek to dismiss Plaintiff's claims, on several grounds.[7] In the alternative,

25

26   [7] Defendants ask the Court to take judicial notice of the mission statement on San Quentin State
    Prison's homepage, at www.cdcr.ca.gov/facilities/Facilities_Locator/SQ.html. ECF 10-1. Plaintiff

27   does not oppose. A court may take judicial notice of information contained on a government
    website when no party disputes its authenticity. *See, e.g.*, *Peruta v. Cnty. of San Diego*, 678 F.

28   Supp. 2d 1046, 1054 n.8 (S.D. Cal. 2010). The Court GRANTS Defendants' request for judicial
    notice.

they move for a more definite statement of Plaintiff's claims against them. Officers Jackson, Luna, and Hamilton, as well as Warden Chappelle, must be dismissed from this action pursuant to Plaintiff's failure to exhaust against them. Plaintiff's claims regarding the post-stabbing investigatory conduct of prison officials and his third cause of action for negligent training and supervision must also be dismissed because Plaintiff did not exhaust those claims in his 602-appeal. As such, the Court does not consider the motion to dismiss with regard to those defendants or causes of action.

The Court, however, GRANTS IN PART AND DENIES IN PART Defendants' motion to dismiss with regard to the three remaining Defendants, for the reasons stated below.

### 1.     Claims Against CDCR

Defendants argue that Plaintiff is barred under California law from seeking damages against CDCR based on the attack by Barrett, and that Section 1983 bars suit against CDCR for Plaintiff's constitutional claims because CDCR is not a "person" for purposes of a Section 1983 damages action. In his opposition, Plaintiff does not offer any argument in response to Defendants' contentions. *See, e.g.*, Pl.'s Opp. at 15-19.

California Government Code § 844.6 states that "a public entity is not liable for (1) an injury proximately caused by any prisoner [or] (2) *an injury to any prisoner*." *Id.* § 844.6(a) (emphasis added). CDCR is a public entity for purposes of Section 844.6. *See, e.g.*, *Love v. Salinas*, 2013 WL 4012748, at *13 (E.D. Cal. Aug. 6, 2013) (slip op.) ("Pursuant to [] § 844.6, a public entity, like CDCR, is not liable for any injury to a prisoner unless a statutory exception applies."). Plaintiff does not identify any such statutory exception in his Complaint or joint opposition. Because Plaintiff is a prisoner in custody of CDCR, he cannot bring suit against CDCR for his injuries suffered in his stabbing.  *See id.*

Further, the Supreme Court has clearly held that a state and its agencies are not "persons" for purpose of a Section 1983 claim that seeks monetary damages. *See, e.g.*, *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (finding that the Michigan Department of State Police, among others, could not be sued in a Section 1983 damages action because "neither a State nor its officials acting in their official capacities are 'persons' under § 1983").

1   Plaintiff's claims against CDCR are therefore DISMISSED, with prejudice.

2        *2.   Claims Against Officers Odum and Anderson*

3        Plaintiff names Officers Odum and Anderson in both his first and second causes of action,

4   for violations of two California state statutes and for violations of his Fourth and Eighth

5   Amendment rights. Defendants move to dismiss the claims against both officers, for several

6   reasons. With regard to Plaintiff's constitutional claims, Defendants make two arguments. First,

7   Defendants argue that Plaintiff has not specifically alleged how each individual Defendant,

8   through his or her own actions, violated Plaintiff's constitutional rights or were at all involved in

9   the alleged unconstitutional conduct.[8] Second, Defendants argue that both Odum and Anderson are

10  entitled to qualified immunity. With regard to Plaintiff's state law claims, Defendants argue first

11  that Plaintiff has failed to allege sufficient facts to state a claim under California law. Second,

12  insofar as Plaintiff's conspiracy allegations include conduct by Officers Odum and Anderson,

13  Defendants argue that Plaintiff has failed to allege facts to plead the necessary elements of a

14  conspiracy claim.

