UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOOMAN PANAH, an individual,<br><br>Plaintiff,<br><br>v.<br><br>STATE OF CALIFORNIA DEPT. OF CORRECTIONS AND REHABILITATION, et al.,<br><br>Defendants. | Case No. 14-00166 BLF (PR)<br><br>**ORDER SCREENING SUPPLEMENTAL COMPLAINT AND OF SERVICE; DIRECTING DEFENDANTS TO FILE DISPOSITIVE MOTION OR NOTICE REGARDING SUCH MOTION; INSTRUCTIONS TO CLERK** |

Plaintiff, an inmate on death row at California's San Quentin State Prison ("SQSP"), filed the instant *pro se* civil rights action pursuant to 42 U.S.C. § 1983, alleging unconstitutional acts by SQSP correctional officers. The Court granted in part Defendants' motion for summary judgment and dismissed several claims for failure to exhaust administrative remedies. (Docket No. 22.) Plaintiff was granted leave to file an amended complaint, which was again dismissed with leave to amend. (Docket No. 38.) Plaintiff filed a second amended complaint, (ECF No. 54, *hereafter* "SAC"), which the Court screened and dismissed with leave to file a supplemental complaint. (Docket No. 66.) Plaintiff filed a supplemental complaint. (Docket No. 67.) The matter shall now proceed to briefing on the cognizable claims discussed below.

**DISCUSSION**

**A.     Standard of Review**

A federal court must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief. *See id.* § 1915A(b)(1),(2). Pro se pleadings must, however, be liberally construed. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

**B.     Background**

Plaintiff's SAC consists of 613 pages: the first 219 pages set forth six "causes of action" and includes documents and pictures inserted therein; the remaining 394 pages are separate exhibits filed in support of his claims. (Docket No. 58.) Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." "Specific facts are not necessary; the statement need only "'give the defendant fair notice of what the . . . . claim is and the grounds upon which it rests.'"" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citations omitted). A plaintiff is not required to plead his evidence "or specific factual details not ascertainable in advance of discovery." *Gibson v. United States*, 781 F.2d 1334, 1340 (9th Cir. 1986), cert. denied, 479 U.S. 1054 (1987). In its initial review of the SAC, the Court limited review to the first 219 pages of pleading without reference to any exhibits filed in support. (Docket No. 67 at 3.)

Plaintiff claims that he was the victim of an attempted murder attack on February 4,

2

2012, by another inmate, and that the attack was orchestrated by Defendant prison guards. (SAC at 8, original pagination.) On that date, Plaintiff was stabbed repeatedly with a knife by inmate Joseph Anthony Barrett, a known member of the Aryan Brotherhood, causing severe bodily injury. (*Id.* at 11, 19, 46.) Barrett chased Plaintiff around the yard with the knife before he was finally subdued. (*Id.* at 35.) Plaintiff claims that the knife had to have been smuggled into the prison yard, where the attack place, with the assistance of prison staff because inmates were required to undergo a security screening and strip search before entering the prison yard. (*Id.* at 11, 32.) Plaintiff claims that the stabbing "was instigated, provoked, encouraged, facilitated and/or aided and abetted by the actions and/or inactions of individual and/or groups of prison guards (correctional officers) exhibiting and performing their duties with gross negligence, deliberate indifference, and/or confirming "malice" by their words and/or deeds, as the case may be concerning individual prison guards." (*Id.* at 46-47.) Specifically, Plaintiff claims that Defendant Officer Anderson was on duty as a gunner in the guard tower from where she could clearly see the attack, but that she did nothing to protect Plaintiff; rather, she "sat smiling broadly – looking at [Plaintiff] being chased while bleeding towards death." (*Id.* at 35.) Plaintiff also claims that Defendant Officer Hamilton is liable for several actions, including delaying and interfering with Plaintiff's medical treatment, failing to subdue Barrett sooner and more effectively, possibly assisting in smuggling the knife into the yard, and for "congratu-lat[ing]" Barrett after the attack. (*Id.* at 29, 37, 52.)

