United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

HOOMAN PANAH,

        Plaintiff,

    v.

STATE OF CALIFORNIA DEPT. OF
CORRECTIONS AND
REHABILITATION, et al.,

        Defendants.

Case No. 14-00166 BLF (PR)

**ORDER GRANTING MOTION TO
DISMISS CLAIMS AS UNTIMELY;
DENYING MOTION FOR
SANCTIONS; SETTING BRIEFING
SCHEDULE ON REMAINING
CLAIMS**

(Docket. Nos. 162, 163)

Plaintiff, an inmate on death row at California's San Quentin State Prison ("SQSP"), filed a civil rights complaint under 42 U.S.C. § 1983, alleging unconstitutional acts by SQSP correctional officers.  Dkt. No. 1.  The operative complaint in this action is Plaintiff's second amended complaint ("SAC") along with a supplemental complaint.  Dkt. Nos. 54, 67.  The Court found the SAC and supplemental stated cognizable claims, and ordered the matter served on Defendants.  Dkt. No. 69.  Defendants Anderson, Chappell, Ebert, Givens, Hamilton, Luna, McClelland, Odom, Robberecht, and Welton filed a motion for sanctions and motion to dismiss.  Dkt. Nos. 162, 163.  Plaintiff filed several opposition papers in response.  Dkt. Nos. 177, 181, 184.  Defendants filed a reply, Dkt. No. 179, and a sur-reply, Dkt. No. 203, with the Court's leave.  Dkt. No. 202.

For the reasons discussed below, Defendants motion to dismiss based on untimeliness grounds is **GRANTED**.  Defendants' motion for sanctions is **DENIED**.

## I.  DISCUSSION

### I.   <u>Procedural History</u>

Plaintiff filed this action on January 12, 2014, with the assistance of retained legal counsel.  Dkt. No. 1.  Plaintiff claimed that Defendants CDCR, Chappell, Jackson, Luna, Hamilton, Odom, and Anderson "instigated, provoked, encouraged, facilitated and/or aided and abetted" an inmate named Joseph Barrett who stabbed Plaintiff on February 4, 2012, during yard time on SQSP's death row.  *Id.* at 2-4.

On March 19, 2015, the Court partially granted Defendants' dispositive motions.  Dkt. No. 22.  The Court dismissed Plaintiff's unexhausted claims against Defendants Chappell, Jackson, Luna, and Hamilton, and Plaintiff's immunity-barred claims against the CDCR.  *Id.* at 17, 19.  The Court also found one Bane Act claim cognizable against Defendant Odom and dismissed with leave to amend insufficiently pled claims against Defendants Anderson and Odom.  *Id.* at 21-22.  The Court also noted that Plaintiff's counsel became ineligible to practice law on November 17, 2014, *id.* at 2, fn. 2, and later accepted Plaintiff's notice to continue this matter in *pro se*.  Dkt. No. 25.

On June 17, 2015, Plaintiff filed a first amended complaint("FAC") with regards to the February 4, 2012 incident, to include state and federal law claims against Defendants Anderson and Odom.  Dkt. No. 26.  In a screening order, the Court found cognizable Plaintiff's Eighth Amendment and negligence per se claims against Defendants Anderson and Odom, and a Bane Act claim against Defendant Odom.  Dkt. No. 38 at 4-5.  The Court granted Plaintiff leave to amend the remainder of his insufficiently pled claims against Defendants Anderson and Odom.  *Id.* at 1-9.

On November 13, 2015, Plaintiff filed a second amended complaint ("SAC") that

United States District Court
Northern District of California

United States District Court
Northern District of California

consisted of 613 pages.  Dkt. No. 54.  The Court limited its initial review to the first 219 pages of pleading without reference to any exhibits filed in support.  Dkt. No. 64.  The SAC attempted to name twenty-five individual defendants and seven categories of Doe defendants, and included a year's worth of alleged harassment by prison staff preceding the original February 4, 2012 stabbing, through "taunts and slurs," "stalking," "bullying, oppression, thefts of an destruction of legal documents," "destruction of electronic appliances," and mishandling of Plaintiff's administrative grievances.  Dkt. No. 54 at 54-81.  On November 18, 2016, Plaintiff filed, with the Court's permission, a supplemental to the SAC.  Dkt. No. 67.

The Court screened the SAC and the supplemental.  Dkt. Nos. 64, 69.  Pursuant to these orders, the following claims were found cognizable against the Defendants as neatly presented by Defendants in their motion to dismiss, Dkt. No. 163 at 9:

| | | |
|---|---|---|
| 1 | First Amendment (retaliation) | Odom, Robberecht |
| 2 | First Amendment (legal mail) | Givens, McLelland, Robberecht, Welton |
| 3 | Sixth Amendment (legal mail) | Givens, McLelland, Robberecht, Welton |
| 4 | Eighth Amendment (deliberate indifference to safety) | Anderson, Ebert, Odom, Robberecht |
| 5 | California Constitution claims equivalent to the federal claims recognized above | Same as above |
| 6 | Bane Act (Cal. Civil Code § 43) | Odom |
| 7 | Bane Act (First Amendment) | Givens, McLelland, Robberecht, Welton |
| 8 | Negligence Per Se | Anderson, Ebert, Odom, Robberecht |
| 9 | Civil Conspiracy | Anderson, Hamilton, Odom, Robberecht |
| 10 | Fourteenth Amendment (due process | Chappell, Givens, Jackson, Luna, McLelland, Moore, Robberecht, Rodriguez[1] |

[1] Defendants Moore and Rodriguez have not yet been served in this matter.  *See* Dkt. Nos.

Dkt. Nos. 64, 69, 91.

Defendants Anderson, Chappell, Ebert, Givens, Hamilton, Luna, McLelland, Odom, Robberecht, and Welton appeared by waiver of reply.  Dkt. Nos. 114, 137.

## II.   Plaintiff's Claims

As Defendants have summarized, Plaintiff's claims fall into three categories.  Dkt. 163 at 10.  Claims 4, 5, and 8 against Defendant Anderson relate to her actions during the February 4, 2012 stabbing.  *See supra* at 3.  Claim 9 against Anderson and Claims 4, 5, 6, 8, and 9 against Defendants Ebert, Hamilton, Odom, and Robberecht relate to Plaintiff's claims of harassment for a year prior to the February 4, 2012 incident.  *Id.*  Claims 1, 2, 3, 5, 7, and 10 against Defendants Chappell, Givens, Luna, McLelland, Odom, Robberecht, and Welton relate to searches of Plaintiff's cell on August 21, 2011 and October 23, 2011. *Id.*  The claims are summarized below.

### A.   Stabbing Incident and Response - Defendant Anderson (Claims 4, 5, 8)

Plaintiff claims that Defendant Anderson, who was the gunner in the guard tower at the time, watched and failed to intervene during an attack on February 4, 2012, when he was stabbed by another inmate.  Dkt. Nos. 54-5 at 1, 54-9 at 2, 54-11 at 2, 54-16 at 4, 54-30 at 10-13, 54-32 at 3.

### B.   Harassment Allegations – Defendants Anderson, Ebert, Hamilton, Odom, and Robberecht (Claims 4, 5, 6, 8, 9)

Plaintiff claims that for approximately one year prior to the February 4, 2012 incident, he was the victim of "terroristic abuses," including "racist, ethnic & religious taunts and slurs," and "stalking-harassment, bullying, oppression," by Defendants Odom and Robberecht.  Dkt No. 54-15 at 2, 54-25 at 3.  Plaintiff claims he told Defendant Ebert about the harassment by Defendant Robberecht in an interview on December 5, 2011, Dkt.

---

71, 72, 79, 80, 83, 84, 92, 99, 105, 106, 142, 145.  Nevertheless, the Court will consider the timeliness of the claim against them since they are a position similar to served Defendants in that regard.  *See infra* at 18.

No. 54-1 at 6, by letter dated December 6, 2011, Dkt. No. 54-1 at 2-4, and in person on December 7, 2011, Dkt. No. 54-24 at 11. *See also* Dkt. Nos. 54-15 at 2, 54-24 at 12-13, 54-28 at 13. Plaintiff does not describe Defendant Ebert's response.