15        *a.   Constitutional Claims*

16        Section 1983 permits a finding of liability against an individual "only upon a showing of

17  personal participation by the defendant" in unconstitutional conduct. *Taylor v. List*, 880 F.2d

18  1040, 1045 (9th Cir. 1989). Though Plaintiff does not clearly articulate the nature of his Eighth

19  Amendment claim, the law states that prison officials have a duty, consistent with the Eighth

20  Amendment, to protect inmates from harm or attacks at the hands of other inmates. *See, e.g.*,

21  *Farmer v. Brennan*, 511 U.S. 825, 833-34 (1994) (compiling cases). A prison official violates the

22  Eighth Amendment when an inmate is attacked *only* when two conditions are met. First, the

23  deprivation of rights must by "objectively, sufficiently serious," and the inmate "must show that

24  he is incarcerated under conditions posing a substantial risk of serious harm." *Id.* at 834. Second,

25  _____

26  [8] Defendants also seek to dismiss Plaintiff's claim for violations of his Fourth Amendment rights, an allegation that is present on the face of Plaintiff's Complaint. Plaintiff did not, however, allege
27  any improper search and/or seizure in his 602-appeal, or the body of his Complaint. He also did not assert any arguments regarding a Fourth Amendment claim in his joint opposition. As such,
28  any Fourth Amendment claim must be DISMISSED.

1  the "prison official must have a 'sufficiently culpable state of mind' [of] deliberate indifference to

2  inmate health or safety." *Id.*

3      In his Complaint, Plaintiff alleges that he was "subjected to terrorist threats and

4  harassments at the encouragement and behest of Defendant Odum," Compl. ¶ 19, and that Officer

5  Odum "placed clippings about different inmates and their cases, including Plaintiff's," on a wall in

6  his office, which was called the "Wall of Shame." Compl. ¶ 26. Plaintiff makes no other specific

7  allegations against Officer Odum. With regard to Officer Anderson, Plaintiff specifically alleges

8  only that she watched the assault from the guard tower "but did not raise her gun" to shoot Barrett.

9  Compl. ¶ 21. These allegations, alone, are insufficient to allege unconstitutional conduct on the

10  part of Officers Odum and Anderson.[9]

11      Plaintiff does not allege how Officer Odum participated in the alleged stabbing. He also

12  does not allege how the clippings of his case, among others on the "Wall of Shame," created a

13  "substantial risk of serious harm" to himself because he alleges no link between the postings in

14  Officer Odum's office and the stabbing – though the Court can infer that other inmates, including

15  Barrett, knew of the "Wall of Shame," Plaintiff does not allege with any specificity *how* Officer

16  Odum encouraged threats or harassment against Plaintiff, apart from posting these clippings on his

17  office wall. The mere statement that Officer Odum "encouraged" terroristic threats is insufficient

18  to show personal participation by Officer Odum in any conduct that resulted in Plaintiff's

19  stabbing, though Plaintiff could feasibly cure this deficiency through amendment. *Cf. Taylor*, 880

20  F.2d 1040, 1045; *see also Farmer*, 511 U.S. 825, 833 (1994) ("[G]ratuitously allowing the beating

21  or rape of one prisoner by another serves no legitimate penological purpose.") (citing *Hudson v.*

22  *Palmer*, 468 U.S. 517, 548 (1984) (Stevens, J., concurring in part and dissenting in part)).

23      Officer Anderson's case is even less well pled. Plaintiff alleges only that the attack was in

24

---

25  [9] Defendants also argue that Officers Odum and Anderson are entitled to qualified immunity.
   Under *Saucier v. Katz*, a plaintiff must meet two requirements to show that an official is not
26  entitled to qualified immunity: (1) the plaintiff must allege facts to show a constitutional violation,
   and (2) the plaintiff must show that it was clearly established, at the time the conduct occurred,
27  and that conduct was unconstitutional. *Saucier*, 533 U.S. 194, 201 (2001). Since Plaintiff has not
   alleged facts to show a constitutional violation, the Court need not engage in the second prong of
28  the *Saucier* analysis.

United States District Court
Northern District of California

"plain view" of the guard tower and that Anderson "watched" the attack. Compl. ¶ 21. He does not allege that a guard's failure to raise her gun during a particular attack constitutes deliberate indifference to inmate safety, and also does not allege that she failed to raise her gun due to a culpable state of mind – i.e., that she had knowledge of the attack and did not raise her gun to fire on Barrett due to her desire for the attack to succeed.  He therefore fails to show any purposeful, individual involvement by Officer Anderson in the stabbing attack. *Cf. Taylor*, 880 F.2d 1040, 1045 (demanding a showing of personal involvement before liability attaches to an individual defendant under Section 1983).