Plaintiff claims that for approximately one year prior to the incident, he was the victim of "terroristic abuses" by correctional officers "engaging in racist, ethnic & religious taunts and slurs, as officers engaged in stalking-harassment, bullying, oppression, thefts of and destruction of legal documents needed for his capital litigation; and destruction of electronic appliances, et al…." (*Id.* at 46.) Plaintiff claims that two months before the attack on December 5, 2011, he reported the many abuses to Counselor CCII, Brandy Ebert who documented that Plaintiff had expressed great fear of "'physical harm'

3

& 'being murdered'" due to the abuses. (*Id.*)

Plaintiff claims that during the time preceding the attack, he had three staff misconduct complaints (602-appeals) pending against staff: (1) an "11/03/11 602 complaint" complaining that Defendant Robberecht and other staff were harassing Plaintiff and singling Plaintiff out based on "'racial profiling'" and destruction of legal documents and electronics; (2) a "12/15/11 602 complaint" against Defendant Robberecht for discrimination based on Plaintiff's death penalty case, making inappropriate comments and singling him out; and (3) a "1/19/2012 602 complaint[]" against Defendant Welton and Robberecht for conspiring and implementing retaliatory actions. (*Id.* at 47.) Plaintiff claims that Defendant Odom encouraged inmates to verbally abuse Plaintiff. (*Id.* at 48.) Plaintiff claims that Defendants Odom and Robberecht's conduct "gave other inmates the green light to attack and kill [Plaintiff]." (*Id.*) Plaintiff claims that Defendants Lts. Luna and Jackson, as unit supervisors, were aware of the verbal abuses and threats, but refused to intervene when called upon by Plaintiff for help. (*Id.* at 46, 49.)

Plaintiff claims that had Defendants Warden Kevin Chappelle, Counselor Brandy Ebert, and Lts. Luna and Jackson performed all security protocols, the stabbing would not have occurred. (*Id.* at 50.)

### C. **Plaintiff's Claims**

Under the SAC's "Third Cause of Action," Plaintiff asserted violations of his rights under the First and Fourteenth Amendments, as well as repeating his prior claims under the Fourth and Eighth Amendments. (SAC at 144.)

After reviewing the allegations, the Court found the SAC stated the following cognizable claims: (a) First Amendment claims against Defendants Odom and Robberecht for retaliation and unlawful interference with his legal mail against Defendants Robberecht, Givens, Welton and McClelland; (b) Eighth Amendment claims against Defendants Odom, Robberecht, Anderson, and Ebert; (c) Sixth Amendment claims against Defendants Odom, Robberecht, Anderson, and Ebert; (d) state law claim under the Bane

4

Act against Defendants Odum, Robberecht, Givens, Welton and McClelland; (e) state constitution claims that are the equivalent to the above federal constitutional claims found cognizable above; (f) state law claim for negligence *per se* against Defendants Odum, Robberecht, Anderson, and Ebert; and (g) state law claim for civil conspiracy against Defendants Odum, Robberecht, Hamilton, and Anderson. (Docket No. 66 at 15.)

The Court dismissed with prejudice the following claims: (a) Fourth Amendment claims under federal and state laws; (b) state law claims under the Ralph Act; and (c) negligent training and supervision. (Id.)

Lastly, the Court dismissed with leave to amend the following claims: (a) First Amendment claims against Defendants Ebert, Luna, Jackson, Moore, Rodriguez, Chappelle, and Montgomery; and (b) Fourteenth Amendment claim for the allegedly illegal searches of his cell by Defendants Robberecht, Givens, Welton and McClelland. (*Id.* at 15-16.) The Court instructed Plaintiff that "the supplemental complaint shall be limited to the claims identified above." (*Id.* at 16.) Accordingly, the Court will review the supplemental complaint, which is 54 pages long, to determine if Plaintiff has stated sufficient facts to overcome the prior deficiencies with respect to these claims.

With respect to other claims and allegations, of which there are several, Plaintiff did not seek leave of Court prior to filing them. *See* Fed. R. Civ. P. 15(a)(2). Furthermore, this being essentially Plaintiff's third opportunity to amend, the Court finds no good cause for permitting him to include these new claims when he failed to raise them in the first and second amended complaints. *Wagh v. Metris Direct, Inc.*, 363 F.3d 821, 830 (9th Cir. 2003) (district court's discretion to deny leave to amend particularly broad where plaintiff has previously filed an amended complaint); *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992).