The Court also screened an additional claim against Defendants Anderson, Odom, Hamilton, and Robberecht for civil conspiracy based on Plaintiff's allegations that they "formed an oral and/or implied agreement to commit a wrongful act, including but not limited to, instigating and agitating violence against Plaintiff because of his Iranian heritage, Persian, race, and Muslim faith" and "agreed to spread false stories that Plaintiff was a child molester and instigated violence against Plaintiff which caused injury to Plaintiff." Dkt No. 64 at 14, *citing* Dkt. No. 54-31 at 11-12.

Plaintiff submitted an inmate grievance, Log No. SQ-12-00010, on December 15, 2011, about his conflict with Defendant Robberecht which he had reported to Defendant Ebert. Ex. C to Defs.' Request for Judicial Notice ("RJN"), Dkt. No. 163-2 at 100-101. The appeal was denied on June 29, 2012. *Id.*

Plaintiff alleges that he submitted another inmate grievance on February 19, 2012, about the response to the February 4, 2012 stabbing, and included allegations of harassment against Defendant Odom. Dkt. No. 54-33 at 12-13. The appeal did not make any harassment or conspiracy allegations against Defendants Anderson, Ebert, Hamilton, or Robberecht. *Id.* Plaintiff alleges that he attempted to follow-up on the status of the grievance several times through April 18, 2013. Dkt. Nos. 54-33 at 3-10, 54-35 at 5-6. Ultimately, the grievance was not processed. Dkt. No. 22 at 5.

The Victims Compensation and Government Claims Board ("Board") received a government claim from Plaintiff and his mother on August 3, 2012. RJN, Ex. B; Dkt. No. 163-2 at 16-17. The claim included allegations on the response to Plaintiff's February 4, 2012 stabbing and allegations of harassment by Defendants Odom, Robberecht, "et al." *Id.* The Board rejected the claim in a letter dated October 18, 2012. Dkt. No. 163-2 at 15.

**C.**     **Cell Search Allegations – Defendants Chappell, Givens, Luna, McLelland, Odom, Robberecht, Welton (Claims 1, 2, 3, 5, 7, 10)**

Plaintiff states in Claims in 1, 2, 3, 5, 7, and 10 that searches of his cell on August 21 and October 23, 2011: (1) were conducted with a retaliatory intent to intimidate Plaintiff and deter him from making complaints against correctional officers; (2) consisted of a breach of the confidentiality of his legal mail; (3) interfered with his right to consult with capital counsel; and (4) destroyed his personal property without due process.  Dkt. Nos. 54-1 at 3, 54-24 at 7-10, 54-71 at 11; *see* Dkt. Nos. 64, 69, 91.  Plaintiff filed an inmate grievance, Log No. SQ-12-00151, which was exhausted on August 13, 2012.  RJN, Ex. D; Dkt. No. 163-2 at 118-119.  Liberally construed, the Court found these allegations were cognizable as violations of Plaintiff's rights under the First, Sixth, and Fourteenth Amendments.  Dkt. No. 69.

**III.**     **Motion to Dismiss**

**A.**     **Standard of Review**

Failure to state a claim upon which relief can be granted is grounds for dismissal under Rule 12(b)(6).  Dismissal for failure to state a claim is a ruling on a question of law. *See Parks School of Business, Inc., v. Symington*, 51 F.3d 1480, 1483 (9th Cir. 1995). "The issue is not whether plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claim."  *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do....  Factual allegations must be enough to raise a right to relief above the speculative level."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 553-56 (2007) (citations omitted).  A motion to dismiss should be

granted if the complaint does not proffer "enough facts to state a claim for relief that is plausible on its face." *Id.* at 570.  To state a claim that is plausible on its face, a plaintiff must allege facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  From these decisions, the following "two principles" arise: "First to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively.  Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).  Review is limited to the contents of the complaint, *see Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994), including documents physically attached to the complaint or documents the complaint necessarily relies on and whose authenticity is not contested.  *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).  In addition, the court may take judicial notice of facts that are not subject to reasonable dispute.  *See id.* at 689 (discussing Fed. R. Evid. 201(b)).  Thus, the two exceptions to the prohibition of considering material outside the pleadings when assessing the sufficiency of the complaint are the incorporation by reference and judicial notice doctrines.  *Khoja v. Orexigen Therapeutics*, 899 F.3d 988, 998 (9th Cir. 2018).

Defendants move for dismissal on the grounds that various claims are time-barred, fail to satisfy the presentation requirements of the California Government Claims Act, and state law claims fail to state actionable relief.  Dkt. No. 163.  They request judicial notice of the following as filed under the exhibit indicated: (1) an order of the Ninth Circuit in *Panah v. Chappell*, 935 F.3d 657 (9th Cir. 2019), Ex. A; (2) copies of Plaintiff's

United States District Court
Northern District of California

government claim number G605950, Ex. B; (3) copies of Plaintiff's administrative grievance No. SQ-12-00010, Ex. C; (4) copies of Plaintiff's administrative grievance No. SQ-12-00151, Ex. D; and (5) the custodian of records affidavit certifying the administrative grievance files under Exhibits C and D, Ex. E.  Dkt. No. 163-1, hereinafter "RJN."  The request is GRANTED.  *See Lee*, 250 F.3d at 689; Fed. R. Evid. 201(b)(2).

**B.   <u>Untimely</u>**

Defendants first assert that the applicable statutes of limitation bar all but Plaintiff's Eighth Amendment claims against Defendants Anderson and Odom.  Dkt. No. 163 at 12.

Section 1983 does not contain its own limitations period.  The appropriate period is that of the forum state's statute of limitations for personal injury torts.  *See Wilson v. Garcia*, 471 U.S. 261, 276 (1985), *superseded by statute on other grounds as stated in Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 377-78 (2004); *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999); *Elliott v. City of Union City*, 25 F.3d 800, 802 (9th Cir. 1994).  In California, the general residual statute of limitations for personal injury actions is the two-year period set forth at California Civil Procedure Code § 335.1 and is the applicable statute in § 1983 actions.  *See Maldonado v. Harris*, 370 F.3d 945, 954 (9th Cir. 2004); *see also Silva v. Crain*, 169 F.3d 608, 610 (9th Cir. 1999) (limitations period for filing § 1983 action in California governed by residual limitations period for personal injury actions in California, which was then one year and was codified in Cal. Civ. Proc. Code § 340(3)); Cal. Civ. Proc. Code § 335.1 (current codification of residual limitations period, which is now two years; enacted in 2002).

With respect to the pendant state law claims in this action, the time period for presentation of a claim relating to death or personal injury in California is six months from accrual of the injury.  *See* Cal. Gov't. Code § 911.2.  The claims presentation requirements for such claims against California public entities or employees are not tolled by imprisonment.  *See* Cal. Civ. Proc. Code § 352.1(b); *Ellis v. City of San Diego*, 176 F.3d

1183, 1189 (9th Cir. 1999).  Because state claims presentation requirements do not apply to § 1983 claims, and in California statutory tolling for imprisonment does apply to § 1983 claims, pendent state law claims may be barred even when § 1983 claims are not.  *See id.* at 1189-90.

It is federal law that determines when a cause of action accrues, and the statute of limitations begins to run in a § 1983 action.  *McDonough v. Smith*, 139 S. Ct. 2149, 2156 (2019) (though federal courts often refer to common law tort principles when deciding questions of accrual, such principles are meant to guide rather than control the definition of § 1983 claims); *Wallace v. Kato*, 549 U.S. 384, 388 (2007); *Belanus v. Clark*, 796 F.3d 1021, 1025 (9th Cir. 2015); *Elliott*, 25 F.3d at 801-02.  Under federal law, a claim generally accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action.  *See TwoRivers*, 174 F.3d at 991-92; *Elliott*, 25 F.3d at 802.  "The discovery rule requires the plaintiff to be diligent in discovering the critical facts of the case."  *Klein v. City of Beverly Hills*, 865 F.3d 1276, 1278 (9th Cir. 2017) (per curiam).  "A cause of action accrues 'even if the full extent of the injury is not then known.'"  *Gregg v. State of Hawaii DPS*, 870 F.3d 883, 887 (9th Cir. 2017) (quoting *Wallace*, 549 U.S. at 39)).  Accrual starts when the plaintiff can know that the injury was caused by defendants' actions.  *Id.* at 889 (finding accrual when plaintiff knew, or could know through reasonable diligence, that her emotional discomfort was caused by defendant's improper conduct in therapy).