Plaintiff therefore fails to allege sufficient facts to support his conclusion that Officers Odum or Anderson engaged in acts that were unconstitutional. Because these deficiencies could feasibly be cured through amendment, Plaintiff shall be granted leave to amend with regard to his Fourth and Eighth Amendment claims against Officers Anderson and Odum.

### b.    State Law Claims

In his first cause of action, Plaintiff also alleges several state law claims. Though Plaintiff fails to state exactly which state laws his claims arise from, is seems as though he alleges two independent causes of action: one under the Ralph Civil Rights Act ("Ralph Act," Civil Code § 51.7), and the other under the Bane Act (Civil Code § 52.1).[10] Plaintiff also alleges, throughout his Complaint, the existence of a civil conspiracy among the individual Defendants and at least one inmate. *See, e.g.*, Compl. ¶ 36 ("[O]ne or more of [the] individual Defendants conspired with Inmate Barrett to murder Plaintiff.").

Defendants argue that Plaintiff has not stated a claim under either statute, or for civil conspiracy. For the reasons below, the Court finds that Plaintiff's state law claims against Officer

---

[10] Plaintiff also cites in his first cause of action Civil Code § 43, which provides that every person "has, subject to the qualifications and restrictions provided by law, the right of protection from bodily restraint or harm." *See* Compl. ¶ 39. Plaintiff's Section 43 claim is properly brought via the Bane Act, § 52.1, which creates liability when a person "interferes by threats, intimidation, or coercion, . . . with the exercise or enjoyment by any individual . . . of the rights secured by the Constitution or laws of [the State of California]." *See, e.g.*, *Bolbol v. City of Daly City*, 2011 WL 3156866, at *6 (N.D. Cal. July 26, 2011) (analyzing a Plaintiff's claimed violations of the right to be free from bodily restraint or harm, a right protected by Section 43, through the lens of Section 52.1).

United States District Court
Northern District of California

1   Anderson must be dismissed for failure to state a claim. Plaintiff's Ralph Act and civil conspiracy

2   claims against Officer Odum must similarly be dismissed. Because the Court determines that these

3   deficiencies could feasibly be cured by amendment, the Court grants Plaintiff the opportunity to

4   amend on these claims. The Court finds, however, that Plaintiff's Bane Act claim against Officer

5   Odum is sufficiently pled and survives the motion to dismiss.

6                    *i.*        *Plaintiff's Ralph Act Claims*

7        The Ralph Act, California Civil Code § 51.7, provides that "all persons within California

8   have the right to be free from any violation, or intimidation by threat of violence, committed

9   against the person on account of race." *Knapps v. City of Oakland*, 647 F. Supp. 2d 1129, 1167

10  (N.D. Cal. 2009) (citing Civil Code § 51.7). A claim brought under Section 51.7 requires a

11  plaintiff to plead four elements: (1) the defendant threatened or committed violent acts against the

12  plaintiff; (2) the defendant was motivated by his perception of plaintiff's race; (3) the plaintiff was

13  harmed; and (4) the defendant's conduct was a substantial factor in causing the plaintiff's harm.

14  *See, e.g.*, *Austin B. v. Escondido Union Sch. Dist.*, 149 Cal. App. 4th 860, 880-81 (2007).

15       Though Plaintiff's 602-appeal includes a contention that Officer Odum "provoked and

16  instigated the attempts to murder me by posting my Iranian heritage & case on his 'Wall of

17  Shame,'" *see* Compl. ¶ 4, he fails to state a claim under the Ralph Act for a number of reasons.

18  First, he fails to allege that Officer Odum threatened him with violence. Second, he fails to allege

19  that Officer Odum was "motivated" to harm Plaintiff, through the posting of information on the

20  Wall of Shame, *because* of Plaintiff's race. Even if Barrett may have attacked Plaintiff based on

21  his race, Officer Odum cannot be held liable under Section 51.7 unless Odum's actions also were

22  motivated by Plaintiff's race. *See Austin B.*, 149 Cal. App. 4th 860, 880. Third, Plaintiff fails to

23  show how Officer Odum's conduct had any causal link to his stabbing, let alone that it was a

24  substantial factor in the attack.