The Court shall also address Plaintiff's argument that the Court overlooked claims regarding the filing of grievances in screening the SAC and his objections regarding the Court's prior ruling dismissing an Eighth Amendment claim for failure to exhaust

5

administrative remedies.

### 1. **First and Fourteenth Amendments Claims**

Plaintiff was granted leave to amend to allege sufficient facts to state a First Amendment claim against Defendants Ebert, Luna, Jackson, Moore, Rodriguez, Chappelle, and Montgomery because his general assertions against them in the SAC were insufficient. (Docket No. 64 at 7.) Plaintiff was also granted leave to amend a Fourteenth Amendment claim for the "illegal" search of his cell. (*Id.* at 9-10.)

Plaintiff now claims that Defendants Odom and Robberecht "conspired with Lt. Luna, Givens, Welton & McClelland to organize & carry-out targeted, retaliatory destructive search of [Plaintiff's] cell & legal materials." (Suppl. Compl. at 1.) Plaintiff states that Defendant Lt. Luna informed him that he had authorized the search of his cell that was conducted by Defendants Robberecht, Givens, Welton, and McClelland, and that other supervisors, i.e., Lt. Jackson, the "Captain," AW Moore, CDW Rodriguez, and Warden Chappelle, had "all agreed ahead of time to what the searchers were doing." (Suppl. Compl. at 2.) Plaintiff's allegations are sufficient to state a Fourteenth Amendment claim against the named Defendants based on Lt. Luna's statement that the search was authorized. *See Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 435-37 (1982).

However, Plaintiff fails to state sufficient facts to state a First Amendment retaliation claim because his allegations are simply conclusory. "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted). Plaintiff asserts that Defendants "conspired" against him to conduct a "retaliatory destructive search" of his cell and legal material. (Suppl. Compl. at 1.) A civil conspiracy is a combination of two or more persons who, by some concerted action, intend

6

to accomplish some unlawful objective for the purpose of harming another which result in damage. *Gilbrook v. City of Westminster*, 177 F.3d 839, 856 (9th Cir. 1999). To prove a civil conspiracy, the plaintiff must show that the conspiring parties reached a unity of purpose or common design and understanding, or a meeting of the minds in an unlawful agreement. *Id*. To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy. *Id*. A defendant's knowledge of and participation in a conspiracy may be inferred from circumstantial evidence and from evidence of the defendant's actions. *Id*. at 856-57. Here, Plaintiff's allegation that these Defendants "conspired" is not supported by any facts indicating that Defendants reached a "meeting of the minds" with respect to a common objective, *i.e.*, to retaliate against Plaintiff for exercising his First Amendment rights. *Id.* Accordingly, Plaintiff fails to state a First Amendment claim against these Defendants.

Furthermore, Plaintiff claims that Defendants Luna and Jackson, alongside Defendants Odom and Robberecht against whom there is already a First Amendment claim, "retaliated against [him] for his complaints about the search, reading, destruction & trashing his legal mail." (Suppl. Compl. at 2.) He asserts that the adverse action under the first element was the "retaliatory search" of his cell and confiscation of legal property, but then indicates that the protected conduct for which he was being retaliated against was the filing of complaints about that very search. Causality for retaliation means that the adverse action occurred "because of" the protected conduct, i.e., *after* the protected conduct rather than before. Accordingly, Plaintiff has failed to allege sufficient facts to establish a causal connection between the adverse action and the exercise of a protected conduct to state a new First Amendment claim against Defendants Luna and Jackson.

**2. <u>Other Claims</u>**

Despite being instructed that the supplemental complaint shall be limited to the First and Fourteenth Amendment claims, Plaintiff makes other allegations in an effort to revive

7

claims that were dismissed. (Suppl. Compl. at 14.)

Plaintiff claims that Defendants owed him "a duty to protect & prevent injury," and cites a state case involving negligence. (Suppl. Compl. at 4-14.) The Court has already found that the SAC states a cognizable state law claim for negligence *per se* against Defendants Odom, Robberecht, Anderson, and Ebert. *See supra* at 5. Plaintiff now asserts that liability should be extended to "every supervisor Defendant." (*Id.* at 13.) However, as stated above, *see supra* at 5, Plaintiff did not seek leave to amend this claim to add additional Defendants, and he gives no good cause for his failure to do so in his prior amendments. Accordingly, this amendment is denied.