A federal court must give effect to a state's tolling provisions.  *See Hardin v. Straub*, 490 U.S. 536, 543-44 (1989); *Marks v. Parra*, 785 F.2d 1419, 1419-20 (9th Cir. 1986).  In California, this includes tolling the statute of limitations during imprisonment and while criminal charges are pending.  The statute of limitations begins to run immediately after the recognized disability period ends.  *See Cabrera v. City of Huntington Park*, 159 F.3d 374, 378-79 (9th Cir. 1998) (following California Law).  It also includes

9

the state's equitable tolling rules.  *See Butler v. NCRC*, 766 F.3d 1191, 1198 (9th Cir. 2014).

California Code of Civil Procedure section 352.1 recognizes imprisonment as a disability that tolls the statute of limitations when a person is "imprisoned on a criminal charge, or in execution under the sentence of a criminal court for a term of less than for life."  Cal. Civ. Proc. Code § 352.1(a).  Although, when read literally, section 352.1 tolls the statute of limitations only for persons who are serving terms of imprisonment less than for life, California courts have held that a prisoner serving a life sentence may be entitled to the tolling benefit of section 352.1 (formerly section 352(a)(3)).  *See Grasso v. McDonough Power Equip.*, 264 Cal. App. 2d 597, 601 (1968).  Therefore, a prisoner serving a life sentence *with the possibility* of parole is entitled to California's tolling of the statute of limitations.  *See Martinez v. Gomez*, 137 F.3d 1124, 1126 (9th Cir. 1998) (following *Grasso*) (emphasis added).  However, California courts have since understand *Grasso*'s reading of section 352 to mean that "those sentenced to life *without* possibility of parole should be excluded from the tolling provision."  *Brooks v. Mercy Hospital*, 1 Cal.App.5th 1, 7 (2016) (emphasis added).  In accordance with state law, the Northern District of California has held likewise.  *See, e.g., Diaz v. Sayre*, No. C-12-5895-SI, 2013 WL 842933, at *4 (N.D. Cal. Mar. 6, 2013) (tolling provision applies only to inmates serving other than life without parole or under a death sentence); *Merriman v. Brown*, No. C-15-1715-WHA, 2015 WL 5118505, at *1 (N.D. Cal. Aug. 31, 2015) (inmate serving death sentence not entitled to tolling); *Ayala v. Grant*, No. 15-cv-3037-RMW, 2016 WL 4191649 at *2 (N.D. Cal. Aug. 8, 2016) (same).  Our sister courts' rulings in this regard are also consistent.  *See, e.g., McGinnis v. Ramos*, No. 15-cv-2812-JLS(JLB), 2017 WL 474054, at *4 (S.D. Cal. Jan. 3, 2017) (tolling provision applies to all prisoners except those subject to a life sentence without the possibility of parole); *Gomez v. Sanders*, No. 2:13-cv-0480-TLN-CMK, 2018 WL 3239308, at *5 (E.D. Cal. July 3, 2018) (same);

United States District Court
Northern District of California

*Brown v. County of L.A.,* No. CV-15-2162-DDP(FFM), 2018 WL 5907186, at *3-*4 (C.D. Cal. Octo. 4, 2018) (no tolling for "de facto" life sentence where inmate was eligible for parole after 145 years); *Lal v. Ogan*, No. 18-cv-00286-LJO-SAB(PC), 2019 WL 427294, at *3 (E.D. Cal. Feb. 4, 2019) (no tolling for inmate who was serving a life sentence without the possibility of parole under section 352.1(a)).

Here, as Defendants argue, Dkt. No. 163 at 9-10, Plaintiff has been sentenced to death, and the Ninth Circuit affirmed his conviction and sentence in August 2019. *See Panah v. Chappell*, 935 F.3d 657 (9th Cit. 2019); RJN, Ex. A.  In opposition, Plaintiff sites to one case that holds that death row prisoners are entitled to 4-years tolling.  Dkt. No. 177 at 43.  However, the single case[2] that he relies on is from 2011, and the Northern District has since found that inmates serving death sentences are not entitled to tolling as established by the caselaw cited in the preceding paragraph, of which at least two cases are more current than the case relied on by Plaintiff.  *See supra* at 10.  Accordingly, Plaintiff is clearly serving a valid state sentence for a term that is *not* "less than for life" under § 352.1(a) and is therefore not entitled to California's statutory tolling provision.

The statute of limitations is tolled for the period a prisoner administratively exhausts his underlying grievances, pursuant to the requirements of the PLRA.  *See Soto v. Unknown Sweetman*, 882 F.3d 865, 875 (9th Cir. 2018) (holding that a prisoner "is entitled to tolling [of the applicable statute of limitations] while he was actively exhausting his remedies" under the PLRA); *Brown v. Valoff*, 422 F.3d 926, 942-43 (9th Cir. 2005) ("the applicable statute of limitations must be tolled while a prisoner completes the mandatory exhaustion process").

### 1.    Cell Search Claims 1, 2, 3, 5, 7, and 10

Under Claims 1, 2, 3, 5, 7, and 10, Plaintiff asserts the violation of his rights based

---

[22] Plaintiff cites "*Reynaldo Ayala v. Robert Ayers*, 2011 U.S. Dist. LEXIS 107983 (9-22-2011)"; *Ayala v. Ayers*, No. C-10-0979 JSW (PR), 2011 WL 4434541 (N.D. Cal. Sept. 22, 2011).

United States District Court
Northern District of California

on the searches of his cell on August 21 and October 23, 2011.  *See supra* at 5-6.

Defendants concede that while Plaintiff pursued administrative remedies under inmate

grievance No. SQ-12-00151, the limitations period was tolled, and began to run on August

13, 2012, when he exhausted the process.  Dkt. No. 163 at 12, citing *Brown*, 422 F.3d at

943.  Defendants assert that Plaintiff had two years to file Claims 1, 2, 3, and 10 under

federal law, *Maldonado*, 370 F.3d at 954, and six months to file Claims 5 and 7 under state

law, *Moore v. Twomey*, 120 Cal.App.4th 910, 914 (2004).  *Id.*  According to Defendants,

Plaintiff far exceeded this time by filing these unlawful cell search claims for the first time

in his SAC on November 13, 2015.  *Id.*, citing Dkt. No. 54.  Defendants also assert that

Claims 5 and 7 are not timely under the relation-back doctrine because his original January

12, 2014 complaint still far exceeds the six-month statutory period for state-law claims that

began on August 13, 2012.  *Id.*  Defendants assert that Claims 1, 2, 3, and 10 cannot relate

back because they arise from wholly different events than his original claims and depend

on substantially different evidence.  *Id.* at 13.  Therefore, Defendants Chappell, Givens,

Luna, McLelland, Odom, Robberecht, and Welton request dismissal of Claims 1, 2, 3, 5, 7,

and 10 as untimely.  *Id.*

Federal Rule of Civil Procedure 15(c)(1)[3] provides for three different situations

where an amendment relates back to the date of the original pleading.  First, an amendment

relates back when "the law that provides the applicable statute of limitations allows

relation back." Fed. R. Civ. P. 15(c)(1)(A).  Second, an amendment relates back when it

"asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out–

or attempted to be set out–in the original pleading."  Fed. R. Civ. P. 15(c)(1)(B).  Third,

subsection (C) provides for the amendment to relate back to change the party or the

---

[3] Federal Rule of Civil Procedure 15(c)(1) was amended in 1991 to make clear that the rule
is not intended to preclude any relation back that is permissible under the applicable state
limitations law.  *Butler v. NCRC*, 766 F.3d 1191, 1200 (9th Cir. 2014) (FRCP 15(c)(1)
"incorporates the relation back rules of the law of a state when that state's law provides the
applicable statute of limitations and is more lenient.").

naming of the party if certain conditions are met.  Fed. R. Civ. P. 15(c)(1)(C).