25       Plaintiff's Ralph Act claim against Officer Anderson fails for the same reasons – he does

26  not plead that she threatened him with violence, was motivated to harm him – or to help others

27  harm him – because of his race, or that her conduct was a substantial factor in causing him harm.

28

United States District Court
Northern District of California

22

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ii.     *Plaintiff's Bane Act Claims*

The Bane Act, codified as California Civil Code § 52.1, makes it unlawful for any person to "interfere[] by threats, intimidation, or coercion, or attempt[] to interfere by threats, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights . . . secured by the Constitution or laws of this state." *Id.* at § 52.1(a); *see also Austin B.*, 149 Cal. App. 4th 860, 883 (requiring a showing that "the defendant, by the specified improper means (i.e., 'threats, intimidation, or coercion'), tried to or did prevent the plaintiff from doing something he or she had the right to do under the law"); *Shoyoye v. County of Los Angeles*, 203 Cal. App. 4th 947, 959 (2012) ("It is the element of threat, intimidation, or coercion that is being emphasized in Civil Code § 52.1."). Unlike the Ralph Act, however, "nothing in Civil Code Section 52.1 requires any showing of an actual intent to discriminate." *Id.* at 957 (citing *Venegas v. Cnty. of Los Angeles*, 32 Cal. 4th 820, 841 (2004)). Here, Plaintiff alleges that Officers Odum and Anderson violated his rights under California Civil Code § 43, which provides all persons "the right of protection for bodily restraint or harm." *See* Compl. ¶ 39.

Plaintiff does not allege that Officer Anderson engaged in any "threats, intimidation, or coercion" in her actions as yard gunner during the attack. He makes no other specific allegations regarding her conduct. *See* Compl. ¶ 21; *see also Venegas*, 32 Cal. 4th 820, 841-43 (2004). He has therefore failed to state a Bane Act claim against Officer Anderson.

With regard to Officer Odum, however, Plaintiff's allegations are sufficient to state a claim for a violation of the Bane Act. Plaintiff alleges that he was subjected to "terrorist threats . . . at the encouragement and behest of Defendant Odum," Compl. ¶ 19, alleging further that Officer Odum placed information about Plaintiff's case on his "Wall of Shame." *See id.* Plaintiff alleges that the threats against him, undertaken at the "encouragement and behest" of Officer Odum, culminated in his stabbing, thus alleging a link between the threats and the statutory right to be free from bodily restraint or harm specified in Civil Code § 43.[11] These allegations, taken as true, show an

---

[11] Unlike a claim under Section 1983, which requires a showing that the Defendant's conduct subjected the Plaintiff to a "substantial risk of serious harm," *see Farmer* at 833, a Bane Act claim has a lower threshold, demanding only a showing that the defendant attempted to interfere with a right through threats, intimidation, or coercion. *See, e.g.*, *Venegas* at 841-43 (stating that a plaintiff

1  attempt to interfere with Plaintiff's statutory rights through "threats, intimidation, or coercion,"

2  and thus survive the motion to dismiss.

3                     *iii.*      *Plaintiff's Civil Conspiracy Allegations*

4          Throughout his Complaint, Plaintiff alleges the existence of a conspiracy on the part of the

5  individual Defendants to assist inmate Barrett in attempting to murder Plaintiff. *See, e.g.*, Compl. ¶

6  37. Any civil conspiracy claim related to the stabbing, however, fails for several reasons.[12] Under

7  California law, civil conspiracy requires a plaintiff to plead that "the conspiring parties reached a

8  unity of purpose or a common design and understanding, or a meeting of the minds in an unlawful

9  arrangement." *See Gilbrook v. City of Westminster*, 177 F.3d 839, 856 (1999) (citing *Vieux v. East*

10  *Bay Reg'l Park Dist.*, 906 F.2d 1330, 1343 (9th Cir. 1990)). Each conspirator "need not know the

11  exact details of the plan, but each participant must at least share the common objective of the

12  conspiracy." *Id.* at 856 (citing *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539,

13  1541 (9th Cir. 1989) (en banc)). Further, civil conspiracy claims are subject to a heightened

14  pleading standard, demanding that a plaintiff allege specific facts "containing evidence of

15  unlawful intent, or face dismissal of the claim." *Buckey v. Cnty. of Los Angeles*, 968 F.2d 791, 794

16  (9th Cir. 1992).