Plaintiff claims Defendant Jackson was alerted that Plaintiff was being retaliated against by Defendants Odom, Robberecht, Givens, Welton, and McClelland for filing grievances but that he took no action "thereby, adopting their misconduct & further chilling [Plaintiff's] speech." (Suppl. Compl. at 15.) As discussed above, the Court has found Plaintiff has failed to state sufficient facts to state a cognizable retaliation claim against the subordinate Defendants. *See supra* at 6-7. Accordingly, it cannot be said that Plaintiff has stated a cognizable claim against a supervisor based on the unconstitutional acts of a subordinate where he has failed to allege sufficient facts to state a cognizable claim against the subordinate. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (absent vicarious liability, each Government official is only liable for his or her own misconduct).

Plaintiff also claims that he informed Defendant Ebert about being bullied and tormented, and that she assured him that she would inform Captain, AW Moore, Rodriguez, and Chappelle of his complaints, but the abuses continued. (Suppl. Compl. at 3.) Plaintiff claims Defendant Ebert ordered him to stop contacting other staff about the abuses "'because this was a dangerous situation'" which chilled his speech. (*Id.* at 14-15.) These allegations are also insufficient to state a First Amendment retaliation claim because he fails to allege all the necessary elements, e.g., what adverse action Defendant Ebert took against Plaintiff and for the exercise of what protected conduct. Furthermore, it cannot be

8

said that her orders to stop contacting other staff about the abuses "chilled his speech" where the reason was due to safety concerns and he was still able to pursue grievances.

Plaintiff claims Defendants Moore, Rodriguez, and Chappelle were made aware of the abuses against him through Defendant Ebert but "chose to bury their heads in the sand and take no action to protect [him]." (Suppl. Compl. at 15.) This allegation is not sufficient, even liberally construed, to state any First Amendment claim against these Defendants because there is no explanation as to what protected conduct he was exercising and how their actions, or failure to act, chilled the exercise of his First Amendment right. Plaintiff also claims that these Defendants "green lighted further abuses… by not intervening; and that resulted in [Plaintiff] being stabbed and almost killed in the 02/04/12 stabbing attack." (*Id.*) Again, this allegation is conclusory with no supporting facts explaining what he means by "further abuses" or establishing a causal connection between their failure to intervene and the alleged stabbing. Accordingly, Plaintiff fails to state a cognizable claim against Defendants Moore, Rodriguez, and Chappelle.

### 3. Other Arguments and Objections

Plaintiff asserts that the Court did not address claims against other Defendants related to the failure to process his appeals and misconduct complaints. (Suppl. Compl. at 16-17.) However, such allegations simply are not sufficient to state a claim. Although California state regulations grant prisoners a procedural right to have a prison appeal, these mere procedural requirements, even if mandatory, cannot form the basis of a constitutionally cognizable liberty interest. *See Smith v. Noonan*, 992 F.2d 987, 989 (9th Cir. 1993); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996) (prison grievance procedure is procedural right that does not give rise to protected liberty interest requiring procedural protections of Due Process Clause); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993) (same); *Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982) (same). A prison official's failure to process grievances, without more, accordingly is not actionable under § 1983. *See Buckley*, 997 F.2d at 495; *see also Ramirez v. Galaza*, 334

9

F.3d 850, 860 (9th Cir. 2003) (holding that prisoner's claimed loss of a liberty interest in the processing of his appeals does not violate due process because prisoners lack a separate constitutional entitlement to a specific prison grievance system). Accordingly, this claim is not cognizable under § 1983 and is DISMISSED.

Plaintiff also objects to the dismissal of an Eighth Amendment claim against Defendants Odom, Robberecht, Hamilton, Anderson, Chappelle, Ebert, Luna and Jackson for failure to exhaust administrative remedies, and requests the Court reconsider its order granting in part Defendants' motion for summary judgment based on those grounds. (Suppl. Compl. at 22-23, 25); (Docket No. 22). Plaintiff asserts that failure to exhaust should be excused because threats made against him by prison officials made exhaustion impossible. (Suppl. Compl. at 25.)