California law requires the later-added claims arise on "the same general set of facts" as the original pleading – that is, they seek relief for the same injuries and refer to the same incident.  *Austin v. Mass. Bonding & Ins., Co.*, 56 Cal.2d 596, 601 (1961); *Carrier Corp. v. Detrex Corp.*, 4 Cal.App.4th 1522, 1530 (1992).

After a careful review of the papers, the Court finds federal Claims 1, 2, 3, and 10 are untimely and do not relate back to the original complaint, and that state-law Claims 5 and 7 are also barred as untimely.  Once Plaintiff exhausted administrative remedies on August 13, 2012, Plaintiff had two years thereafter, i.e., until August 13, 2014, to file a timely § 1983 action.[4]  However, he did not file these claims until he raised them for the first time in his SAC, on November 13, 2015, which was over a year after the limitations period expired.  Nor are Plaintiff's pendant state law claims timely since they were filed long past the six months after accrual of those claims, assuming it was as late as August 13, 2012.

Furthermore, none of these claims relate back to the original complaint under either federal or state law.  As Defendants point out, Plaintiff's original complaint sought relief against prison officials for injuries he sustained when another inmate stabbed him on February 4, 2012.  Dkt. No. 1.  Claims 1, 2, 3, 5, 7 and 10, as presented for the first time in the SAC, seek compensation for unlawful cell searches on August 21, and October 23, 2011, which took place over three to five months prior to the stabbing.  *See supra* at 5-6.  These cell-search claims arise from wholly different events (cell searches) from the February 4, 2012 stabbing and depend on substantially different evidence.  Nor do they

---

[4] The Court notes that the date of accrual for these claims could arguably be earlier than that applied by Defendants, as they use either the date of exhaustion of administrative remedies or completion of the government claims process as the start date for the running of the limitations period.  *See TwoRivers*, 174 F.3d at 991-92; *Elliott*, 25 F.3d at 802.  But it is unnecessary to determine the actual date of accrual because the claims are untimely even with the generous application of the later date.

United States District Court
Northern District of California

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

seek relief for the same injuries and refer to the same incident as the original pleading.  As

such, it cannot be said that the new federal claims under the First, Sixth, and Fourteenth

Amendments "arose out of the conduct, transaction, or occurrence set out–or attempted to

be set out–in the original pleading," which involved the violation of Plaintiff's Eighth

Amendment rights that took place the following year, and thereby relate back under federal

law. Fed. R. Civ. P. 15(c)(1)(B).  Nor can it be said that these new federal claims relate

back under California law because they do not arise on "the same general set of facts" as

the original pleading involving a stabbing or seek relief for the same injuries and refer to

the same incident.  *See Austin*, 56 Cal.2d at 601.  Lastly, the equivalent California

Constitutional claims under Claim 5 and state-law Claim 7 also do not relate back under

either federal or state law for the same reasons as the federal claims do not: these new state

law claims do not arise "out of the conduct, transaction, or occurrence set out" in the

original pleading, which was based on an incident that took place months later, Fed. R.

Civ. P. 15(c)(1)(B), and as such, it cannot be said that these later-added claims seek relief

for the same injuries and refer to the same incident alleged in the original complaint, s*ee*

*Carrier Corp.*, 4 Cal.App.4th at 1530.

　　　In opposition, Plaintiff argues at length that he exhausted administrative remedies.

Dkt. No. 177 at 2-19.  However, Defendants' motion to dismiss does not raise exhaustion

as an affirmative defense.  Accordingly, Plaintiff's assertions in this regard are irrelevant.

It appears that Plaintiff is conflating the exhaustion of administrative remedies with the

timely filing of claims with the statute of limitations.  He is simply mistaken.  The

exhaustion of administrative remedies through the prison grievance process and the filing

of timely claims in the courts are two separate matters.  Even though he may have properly

exhausted a claim through the prison's grievance process, it may nonetheless be dismissed

as untimely if the claim was not properly presented in a complaint before the limitations

period expired.  Accordingly, all of Plaintiff's arguments asserting concurrently that his

14

United States District Court
Northern District of California

claims are "both fully/properly exhausted and timely filed" are simply incorrect and will not be considered.  *See, e.g.,* Dkt. No. 177 at 52.

With respect to relation back, Plaintiff asserts his original complaint alleged that "[f]or approximately one year prior to the… incident,… Plaintiff was subjected to terrorist threats and harassments at the encouragement and behest of Defendant Od[om] that culminated in the February 4, 2012 stabbing."  Dkt. No. 177 at 3, citing Dkt. No. 1 at 5; Dkt. No. 26 at 5.  To the extent that Plaintiff is suggesting his cell search claims relate back to the original complaint based on this allegation, he is mistaken.  Dkt. No. 179 at 4. Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."  "Specific facts are not necessary; the statement need only '"give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citations omitted).  It cannot be said that the general allegation of "terrorist threats and harassments" was sufficient to give notice to any Defendant, including Odom, that Plaintiff was intending to sue SQSP staff for the search of his cell on August 21 and October 23, 2011. Accordingly, these cell-search claims in the SAC do not relate back to the original complaint

Plaintiff also asserts that he is entitled to equitable estoppel to extend the limitations period.  Dkt. No. 177 at 39; Dkt. No. 181 at 3, 14-19.  In § 1983 actions, federal courts defer to the state on the application of its limitations law, including on issues of tolling and equity.  *See Butler*, 766 F.3d at 1198.  "Equitable estoppel… focuses primarily on actions taken by the defendant to prevent a plaintiff from filing suit, sometimes referred to as 'fraudulent concealment.'" *Lukovsky v. San Francisco*, 535 F.3d 1044, 1051 (9th Cir. 2008).  Under California law, equitable estoppel requires that:

> (1) the party to be estopped must be apprised of the facts; (2) that party must intend that his or her conduct be acted on, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the party asserting the estoppel

must be ignorant of the true state of facts; and (4) the party asserting the estoppel must reasonably rely on the conduct to his or her injury.

*Lukovsky*, 535 F.3d at 1052 (quoting *Honig v. San Francisco Planning Dep't.*, 127 Cal. App. 4th 520, 529 (2005)). In order to establish equitable estoppel, or "fraudulent concealment" by defendants, the plaintiff must show "some active conduct by the defendant above and beyond the wrongdoing upon which the plaintiff's claim is filed." *Id.* (internal quotations and citations omitted); *see also Guerrero v. Gates*, 442 F.3d 697, 706 (9th Cir. 2006).

Plaintiff first claims that ongoing death threats should estop Defendants from invoking "untimeliness defenses." Dkt. No. 177 at 24. However, the only evidence Plaintiff refers to in support of this argument are documents from 2012 and 2013, when the limitations period had not yet expired. *Id.* at 25-26. Furthermore, as Defendants assert in reply, none of the alleged threats were made by the Defendants asserting the statute of limitations. Dkt. No. 179 at 6. Accordingly, it cannot be said that alleged death threats prevented Plaintiff from timely filing these claims. *Lukovsky*, 535 F.3d at 1052.

Secondly, Plaintiff asserts the SQSP law library "induced" his untimeliness by advising him that he had one year to comply with the Government Claims Act, and that Defendants cannot benefit from misleading him about the state's six month limitations period. Dkt. No. 177 at 39. Plaintiff also claims that the SQSP law library "provided literature telling [him] that he had 2-years, plus 2 years of 'disability' tolling to bring suit," and that the law library's actions are attributable to Defendants. *Id.* at 43. He repeats this assertion in his supplemental opposition. Dkt. No. 181 at 3. Defendants assert in reply that none of the alleged bad legal advice was provided by them. Dkt. No. 179 at 6; Dkt. No. 181 at 3. Indeed, Plaintiff's assertion that the law library's actions are "attributable" to Defendants is conclusory and without any factual support. Furthermore, Defendants point out that the Claim Board's rejection explicitly explained "you have only six months from the date this notice was personally delivered or deposited in the mail to file a court action

1    on this claim.  See Government Code Section 945.6."  Dkt. No. 179 at 6, citing Dkt. No.