17          Plaintiff does not make any such specific allegations. Plaintiff does not allege any

18  "meeting of the minds" amongst the named Defendants to harm Plaintiff, let alone facts to show a

19  conspiracy by the named Defendants to help a prisoner stab Plaintiff. A cursory allegation that

20  Officer Odum encouraged threats and harassment against Plaintiff is not enough – there is no

21  allegation of *who* Officer Odum purportedly conspired with, what their common design was, or

22  even of Officer Odum's intent. Moreover, Plaintiff's Complaint fails to include even a cursory

23  allegation of conspiracy against Officer Anderson. Such a failure to plead any specific allegations

24  demands that the conspiracy claim be dismissed. *See Buckey* at 794.

25

26  must allege only that the acts were "accompanied by the requisite threats, intimidation, or coercion.").

27  [12] As stated above, any conspiracy claim regarding post-stabbing conduct related to the investigation into the stabbing cannot go forward in this litigation, as the 602-appeal, even if exhaustion is excused, could not have exhausted claims regarding conduct that took place *after*

28  Plaintiff attempted to file it.

United States District Court
Northern District of California

United States District Court
Northern District of California

3.      *Motion for a More Definite Statement*

The Court finds that Plaintiff's Complaint is "specific enough to apprise the defendant[s] of the substance of the claim[s] being asserted." *QTL Corp. v. Kaplan*, 1998 WL 303296, at \*2 (N.D. Cal. Feb. 2, 1998). As such, Defendants' motion for a more definite statement is DENIED.

## IV.   ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that:

1.      Defendants' motion for summary judgment is GRANTED IN PART AND DENIED IN PART.

a.      Defendants' motion is DENIED as to their contention that Plaintiff has completely failed to administratively exhaust his internal prison remedies.

b.      Defendants' motion is GRANTED as to their contention that Plaintiff has failed to exhaust claims against Warden Chappelle and Officers Luna, Hamilton, and Jackson. These Defendants are therefore DISMISSED from this action.

c.      Defendants' motion is GRANTED as to their contention that Plaintiff has failed to exhaust his post-stabbing conspiracy and investigation claims, as well as his third cause of action for negligent training and supervision.

2.      Defendants' motion to dismiss all claims against CDCR is GRANTED, with prejudice.

3.      With regard to Plaintiff's first cause of action, for violations of state law against Officers Anderson and Odum, Defendants' motion to dismiss Plaintiff's Ralph Act and civil conspiracy claims is GRANTED, with leave to amend. Defendants' motion to dismiss Plaintiff's Bane Act claim against Officer Anderson is also GRANTED, with leave to amend. Defendants' motion to dismiss Plaintiff's Bane Act claim against Officer Odum is DENIED.

4.      With regard to Plaintiff's second cause of action, for violations of his Fourth and Eighth Amendment rights against Officers Anderson and Odum, Defendants' motion to dismiss is GRANTED, with leave to amend.

5.      Defendants' motion for a more definite statement is DENIED.

6.      Because Plaintiff's counsel is not presently eligible to practice law in California,

Plaintiff shall be granted 90 days from the date of this Order to file an amended Complaint. Plaintiff may not add new parties or causes of action to the Complaint without further leave of Court. Defendants CDCR, Chappelle, Luna, Hamilton, and Jackson have been dismissed from this action.

**Plaintiff's amended Complaint can therefore include only his Bane Act claim against Officer Odum, which survives the motion to dismiss, as well as the claims on which the Court has granted him leave to amend: his state law claims in his first cause of action against Officers Odum and Anderson, and his constitutional claims in his second cause of action against Officers Odum and Anderson. This amended Complaint must be filed with the Court NO LATER THAN June 17, 2015.**

7.      Plaintiff may, in that 90 days, either find new counsel to represent him in this action, file a notice stating that Mr. Duren has been restored to Active status by the State Bar and will remain his counsel, or represent himself pro se in this matter going forward.  Because Plaintiff's counsel is not presently eligible to practice law in California, the clerk of Court shall also serve a copy of this Order to Plaintiff individually.

**IT IS SO ORDERED.**

Dated: March 19, 2015

BETH LABSON FREEMAN
United States District Judge