In the Northern District of California, Local Rule 7-9 allows for the filing of motions for reconsideration only with respect to interlocutory orders made in a case prior to the entry of final judgment. *See* Civil L.R. 7-9(a). However, no pre-judgment motion for reconsideration under Local Rule 7-9 may be brought without leave of court. *Id.* The moving party must specifically show: (1) that at the time of the motion for leave, a material difference in fact or law exists from that which was presented to the court before entry of the interlocutory order for which the reconsideration is sought, and that in the exercise of reasonable diligence the party applying for reconsideration did not know such fact or law at the time of the interlocutory order; or (2) the emergence of new material facts or a change of law occurring after the time of such order; or (3) a manifest failure by the court to consider material facts which were presented to the court before such interlocutory order. *See* Civil L.R. 7-9(b).

Plaintiff asserts that the opposition to the Defendants' motion was prepared by his former counsel who represented him incompetently and has since been disbarred. (Suppl. Compl. at 25, 29.) Plaintiff asserts that due to counsel's "ineptness from a debilitating mental deficiency & disorder which led to loss of his law license, counsel failed to

10

properly explain the numerous continuing threats made against [Plaintiff] & other dissuading misconduct of prison staff." (*Id.* at 29.) Plaintiff's request is without merit. Notwithstanding Plaintiff's assertions regarding counsel's incompetence, the argument for exhaustion was thoroughly and competently presented in a lengthy opposition which was supported by Plaintiff's Declaration and several exhibits. (Docket Nos. 17, 18 & 19.) Plaintiff's declaration includes detailed facts regarding his efforts to exhaust his claims and the prison's response. (Docket No. 18), such that he was clearly aware of all the difficulties he encountered to exhaust his claims at the time the interlocutory order was being briefed. Accordingly, the Court is not persuaded that there was a "material difference in fact or law" from that which was presented to the Court before the interlocutory order was entered which Plaintiff was not aware with the exercise of reasonable diligence. *See* Civil L.R. 7-9(b). Neither has Plaintiff shown the emergence of new material facts or change in law occurring *after* the Court's order or a manifest failure by the court to consider material facts that were presented to the court *before* the order. *Id.* Accordingly, the Court finds no basis for granting Plaintiff leave to file a motion for reconsideration of its interlocutory order under Local Rule 7-9.

**CONCLUSION**

For the reasons stated above, the Court orders as follows:

1. The Court finds the SAC states the following cognizable claims: (a) First Amendment claims against Defendants Odom and Robberecht for retaliation and unlawful interference with his legal mail against Defendants Robberecht, Givens, Welton and McClelland; (b) Eighth Amendment claims against Defendants Odom, Robberecht, Anderson, and Ebert; (c) Sixth Amendment claims against Defendants Odom, Robberecht, Anderson, and Ebert; (d) State law claim under the Bane Act against Defendants Odom, Robberecht, Givens, Welton and McClelland; (e) State constitution claims that are the equivalent to the above federal constitutional claims found cognizable above; (f) State law

11

claim for negligence *per se* against Defendants Odom, Robberecht, Anderson, and Ebert; and (g) State law claim for civil conspiracy against Defendants Odom, Robberecht, Hamilton and Anderson. (Docket No. 66 at 15.)

In addition, the supplemental complaint states a cognizable claim under the Fourteenth Amendment against Defendants Lt. Luna, Robberecht, Givens, Welton, McClelland, Lt. Jackson, AW Moore, CDW Rodriguez, and Warden Chappelle. *See supra* at 6. All other claims presented in the supplemental complaint are **DISMISSED**.

2. The Clerk of the Court shall mail a Notice of Lawsuit and Request for Waiver of Service of Summons, two copies of the Waiver of Service of Summons, and a copy of this order upon **Defendants Robberecht, Givens, Welton, McClelland, Ebert, AW Moore, CDW Rodriguez, and Warden Chappelle** at **San Quentin State Prison** (San Quentin, CA 94974)**.**

The Clerk shall send a copy of this order, two copies of the SAC, (Docket No. 54), all attachments thereto, and a copy of the supplemental complaint, (Docket No. 67), to the Litigation Coordinator at SQSP, to forward to the appropriate parties.