2    163-2 at 15.  Accordingly, Plaintiff cannot assert that he was ignorant of this fact when he

3    was in possession of the Board's decision.  Furthermore, Defendants point out that the

4    SQSP library also provided Plaintiff with the actual statutory text – California Code of

5    Civil Procedure section 352.1 – which has been interpreted to mean that tolling does not

6    apply to a prisoner serving a death sentence.  Dkt. No. 179 at 6-10, citing Dkt. No. 54-24 at

7    4[5]; Dkt. No. 203 at 2.  Accordingly, based on these facts, it cannot be said that Plaintiff has

8    established equitable estoppel against Defendants where there is no indication that

9    allegedly false information regarding the statute of limitations came from them.  *See*

10   *Lukovsky v. San Francisco*, 535 F.3d 1044,

11         Plaintiff also asserts that Defendants at one point "engaged in thefts of Panah's and

12   Barnett's legal files to deny them the ability to file a competent, fully inclusive FAC."

13   Dkt. No. 177 at 4.  However, the FAC was filed on June 17, 2015, which was still after the

14   limitations period had expired on August 13, 2014.  *See supra* at 13.  Furthermore, as

15   Defendants assert, Plaintiff was certainly "aware of the true state of facts" rather than

16   ignorant of the loss of his legal files, and therefore unable to satisfy the third element for

17   equitable estoppel.  *See Lukovsky*, 535 F.3d at 1052.  Moreover, this alleged basis is the

18   same as Plaintiff's cause of action, *i.e.*, the cell search that resulted in the deprivation of his

19   property.  *See supra* at 5-6.  As such, it is not sufficient to establish equitable estoppel as

20   Plaintiff must show some active conduct by Defendants that is "above and beyond the

21   wrongdoing upon which the plaintiff's claim is filed, to prevent the plaintiff from suing in

22   time." *Lukovsky*, 535 F.3d at 1052, *citing Guerrero*, 442 F.3d at 706.

23         Lastly, Plaintiff claims that Defendants' counsel had a duty to plead untimeliness in

24

25   ─────────────────

26   [5] On the same page of his SAC wherein he cites section 352.1, Plaintiff asserts that a Ninth
     Circuit case "Dennis Ervine v. (Woodford?)" held that tolling applied to a death row
27   prisoner.  Dkt. No. 54-24 at 4.  However, a search in Westlaw yields no result for such a
     case.

28                                                  17

2014 when Defendants first moved for dismissal, and having "slept on her rights," counsel should be barred from benefitting by dismissal six years thereafter.  Dkt. No. 177 at 44. He repeats this assertion in his supplemental opposition.  Dkt. No. 181 at 2-3.  But as Defendants point out in reply and sur-reply, Plaintiff filed his operative pleadings adding new claims and Defendants after 2014.  Dkt. No. 179 at 8, citing Dkt. No. 54, 67; Dkt. No. 203 at 6.  Therefore, Defendants had no basis to raise the statute of limitations at the time they filed their initial dispositive motion.  *Id.*  Furthermore, Defendants' failure to raise a statute-of-limitations defense in an initial pleading does not preclude them from raising it later absent prejudice to Plaintiff.  *See Rivera v. Anaya*, 726 F.2d 564, 566 (9th Cir. 1984) (citing *Healy Tibbits Construction Co. v. Insurance Co. of North America*, 679 F.2d 803 (9th Cir. 1982) (holding defendant's failure to raise the statute of limitations defense in initial pleading did not preclude him from making a motion for summary judgment based on that defense)).  Here, no prejudice has been claimed by Plaintiff.  Based on the foregoing, Plaintiff has failed to establish any basis for equitable estoppel.

Lastly, Plaintiff cannot avoid the untimeliness bar by blaming his counsel for failing to include all the claims herein in the original complaint.  In this respect, Plaintiff appears to be asserting equitable tolling.  This Court must give effect to California's tolling provisions, including its equitable tolling rules.  *See Butler*, 766 F.3d at 1198.  Defendants assert that the California Supreme Court has considered the plight of litigants who receive bad legal advice, then fail to file within applicable limitations, and held that the "loss of the cause of action must fall upon a plaintiff who obtains that advice, rather than upon a wholly uninvolved defendant."  Dkt. No. 163 at 18, citing *Gutierrez v. Mofid*, 39 Cal.3d 892, 922 (1985).  The state high court provided several justifications for this result: (1) "[s]tatutes of limitation are designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared" and in this way "[l]imitations statutes afford

repose by giving security and stability to human affairs"; (2) "the right to be free of stale claims comes to prevail over the right to prosecute them"; and (3) "the plaintiff is generally charged with the lapses of attorneys acting in his behalf" and his "remedy is a suit for legal malpractice against his counsel." *Id.* at 898-900.  The Ninth Circuit has also deferred to *Gutierrez* in affirming the dismissal as untimely a *pro se* plaintiff's personal injury action and rejecting her equitable tolling argument.  *Baker v. California Highway Patrol*, 601 Fed.Appx. 556 (9th Cir. 2015) (*citing Gutierrez v. Mofid*, 39 Cal.3d 892, 218 (1985).  Accordingly, Plaintiff is not entitled to equitable tolling based on counsel's actions.  His remedy in this respect is a suit for legal malpractice against counsel.  *See Gutierrez*, 39 Cal.3d at 900.

Based on the foregoing, the Court finds that Claims 1, 2, 3, 5, 7, and 10 are untimely and must be dismissed.  Defendants' motion in this regard is granted.

Plaintiff also asserts Claim 10 against unserved Defendants Moore and Rodriguez. *See supra* at 3, fn. 1.  Because Defendants Moore and Rodriguez are in positions similar to served Defendants with regard to the untimeliness of Claim 10, the motion to dismiss is granted as to these Defendants as well.  *See Abagninin v. AMVAC Chemical Corp.*, 545 F.3d 733, 742 (9th Cir. 2008) (holding district court properly granted motion for judgment on the pleadings as to unserved defendants where such defendants were in a position similar to served defendants against whom claim for relief could not be stated).

### 2.    Harassment Claims 4, 5, 8, and 9

Plaintiff claims that for approximately one year before the February 4, 2012 incident, he was harassed by Defendants Odom and Robberecht.  *See supra* at 4.  Plaintiff claims he told Defendant Ebert about the harassment by Defendant Robberecht in December 2011.  *Id.*  Plaintiff does not state Defendant Ebert's response.  *Id.*

Defendants assert that Plaintiff's harassment-based Claims 4, 5, 8, and 9 against Defendants Ebert and Robberecht are untimely.  Dkt. No. 163 at 13.  Defendants concede

United States District Court
Northern District of California

that Plaintiff grieved these claims in inmate grievance No. SQ-12-00010, which completed the exhaustion process on June 29, 2012, and tolled the limitations period. *Id.* at 14. Defendants also concede that Plaintiff further tolled his state-law claims while he pursued the government-claims process through October 18, 2012. *Id.* Defendants assert that Plaintiff had two years to file Claim 4 under federal law, and six months to file Claims 5, 8, and 9 under state law. *Id.* at 14. Defendants point out that although Plaintiff initially filed suit against Defendant Odom on January 12, 2014, he did not state claims against Defendants Robberecht or Ebert at that time. *Id.*; Dkt. No. 1. They also point out that despite knowing well their identifies and the basis for suit against them, Plaintiff waited until November 13, 2015, to add Defendants Robberecht and Ebert to this lawsuit for the very first time in the SAC. Dkt. No. 163 at 14; Dkt. No. 54. Defendants also assert that Plaintiff cannot make Claims 5, 8, and 9 timely using the relation-back doctrine because his original January 12, 2014 complaint still far exceeds the six-month statutory period for state-law claims that began on October 18, 2012. Dkt. No. 163 at 14. Defendants further assert that Claim 4 does not relate back because, in addition to a common nucleus of operative facts, federal and California law impose additional albeit different hurdles for adding new parties to previously filed claims, and although Plaintiff is entitled to the most lenient of the two standards, he satisfies neither. *Id.* at 14-15. Based on the foregoing, Defendants Ebert and Robberecht request dismissal of Claims 4, 5, 8, and 9 against them.