The Clerk shall also mail a copy of this Order to Plaintiff and the counsel for Defendants Odom and Anderson.

3. Defendants are cautioned that Rule 4 of the Federal Rules of Civil Procedure requires them to cooperate in saving unnecessary costs of service of the summons and the complaint. Pursuant to Rule 4, if Defendants, after being notified of this action and asked by the Court, on behalf of Plaintiff, to waive service of the summons, fail to do so, they will be required to bear the cost of such service unless good cause shown for their failure to sign and return the waiver form. If service is waived, this action will proceed as if Defendants had been served on the date that the waiver is filed, except that pursuant to Rule 12(a)(1)(B), Defendants will not be required to serve and file an answer before **sixty (60) days** from the day on which the request for waiver was sent. (This allows a longer time to respond than would be required if formal service of summons is

12

necessary.) Defendants are asked to read the statement set forth at the foot of the waiver form that more completely describes the duties of the parties with regard to waiver of service of the summons. If service is waived after the date provided in the Notice but before Defendants have been personally served, the Answer shall be due sixty (60) days from the date on which the request for waiver was sent or twenty (20) days from the date the waiver form is filed, whichever is later.

4. No later than **ninety-one (91) days** from the date this order is filed, Defendants shall file a motion for summary judgment or other dispositive motion with respect to the claims in the complaint found to be cognizable above.

    a. Any motion for summary judgment shall be supported by adequate factual documentation and shall conform in all respects to Rule 56 of the Federal Rules of Civil Procedure. Defendants are advised that summary judgment cannot be granted, nor qualified immunity found, if material facts are in dispute. If any Defendant is of the opinion that this case cannot be resolved by summary judgment, he shall so inform the Court prior to the date the summary judgment motion is due.

    b. **In the event Defendants file a motion for summary judgment, the Ninth Circuit has held that Plaintiff must be concurrently provided the appropriate warnings under *Rand v. Rowland*, 154 F.3d 952, 963 (9th Cir. 1998) (en banc).** *See Woods v. Carey*, 684 F.3d 934, 940 (9th Cir. 2012).

5. Plaintiff's opposition to the dispositive motion shall be filed with the Court and served on Defendants no later than **twenty-eight (28) days** from the date Defendants' motion is filed.

Plaintiff is also advised to read Rule 56 of the Federal Rules of Civil Procedure and *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) (holding party opposing summary judgment must come forward with evidence showing triable issues of material fact on every essential element of his claim). Plaintiff is cautioned that failure to file an opposition to Defendants' motion for summary judgment may be deemed to be a consent by Plaintiff to

13

the granting of the motion, and granting of judgment against Plaintiff without a trial. *See Ghazali v. Moran*, 46 F.3d 52, 53–54 (9th Cir. 1995) (per curiam); *Brydges v. Lewis*, 18 F.3d 651, 653 (9th Cir. 1994).

6. Defendants *shall* file a reply brief no later than **fourteen (14) days** after Plaintiff's opposition is filed.

7. The motion shall be deemed submitted as of the date the reply brief is due. No hearing will be held on the motion unless the Court so orders at a later date.

8. All communications by the Plaintiff with the Court must be served on Defendants, or Defendants' counsel once counsel has been designated, by mailing a true copy of the document to Defendants or Defendants' counsel.

9. Discovery may be taken in accordance with the Federal Rules of Civil Procedure. No further court order under Federal Rule of Civil Procedure 30(a)(2) or Local Rule 16-1 is required before the parties may conduct discovery.

10. It is Plaintiff's responsibility to prosecute this case. Plaintiff must keep the court informed of any change of address and must comply with the court's orders in a timely fashion. Failure to do so may result in the dismissal of this action for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b).

11. Extensions of time must be filed no later than the deadline sought to be extended and must be accompanied by a showing of good cause.

**IT IS SO ORDERED.**

**Dated:** 8/8/2018

BETH LABSON FREEMAN
United States District Judge

Order Screening Suppl. Compl and of Svc
PRO-SE\BLF\CR.14\00166Panah_suppl.compl&svc

14