After a careful review of the papers, the Court finds Claims 4, 5, 8, and 9 against Defendants Ebert and Robberecht are untimely and do not relate back to the original complaint. Generously giving Plaintiff the latest date of accrual as October 18, 2012, when his government-claims process was completed, he had two years thereafter to file timely federal claims, *i.e.*, by October 18, 2014, and six months until April 18, 2013, to file timely state-law claims against Defendants Ebert and Robberecht for their alleged harassment. However, he did not file any claim against them until he named them in the

SAC on November 13, 2015, which was long after the statute of limitations expired on his federal and state law claims.

In opposition to Defendants' statute of limitations defense, Plaintiff sets forth the arguments discussed in the prior section, asserting that his claims relate back to the original complaint. *See supra* at 14. Plaintiff alleged in the original complaint that for approximately one year prior to the herein incident, he was "subjected to terrorist threats and harassment at the encouragement and behest of Defendant Odom." Dkt. No. 1 at 5. That allegation involved the general claim of harassment. Therefore, the issue here is whether Plaintiff can add new parties, *i.e.*, Defendants Ebert and Robberecht, to his previously filed claim of harassment against Defendant Odom. As Defendants point out, Plaintiff is entitled to the most lenient of the standards between federal and California law. Dkt. No. 163 at 14, citing *Butler*, 766 F.3d at 1200. In addition to the requirement that there be a common nucleus of operative facts discussed in the previous section, *see supra* at 12-13, federal and California law impose additional and different hurdles for adding new parties to previously filed claims. As discussed below, Plaintiff fails under either standard.

The California test contains three additional factors: (1) Plaintiff must use Code of Civil Procedure section 474 to benefit from the relation-back doctrine and add new defendants by substituting them for an existing fictitious Doe defendant named in the original complaint; (2) he must be "genuinely ignorant" of the new defendants' identifies when he filed his original complaint; and (3) the delay must not prejudice the new defendants. *Woo v. Superior Court*, 75 Cal.App.4th 169, 176 (1999). Comparatively, the federal rules permit Plaintiff to add new defendants to previously filed claims if the new defendants: (1) received such notice of the action that they will not be prejudiced in defending on the merits; (2) knew or should have known that the action would have been brought against them, but for a mistake concerning the proper party's identify; and (3) Plaintiff fulfills these requirements within 120 days after the original complaint is filed, as

prescribed by Federal Rule of Civil Procedure 4(m).  Fed. R. Civ. P. 15(c)(1)(C).  "Rule 15(c)(1)(C)(ii) asks what the prospective <u>defendant</u> knew or should have known during the Rule 4(m) period, not what the <u>plaintiff</u> knew or should have known at the time of filing her original complaint."  *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 548 (2010); *Butler*, 766 F.3d at 1203.

First, Plaintiff fails to satisfy the California test for relation-back because he added Defendants Ebert and Robberecht as entirely new parties in the SAC and made no statement of his intent to substitute them for existing fictitious Doe defendants named in the original complaint.  *Woo*, 75 Cal.App.4th at 176.  The Court notes that the original complaint named "DOES 1-50" as defendants, but nowhere in the complaint does he allege that a Doe Defendant was specifically involved in the harassment by Defendant Odom.  Dkt. No. 1 at 4, 5, 9, 10, 12-13.  Furthermore, he cannot show that he was "genuinely ignorant" of Defendants Ebert and Robberecht's identities because, as Defendants point out, Plaintiff interacted with them, met with them, corresponded with them, and grieved claims against them in 2011 and 2012, well before initiating this lawsuit in 2014.  For example, Plaintiff claims he communicated several times to Defendant Ebert in December 2011 about Defendant Robberecht's harassment.  *See supra* at 4.  Clearly, Plaintiff was aware before he filed the original complaint on January 12, 2014, of Defendant Ebert and Robberecht's involvement in the alleged harassment.  Nor can Plaintiff blame his retained counsel for the failure to raise these claims against Defendants Ebert and Robberecht in the original complaint when Plaintiff was aware of their identities and involvement from the beginning.  *See, e.g., Miller v. Thomas*, 121 Cal.App.3d 440, 444 (1981).

Likewise, Plaintiff also fails to satisfy the federal standard for relation back of his claims against Defendants Ebert and Robberecht because he cannot show that he would have sued them from the outset but for a mistake concerning their identifies.  Fed. R. Civ. P. 15(c)(1)(C).  As discussed in the preceding paragraph, Plaintiff had personal

22

United States District Court
Northern District of California

interactions with them well before filing the instant action.  Nor is there any evidence that Defendants Ebert and Robberecht had notice of the action within the 120 days prescribed by Rule 4(m) after the original complaint was filed: the original complaint was filed on January 12, 2014, while the SAC was filed twenty-two months later, on November 13, 2015, well beyond the 120 days.  Dkt. Nos. 1, 54.  Accordingly, Claims 4, 5, 8, and 9 against Defendants Ebert and Robberecht in the SAC do not relate back to the original complaint.

For the same reasons discussed above, Plaintiff is not entitled to equitable estoppel on these claims because he has failed to establish that Defendants Ebert and Robberecht acted to prevent Plaintiff from filing suit against them.  *See supra* at 14-16; *Lukovsky*, 535 F.3d at 1052.  Accordingly, the Court finds that Claims 4, 5, 8, and 9 against Defendants Ebert and Robberecht are untimely and must be dismissed.  Defendants' motion in this regard should be granted.

### 3.    State Law Claims 5, 6, 8, and 9

State law Claims 5, 6, 8, and 9 are based on Defendant Anderson's response to the February 4, 2012 stabbing, and Defendants Anderson, Odom, and Hamilton's alleged participation or acquiescence in Plaintiff's harassment for a year prior to the stabbing incident.  *See supra* at 4.  Plaintiff attempted to grieve these allegations against Defendant Anderson and harassment allegations against Defendant Odom in an administrative appeal submitted on February 19, 2012, which he then attempted to pursue through April 18, 2013.  *Id.*  Defendants point out that the grievance contains no allegations of harassment or conspiracy against Defendants Anderson or Hamilton.  Dkt. No. 163 at 16.  Nevertheless, Defendants concede Plaintiff's harassment and conspiracy claims against Defendants Anderson and Hamilton are tolled during Plaintiff's pursuit of the government-claims process through October 18, 2012.  *Id.*  Even so, whether using the accrual date of either April 18, 2013 or October 18, 2012, Defendants assert Plaintiff's claims fall outside of the

six-month limitations period under the California Government Claims Act because he did

not file this suit until January 12, 2014.  *Id.*  Therefore, Defendants Anderson, Hamilton,

and Odom request dismissal of state law Claims 5, 6, 8, and 9.

In his supplemental opposition, Plaintiff asserts that he had three years to submit

state law claims from the date of the "crime."  Dkt. No. 181 at 3, 13, 16. 19-20.

Defendants point out in their sur-reply that the Claim Board's decision dated October 18,

2012, explicitly stated the following:

> Subject to certain exceptions, you have only six months from the date this
> notice was personally delivered or deposited in the mail to file a court
> action on this claim.  See Government Code Section 945.6.  You may seek
> the advice of an attorney of your choice in connection with this matter.  If
> you desire to consult an attorney, you should do so immediately.

Dkt. No. 163-2 at 15, Defs.' RJN, Ex. B.  Accordingly, Plaintiff was clearly informed that

he had six-months to file suit.

Plaintiff's belief that he had three years to file state-law claims is wrongly based on

a form from the California Victim Compensation Board, which states that victims of

crimes have three years to seek indemnification from the Board for pecuniary loss.  Dkt.

No. 181 at 20.  As Defendants point out, Plaintiff's eligibility for such compensation from

the Board is separate from this lawsuit.  Dkt. No. 203 at 3, citing Cal. Gov. Code § 13951,

*et seq.*  Moreover, even assuming he was entitled to such compensation as a victim,

Plaintiff had to file such a claim within three years of the "crime."  According to the

Government Claims Form filed by Plaintiff, the date of the incident was "February 4, 2012

& related conspiracies."  Dkt. No. 163-2 at 15-16.  Therefore, he had three years, i.e., until

February 4, 2015, to file these claims.  However, Plaintiff raised these state-law claims for

the first time in his SAC on November 13, 2015, which was over nine months after the so-

called three years limitations period had expired.  Accordingly, this argument is without

merit.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

The Court finds these pendant state law claims are clearly untimely.  Plaintiff had six months from the accrual of the injury to file pendant state law claims in California.  *See* Cal. Gov't. Code § 911.2.  Assuming the date of accrual was April 18, 2013, when Plaintiff attempted to exhaust administrative remedies, Plaintiff had six months thereafter, *i.e.*, until October 18, 2013, to file a timely state claim.  However, Plaintiff did not file this action until January 12, 2014, nearly three months later.  As such, even if the claims as raised in the SAC related back to the original complaint, they are still untimely.  Accordingly, Defendants' motion to dismiss state law Claims 5, 6, 8, and 9 should be granted.

### 4.    Continuing-Violation Doctrine

In his supplemental opposition, Plaintiff asserts a series of threats and intimidations that took place "starting from at least 2011 through the end of 2013; a two year lengthy time span."  Dkt. No. 181 at 5-13.  Defendants construe these arguments as an attempt to invoke the continuing-violation theory of delayed accrual, and assert his efforts fall short.  Dkt. No. 203 at 4.

The continuing violation doctrine is an exception to the discovery rule of accrual which allows a plaintiff to seek relief for events outside of the limitations period.  *See Bird v. Dep't of Human Servs.*, 935 F.3d 738, 746 (9th Cir. 2019) (citing *Knox v. Davis*, 260 F.3d 1009, 1013 (9th Cir. 2001)).  The Ninth Circuit has recognized two applications of the continuing violations theory: (1) the "related acts" continuing violation theory, also referred to as the "serial acts" theory, and (2) the maintenance of a discriminatory system both before and during the limitations period, also referred to as the systematic branch of the continuing violations doctrine.  *Id.*  Here, Plaintiff's allegation that he was subjected to repeated threats indicates that the applicable theory is the first, *i.e.*, "related acts" or "serial acts."  Prior to 2002, the "related acts" continuing violation theory allowed plaintiff to seek relief for events outside of the limitations period if a series of violations are related closely

25

1   enough to constitute a continuing violation and that one or more of the acts falls within the

2   limitations period.  *See Bird*, 935 F.3d at 746.  But the Supreme Court limited the related

3   acts continuing violation theory in *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101,

4   114 (2002), holding that "'discrete . . . acts are not actionable if time barred, even when

5   they are related to acts alleged in timely filed charges' because '[e]ach discrete . . . act

6   starts a new clock for filing charges alleging that act.'"  *Bird*, 935 F.3d at 747 (citing

7   *Morgan*, 536 U.S. at 113).  *See also Carpinteria Valley Farms, Ltd. v. County of Santa*

8   *Barbara*, 344 F.3d 822, 829 (9th Cir. 2003) ("Although *Morgan* was a Title VII case… we

9   have applied *Morgan* to bar § 1983 claims predicated on discrete time-barred acts, not-

10  withstanding that those acts are related to timely filed claims.").  In *Bird*, the Ninth

11  Circuit's concluded that after *Morgan*, "little remains of the continuing violations

12  doctrine."  935 F.3d at 748.  "Except for a limited exception for hostile work environment

13  claims – not at issue here – the serial acts branch is virtually non-existent."  *Id.*

14          Under the foregoing precedent, the Court finds Plaintiff's continuing-violation

15  theory fails to save any of the challenged claims from being untimely.  Each alleged

16  discrete act must be timely in order be actionable.  Here, the last discrete "act" alleged by

17  Plaintiff occurred on November 21, 2013.  Dkt. No. 203 at 4, citing Dkt. No. 181 at 13, 15.

18  This act was by a non-party Officer Brown, who, on November 21, 2013, delivered a

19  chrono memorializing a November 8, 2012 classification hearing.  *Id.*  Plaintiff asserts that

20  the delivery of this chrono by Officer Brown "was a new and separate threat, with the

21  warning highlighted, reemphasizing the death threats."  Dkt. No. 181 at 13.  This

22  "warning" to which Plaintiff refers is the ICC's explanation of the "Grade A R/M #4"

23  exercise yard's "no warning shot policy," which he claims the ICC had never previously

24  given him in the past 17 years of his incarceration at SQSP.  Dkt. No. 181 at 12; Dkt. No.

25  54-44 at 5.  Plaintiff therefore construes this recent explanation as a "death threat."  *Id.*

26  However, the Court agrees with Defendants that the mere act of delivering this chrono by

United States District Court
Northern District of California

1  Officer Brown bears no indicia of wrongfulness.  Officer Brown signed and dated the

2  chrono at Plaintiff's request, without highlighting, embellishing, or editorializing.  Dkt.

3  No. 54-44 at 4-5.  The chrono itself merely memorialized a routine classification hearing

4  on November 8, 2012, that Plaintiff attended; Officer Brown was not involved in that

5  hearing.  *Id.* at 5.  Accordingly, there is no support for the assertion that this action

6  constitutes a discrete actionable event where Officer Brown's action did not violate

7  Plaintiff's rights under state or federal law.  *Id.*  But even if Officer Brown's action was

8  actionable, Plaintiff had six months thereafter, *i.e.*, until May 21, 2014, to file a timely

9  claim.  However, he did not raise any claim against Officer Brown in the original

10  complaint nor in the SAC on November 13, 2015.  Accordingly, any claim against Officer

11  Brown at this point would be untimely.  Furthermore, the previous discrete act Plaintiff

12  alleges before Officer Brown's delivery is the November 8, 2012 ICC hearing.  Dkt. No.

13  181 at 12.  Any state claim based on the ICC's action on that date had to be filed within six

14  months, *i.e.,* no later than May 8, 2013, but Plaintiff did not file this action until January

15  2014, well past that deadline.  In addition, Officer Brown's 2013 delivery of the November

16  8, 2012 chrono has nothing to do with the searches of Plaintiff's cell on August 21 and

17  October 23, 2011, or harassment claims against Defendant Odom, and there is no

18  discussion or reference to these claims in the November 8, 2012 chrono.  Accordingly,

19  these discrete acts alleged by Plaintiff do not save any of the state claim claims discussed

20  previously from being untimely under the continuing-violation doctrine.

21  　　　　Nor do either of these discrete acts save the federal claims from being untimely.

22  Plaintiff raised the cell-search claims and the harassment claims against additional

23  Defendants for the first time in his SAC on November 13, 2015.  Federal claims based on

24  the November 8, 2012 ICC hearing had to be filed by November 8, 2014.  They were not.

25  On the other hand, Officer Brown's act on November 21, 2013, of delivering the chrono to

26  Plaintiff was within the two years limitations period of the SAC, but Plaintiff included no

27

28

United States District Court
Northern District of California

27

claim against Officer Brown based on his actions, nor could he have.  As discussed above, there was no indicia of wrongdoing in Officer Brown's actions on that day; he merely delivered the chrono from the ICC hearing on November 8, 2012.  *See supra* at 26. Accordingly, none of the federal claims discussed previously are rendered timely under the continuing-violation doctrine.

### C.     Remaining Arguments Regarding State Law Claims 5, 7, 8 and 9

Defendants claim the Government Claims Act requires Plaintiff file a government claim before litigating under state law, but that he did not submit one seeking relief for mail interference or the cell searches conducted on August 21 and October 23, 2011.  Dkt. No. 163 at 19-20.  Defendants also assert that Claims 5, 8, and 9 fail to state actionable relief.  Dkt. No. 163 at 21-23.  The Court has already determined that these state law claims are all clearly untimely, as discussed above.  *See supra* at 22.  Plaintiff has failed to show otherwise in opposition.  Accordingly, the Court need not discuss these additional grounds for dismissal.

### IV.    Motion for Sanctions

Before filing their motion to dismiss, Defendants filed a motion for sanctions, requesting the Court dismiss Plaintiff's claims against them because Plaintiff refuses to respond to basic contention discovery and comply with the Court's multiple orders compelling the same.  Dkt. No. 162 at 5.  In response, Plaintiff does not dispute that he failed to respond to Defendants' written discovery in a timely manner.  Dkt. No. 169. Rather, he provides twenty-four "justifications" for his failure to comply.  *Id.* at 3-4.  In reply, Defendants address each explanation and asserts that this "laundry list of excuses" do not hold up under scrutiny.  Dkt. No. 172 at 1, 7.

Federal Rule of Civil Procedure 37 permits the district court, in its discretion, to enter a default judgment against a party who fails to comply with an order compelling discovery.  Fed. R. Civ. P. 37(b)(2)(c); *Computer Task Group v. Brotby*, 364 F.3d 1112,

1115 (9th Cir. 2004).  "In deciding whether a sanction of dismissal or default for

noncompliance with discovery is appropriate, the district court must weigh five factors:

'(1) the public's interest in expeditious resolution of litigation; (2) the court's need to

manage its docket; (3) the risk of prejudice to the [opposing party]; (4) the public policy

favoring disposition of cases on their merits; and (5) the availability of less drastic

sanctions.'"  *Id.* (Citations omitted).  Before imposing such a substantial remedy, the

district court should first implement lesser sanctions, warn the offending party of the

possibility of dismissal, consider alternative lesser sanctions and determine that they are

inappropriate.  *Id.* at 1116.  *See, e.g.*, *Leon v. IDX Systems*, 464 F.3d 951, 960-61 (9th Cir.

2006) (finding dismissal appropriate where party acted in bad faith in despoiling evidence

under five part test).  "Only 'willfulness, bad faith, and fault' justify terminating

sanctions."  *Connecticut General Life v. Providence*, 482 F.3d 1091, 1096 (9th Cir. 2007)

(quoting *Jorgensen v. Cassiday*, 320 F.3d 906, 912 (9th Cir. 2003)).

Here, the Court finds that although the first and second factors weigh in favor of

granting the motion, the remaining factors weigh against it, especially in light of the fact

that Defendants' motion to dismiss has resolved all but one claim against two remaining

Defendants.  This matter has been whittled back down to the Eighth Amendment claim

against the two original Defendants Anderson and Odom, and it would prejudice Plaintiff

to dismiss this claim as he would have no other avenue to pursue a remedy for an incident

that occurred over eight years ago.  Furthermore, the public policy favoring disposition of

this remaining claim on the merits weighs against granting the motion for terminating

sanctions.  Lastly, there are less drastic sanctions available, including the imposition of

monetary sanctions pursuant to 28 U.S.C. § 1927.  *Fink v. Gomez*, 239 F.3d 989, 991 (9th

Cir. 2001).  Moreover, adequate procedural due process requires that Plaintiff be afforded

at least notice of the type of sanctions the Court is considering and an opportunity to

respond.  *Lasar v. Ford Motor Co.*, 399 F.3d 1101, 1113-14 (9th Cir. 2005).  Here,

United States District Court
Northern District of California

United States District Court
Northern District of California

Plaintiff was generally advised that the failure to comply with the Court's order "may result in the imposition of sanctions" with a citation to Rule 37(d). Dkt. No. 148 at 2. Plaintiff was not specifically advised that a potential sanction for his failure to comply would be dismissal of the claims. Having now been made aware of this potential sanction, perhaps Plaintiff will be more diligent in complying with Defendants' discovery in a timely manner.

Based on the foregoing, Defendants' motion for terminating sanctions is DENIED without prejudice. Dkt. No. 162. This matter shall now proceed on the merits of the remaining Eighth Amendment claim against Defendants Anderson and Odom. Plaintiff is now advised that should he continue to fail to comply to Defendants discovery requests on that remaining claim in a timely manner, the Court will reconsider a motion from Defendants for terminating sanctions against Plaintiff pursuant to Rule 37(b)(2(A)(v).

## II.  CONCLUSION

For the forgoing reasons, the Court orders as follows:

1.      Defendants' motion to dismiss is **GRANTED.** Dkt. No. 163. The following federal claims are **DISMISSED with prejudice** as untimely: Claim 1 (First Amendment retaliation) against Defendants Odom and Robberecht; Claims 2 and 3 (First and Sixth Amendment legal mail) against Defendants Givens, McLelland, Robberecht, Welton; Claim 4 (Eighth Amendment safety) against Defendants Ebert and Robberecht; and Claim 10 (Fourteenth Amendment due process) against Defendants Chappell, Givens, Jackson, Luna, McLelland, and, Robberecht. The following state law claims are **DISMISSED with prejudice** as untimely: Claim 5 (California Constitutional claims equivalent to the federal claims found cognizable); Claims 6 and 7 (Bane Act) against Defendants Odom, Givens, McLelland, Robberecht, Welton; Claim 8 (negligence per se) against Defendants Anderson, Ebert, Odom, and Robberecht; and Claim 9 (civil

United States District Court
Northern District of California

conspiracy) against Anderson, Hamilton, Odom, and Robberecht.

2.     Because the Court has found Claim 10 under the Fourteenth Amendment to be untimely in its entirety, the claim is also barred as untimely against unserved Defendants Moore and Rodriguez. *See supra* at 18.  Accordingly, Claim 10 against Defendants Moore and Rodriguez is also **DISMISSED with prejudice**.

3.     Defendants' motion for sanctions is **DENIED without prejudice**.  Dkt. No. 162.  Should Plaintiff fail to comply with Defendants' discovery requests going forward, the Court will reconsider a motion from Defendants for terminating sanctions on the remaining claims.

4.     The only timely claim that remains is Plaintiff's Eighth Amendment claim against Defendants Anderson and Odom.  This action shall proceed solely on the deliberate indifference to safety claim against Defendants Anderson and Odom based on the February 4, 2012 stabbing.  The Clerk shall terminate all other Defendants from this action.

5.     No later than **ninety-one (91) days** from the date this order is filed, Defendants Anderson and Odom shall file a motion for summary judgment or other dispositive motion with respect to the remaining claims in this action.

a.     Any motion for summary judgment shall be supported by adequate factual documentation and shall conform in all respects to Rule 56 of the Federal Rules of Civil Procedure.  Defendants are advised that summary judgment cannot be granted, nor qualified immunity found, if material facts are in dispute.  If any Defendant is of the opinion that this case cannot be resolved by summary judgment, he shall so inform the Court prior to the date the summary judgment motion is due.

b.     **In the event Defendants file a motion for summary judgment, the Ninth Circuit has held that Plaintiff must be concurrently provided the appropriate warnings under *Rand v. Rowland*, 154 F.3d 952, 963 (9th Cir. 1998) (en banc).  *See Woods v. Carey*, 684 F.3d 934, 940 (9th Cir. 2012).**

6.      Plaintiff's opposition to the dispositive motion shall be filed with the Court and served on Defendants no later than **twenty-eight (28) days** from the date Defendants' motion is filed.

Plaintiff is also advised to read Rule 56 of the Federal Rules of Civil Procedure and *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) (holding party opposing summary judgment must come forward with evidence showing triable issues of material fact on every essential element of his claim). Plaintiff is cautioned that failure to file an opposition to Defendants' motion for summary judgment may be deemed to be a consent by Plaintiff to the granting of the motion, and granting of judgment against Plaintiff without a trial. *See Ghazali v. Moran*, 46 F.3d 52, 53–54 (9th Cir. 1995) (per curiam); *Brydges v. Lewis*, 18 F.3d 651, 653 (9th Cir. 1994).

7.      Defendants *shall* file a reply brief no later than **fourteen (14) days** after Plaintiff's opposition is filed.

8.      All other provisions in the Court's Order of Service, Dkt. No. 69, shall remain in effect.

This order terminates Docket Nos. 162 and 163.

**IT IS SO ORDERED.**

Dated: _September 29, 2020___

BETH LABSON FREEMAN
United States District Judge

1

2

3

4    Order Granting Defs' MTD; Denying M. for Sanctions; Sched. Brief.
     PRO-SE\BLF\CR.14\000166Panah_grant-MTD.brief

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California