UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOOMAN PANAH,<br><br>          Plaintiff,<br><br>     v.<br><br>STATE OF CALIFORNIA DEPT. OF CORRECTIONS AND REHABILITATION, et al.,<br><br>          Defendants. | Case No. 14-00166 BLF (PR)<br><br>**ORDER ADDRESSING PENDING MOTIONS**<br><br><br><br>(Docket. Nos. 235, 245, 247, 248, 262, 263, 264, 266) |

Plaintiff, an inmate on death row at California's San Quentin State Prison ("SQSP"), filed a civil rights complaint under 42 U.S.C. § 1983, alleging unconstitutional acts by SQSP correctional officers. Dkt. No. 1. The operative complaint in this action is Plaintiff's second amended complaint ("SAC") along with a supplemental complaint. Dkt. Nos. 54, 67. The Court found the SAC and supplemental stated cognizable claims, and ordered the matter served on Defendants. Dkt. No. 69. On September 29, 2020, the Court granted Defendants' motion to dismiss several claims as untimely. Dkt. No. 206. The only remaining claim is Plaintiff's Eighth Amendment claim against Defendants Anderson and Odom; all other defendants were terminated from this action. *Id.* at 31.

Defendant Odom filed a motion for summary judgment.[1]  Dkt. No. 237.  Plaintiff filed opposition, Dkt. No. 249, and Defendants filed a reply, Dkt. No. 259.  Defendant Odom's submitted summary judgment motion will be addressed in a separate order.

The Court herein addresses the other pending motions: Plaintiff's motion for a protective order, Dkt. No. 235; Plaintiff's motion and renewed motion to compel, Dkt. No. 245; Plaintiff's request to defer briefing on his opposition, Dkt. No. 248; Plaintiff's motion for protective order to file inmate declarations under seal, Dkt. No. 248; Plaintiff's motion to appoint pro bono counsel, Dkt. No. 262; Plaintiff's motion to add newly obtained material evidence, Dkt. No. 263; Defendants' motion to strike the newly obtained material evidence, Dkt. No. 264; and Defendants' motion for extension of time to file reply to their motion to strike, Dkt. No. 266.

# I.  DISCUSSION

## A.    Motions for Protective Order and Appointment of Counsel

Plaintiff moves for a protective order based on allegedly "abusive conduct perpetrated" against him by SQSP staff to prevent him from compliance with a deposition in this matter on January 28, 2021.  Dkt. No. 235.  Plaintiff's allegations include excessive unclothed strip searches, repeated anal visual searches, and harassment.  *Id.* at 2.  Plaintiff seeks a court order directing Warden Ronald Broomfield and defense counsel to "preserve all SQSP security videotapes" of his movements on that day.  *Id.* at 1.  However, these allegations are against non-parties who have no involvement in this action involving an Eighth Amendment claim against Defendants Anderson and Odom.  There is no basis for a protective order through this action against non-parties, including against the Warden.[2]  If

---

[1] Defendants admit that there are factual disputes as to Defendant Anderson that cannot be resolved at summary judgment.  Dkt. No. 237 at 1, fn. 1.

[2] The Court notes that Plaintiff's federal public defender for his post-conviction and clemency proceedings already made a written request on his behalf to the Warden, requesting the preservation of video and reports of the body scans that Plaintiff underwent

United States District Court
Northern District of California

1    Plaintiff wants relief for his injuries from the alleged retaliatory acts on January 28, 2021,

2    then he must pursue such claims in a new and separate action and pay the filing fee.  As

3    such, with regards to his request for the testimony of the A.G.'s team members who

4    witnessed some of the alleged acts, Dkt. No. 235 at 5, he must seek it through the new

5    action.

6         Plaintiff also requests that the court sanction Defendants and "strike

7    A.G./Defendants' right of use of" his deposition due to the "egregious retaliatory

8    misconduct & unhealthy & abhorrent illegal conditions."  *Id.* at 5.  At the same time,

9    Plaintiff wants to be permitted to use "his choice" of select portions of his testimony.  *Id.*

10   There is no indication that Defendants and counsel in this action were responsible for the

11   alleged acts by non-parties against Plaintiff.  Accordingly, the request is DENIED.

12        Plaintiff makes another renewed request for appointment of counsel based on

13   "'exceptional circumstances; danger to [his] health, [and] oppression & duress."  Dkt. No.

14   235 at 5.  Despite the challenges he faces, Plaintiff continues to demonstrate his ability to

15   aggressively prosecute this action in *pro se*.  Furthermore, his new allegations are not

16   related to the underlying claims in this action and therefore cannot be a basis for

17   appointment of counsel in this matter.  Accordingly, the renewed motion is DENIED for

18   lack of exceptional circumstances.  *See Rand v. Rowland*, 113 F.3d 1520, 1525 (9th Cir.

19   1997); *Agyeman v. Corrections Corp. of America*, 390 F.3d 1101, 1103 (9th Cir. 2004);

20   *Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991); *Wilborn v. Escalderon*, 789 F.2d

21   1328, 1331 (9th Cir. 1986).  For the same reason, Plaintiff's subsequent motion requesting

22   the Court to solicit pro bono counsel on his behalf for the same grounds as above is also

23   DENIED for lack of exceptional circumstances.  Dkt. No. 262.

24   **B.    Motion to Compel Documents**

25        Plaintiff has filed a motion to compel, asking the Court to review and reconsider its

26

27   that day.  Dkt. No. 235-1 at 4-5.

28                                    3

previous rulings regarding his various discovery requests.  Dkt. No. 245.

Rule 37(a)(1) requires a party seeking to compel further responses to discovery to certify that he has previously "in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action."  Fed. R. Civ. Proc. 37(a)(1).  Under the Local Rules, the parties are required to attempt to resolve "all disputed issues" in good faith before this Court will even entertain a motion to compel.  Civil L.R. 37-a(1); Civil L.R. 1-5(n).

### 1.   Plaintiff's Discovery Requests and Related Filings

The record shows that Plaintiff filed two formal sets of discovery in this matter. Several months after the Court ordered service on Defendants, Plaintiff filed his first motion for production of documents on November 26, 2018.  Dkt. No. 107.  Defendants served their response on February 22, 2019.  Dkt. No. 165 at 1; Dkt. No. 165-1.  Then on August 28, 2019, Plaintiff alleged that Defendants had submitted "perjurious declarations" in support of their discovery responses.  Dkt. No. 138.  He also submitted a declaration of another prisoner supporting his "reply" to Defendants' discovery responses.  Dkt. No. 139. At the same time, he filed a "motion seeking permission to file an addendum" to his previously filed documents under Docket Nos. 120, 121, 122, 123, and 134.  Dkt. No. 140. The Court called for a response to Plaintiff's motion.  Dkt. No. 141.  On January 8, 2020, Plaintiff clarified that he intended those filings to move the Court for an order to compel Defendants to revisit their discovery responses.  Dkt. No. 158.  This motion to compel was stayed at Defendants' request, pending resolution of their motion to dismiss.  Dkt. No. 168. Along with their motion to stay, Defendants filed a copy of their response dated February 22, 2019, to Plaintiff's first discovery request.  Dkt. No. 165-1.

Then on May 26, 2020, Plaintiff requested additional discovery, Dkt. No. 187, which Defendants construed as a "Request for Production of Documents (Set Two); Defendants timely responded with objections.  Dkt. No. 250-1 at 2, Ex. A.  In subsequent

4

filings during May and June 2020, Plaintiff continued to claim that Defendants' declarations in support of their official-information privilege (in response to his first discovery request) were false.  Dkt. Nos. 188, 189, 192.

On January 21, 2021, Plaintiff filed another motion to compel Defendants to produce discovery which he had previously requested.  Dkt. No. 230.  Defendants opposed the motion, asserting Plaintiff failed to meet and confer in good faith before seeking court intervention, among other arguments.  Dkt. No. 232.  The Court denied the motion because Plaintiff admitted that he did not even attempt to meet and confer.  Dkt. No. 239 at 9.  The Court directed the parties to commence to resolve discovery disputes within two weeks from the order.  *Id.* at 9-10.

On June 10, 2021, Plaintiff filed a renewed motion to compel which is now before the Court.  Dkt. No. 245.

### 2.    Renewed Motion to Compel

In his latest motion to compel, Plaintiff moves to compel discovery of requests he made in Docket "Nos. 107; 158 to 158-2, 187."  Dkt. No. 245 at 1.  Plaintiff also moves for the Court to review and reconsider its rulings on his previous motions to compel under Docket Nos. 107, 138, 139, 140, 158, 187, 189, 192, 230, 233.  *Id.* at 8.  Plaintiff asserts that he has attempted to meet and confer with Defendants through a letter dated May 9, 2021.  *Id.* at 11; Dkt. No. 244.  Plaintiff argues that "the case hinges on credibility of [Plaintiff] versus CDCR staff," and therefore all detailed requested items are "'necessary to the ascertainment of truth' and justice in this action."  Dkt. No. 245 at 3.  Plaintiff asserts that the discovery he seeks "will more likely than not establish the complete truthful facts of an intentionally misleading[] investigation designed to protect Defendants from criminal and civil actions; thereby, evincing strong consciousness of guilty which the jury can and should use to reach guilty verdicts and enhanced punitive damages."  *Id*.  Plaintiff also asserts that discovery will "more likely than not establish that Defendants

conspired with each other and the numerous investigators to cover up Defendants['] culpability and minimize their guilt in every way possible." *Id.*  Plaintiff asserts that the "official CDCR reports are highly unreliable due to a pattern and practice of enforcing a ubiquitous 'Green Wall Code of Silence.'" *Id.*  Lastly, Plaintiff asserts that this "code of silence was practiced and enforced by Defendants personally; it could not exist and be practiced in this matter without Defendants' collaboration"; and the "so-called investigation sought a predetermined goal of exonerating all Defendants" and to engineer a "coverup" by "creating false documentary evidence designed to harm" his case. *Id.* Plaintiff asserts that "[a]ll efforts by defendants were/are designed to mislead Plaintiff and the Court, by creating a shield of deception which can only be pierced and exposed by providing all requested discovery." *Id.*

In opposition, Defendants assert they have produced over 3,000 pages of documents during discovery, and Plaintiff's motion for more discovery fails to explain how this additional discovery is proportional to the needs of this case and why discovery would preclude summary judgment under Federal Rule of Civil Procedure 56(d)(2).  Dkt. No. 250 at 1.  Defendants assert Plaintiff's request is "overbroad, disproportionate to the needs of the case, unclear, and aimless." *Id.*  Defendants also assert that Plaintiff's motion does not comply with Local Rule 37-2, which requires a motion to compel to "set forth each request in full, followed immediately by the objections and/or responses thereto," and to detail the "basis for the party's contention that it is entitled to the requested discovery and must show how the proportionality and other requirements of Fed. R. Civ. P. 26(b)(2) are satisfied." *Id.* at 2, 4-5.  Defendants point out that other than attaching or referring to past filings, Plaintiff does not explain why he is specifically entitled to each specific category of discovery, and that incorporation by reference is not permitted. *Id.* at 5, citing this Court's Standing Order Re Civil Cases, Section D.

Defendants assert that they have met all their discovery obligations by providing

1   non-privileged information and responses to two sets of discovery, and that additional

2   production is disproportionate to the needs of the case.  *Id.* at 6.  Defendants also assert

3   that the Court should uphold their assertions of privilege, including official information

4   privilege, which Plaintiff again challenges in his motion.  *Id.* at 7-8.

5          In reply, Plaintiff objects to Defendants' opposition because it "continues to rely

6   upon the knowingly perjurious declarations of K. Stinson & E. Cervantes."  Dkt. No. 257

7   at 1.  Plaintiff asserts that the Court should resolve this issue as a preliminary matter, and

8   after it finds them perjurious, strike the declarations, strike Defendants' opposition, and

9   deny their motion for summary judgment.  *Id.*

10         **3.    <u>Analysis</u>**

11         The Court finds the record shows sufficient effort to meet and confer with respect to

12  Plaintiff's first two discovery requests filed under Docket Nos. 107 and 187.  Accordingly,

13  the Court will first determine whether Defendants have responded adequately to these two

14  discovery requests or whether they should be compelled to make further disclosures.

15         **a.    <u>Plaintiff's First Set of Discovery</u>**

16         In his first discovery request, Plaintiff sought records "relating to" the February 4,

17  2012 attack, including records prior to the attack of reported bullying, as well as

18  investigative reports into the attack, any disciplinary actions against the inmate who

19  attacked Plaintiff and "all information related to" that same inmate and "other inmates."

20  Dkt. No. 107 at 3.  Plaintiff sought "all records related to the stabbing…, however

21  memorialized, including reports, summaries, eyewitness accounts; diagrams, photographs,

22  video tapes and other picture media, audio records; and all records made regarding the

23  investigation… including final reports and conclusions by" various SQSP departments and

24  officials, as well as at the "CDCR Headquarter[s'] level" and those submitted to other

25  agencies.  *Id.* at 4.  Plaintiff also requested the "complete full names of and state

26  identification number of all employees assigned to work in East Block" on the relevant

27

28                                    7

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

date, "even if not physically present in East Block at the time of the stabbing." *Id.* Lastly, he wanted a complete copy of his central file, including any confidential files, which Defendants' counsel intended to review, as well as copies of each Defendant's personnel files. *Id.* Defendants responded to this first set of discovery on February 22, 2019, providing nearly 2,400 pages of requested discovery. Dkt. No. 165-2 at 2-17, 43-45. Some of the discovery was denied or redacted, as supported by declarations from E. Cervantes and K. Stinson, asserting the official information privilege. *Id.* at 18-38. These are the "perjurious" declarations which Plaintiff challenges in the instant motion to compel. Dkt. No. 257 at 1.

The official information privilege is one of federal common law. *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1033 (9th Cir. 1990). "To determine whether the information sought is privileged, courts must weigh the potential benefits of disclosure against the potential disadvantages." *Id.* at 1033-34. The balancing test "is moderately pre-weighted in favor of disclosure." *Kelly v. San Jose*, 114 F.R.D. 653, 661 (N.D. Cal. 1987). The privilege "must be formally asserted and delineated in order to be raised properly," and the party opposing disclosure must "state with specificity the rationale of the claimed privilege." *Kerr v. United States Dist. Ct. for the Northern Dist. of Cal.*, 511 F.2d 192, 198 (9th Cir. 1975). *Kerr* requires that to allow the court to decide whether the official information privilege applies, defendants must provide with their objection a declaration or affidavit containing (1) an affirmation that the agency generated or collected the material in issue and has in fact maintained its confidentiality, (2) a statement that the official has personally reviewed the material in question, (3) a specific identification of the governmental or privacy interests that would be threatened by disclosure of the material to plaintiff and/or his lawyer, (4) a description of how disclosure subject to a carefully crafted protective order would create a substantial risk of harm to significant governmental or privacy interests, and (5) a projection of how much harm would be done to the threatened

interests if the disclosure were made.  *Kelly*, 114 F.R.D. at 670.

Defendants argue that their assertion of the official information privilege through the declarations of E. Cervantes and K. Stinson are valid because they meet the *Kelly* standards.  Dkt. No. 250 at 7, citing Dkt. No. 165-2 at 18-38.

Mr. Cervantes is currently the Litigation Coordinator at SQSP and attests that he is familiar with CDCR's confidentiality practices relating to confidential documents and CDCR's policies and procedures regarding the maintenance and retention of prison records and is authorized to certify the authenticity of the records.  Dkt. No. 165-2 at 19 (Cervantes Decl.).  He also attests that he is familiar with the numerous ways in which the disclosure of confidential information would seriously threaten and undermine the safety and security of CDCR institutions, staff, and inmates.  *Id.*  These statements satisfy the first *Kelly* standard.

Mr. Cervantes also states that he has reviewed the material in question, i.e., confidential portions of Plaintiff's central file, inmate threat-assessment questionnaire responses from February 4, 2012, administrative and mental health records of Inmate Barrett (the attacker), use-of-force review packet, work rosters, biographical, demographic, and employment information of staff, which satisfies the second *Kelly* standard.  Dkt. No. 165-2 at 19-26.  Mr. Cervantes describes how disclosing confidential information would be like handing an inmate a plan instructing him on how best to impede the investigation process, compromise its veracity, and undermine the management procedures in place to prevent dangerous and illegal activities, as well as place confidential informants at great risk and disc-incentivize them from coming forward.  *Id.* at 20.  Mr. Cervantes attests that disclosure of the inmate threat-assessment questionnaire responses are handwritten and are considered confidential for the same reasons as above, and the threat posed by disclosure is substantial.  *Id.* at 21.  With regard to Inmate Barrett's records, Mr. Cervantes states that due to the wide ranging and sensitive nature of the information contained therein,

disclosing an inmate's central file to others could subject the inmate "to assault, harassment, retaliation, fraud, identity theft, or other improperly motivated harm, including violent attacks and perhaps death." *Id.* at 23. Mr. Cervantes states that Plaintiff could be further victimized for his possession of this information, or he (or others) may target Inmate Barrett for retaliation other improperly motivated harm. *Id.* at 24. Mr. Cervantes also states that the disclosure of the use-of-force packet, which contains critical details of the types of investigative techniques used by reviewers to determine the appropriate of staff conduct prior to, during, and following the force-related incident, could threaten the integrity of the use-of-force review process, frustrate staff attempts to deal with disruptive conduct, and undermine investigations into alleged misconduct. *Id.* Mr. Cervantes states that disclosure of the work rosters, which contains private personnel information about staff and administrative information regarding shift positions and equipment, that could result in disrupting normal prison activity and redirecting staff. *Id.* at 25-26. Lastly, with respect to biographical, demographic, and employment information on staff, Mr. Cervantes states that this disclosure is strictly prohibited to protect staff and their families from assault, harassment, retaliation, or other improperly motivated harm. *Id.* at 26. These assertions satisfy the third and fifth *Kelly* standards.

With respect to the fourth *Kelly* standard, Mr. Cervantes states that a protective order would be inadequate to ensure the information will not deliberately or inadvertently be disclosed to inmates who will use it for an improper purpose, and that disclosing the information only to Plaintiff would not eliminate the substantial risks of disclosure, no matter what promises of confidentiality Plaintiff provides. *Id.* at 27. Defendants point out that inmates have limited control over their movement and property, and that theft of property by other inmates is a known occurrence. *Id.* Defendants also assert that there is no reasonable way to ensure that unknowable number of CDCR staff charged with the future administration of Plaintiff's property would (1) be aware of the confidential

United States District Court
Northern District of California

information contained therein, and (2) be able to comply with the terms of a protective order. *Id.* Defendants also assert that seemingly trivial information may be deliberately or inadvertently disclosed in casual conversation and can be used by Plaintiff to target others (or vice versa) for harassment, assault, and even death, and that Plaintiff may face an enhanced risk of further victimization, attack, or retaliation by other inmates. *Id.* Nor is it likely, Defendants assert, that a condemned inmate like Plaintiff would be deterred from sharing such information by threat of civil or criminal contempt. *Id.* In conclusion, Mr. Cervantes asserts that there is simply no way for a protective order to guarantee that the information will not make its way into the inmate population. *Id.* at 28. This statement satisfies the fourth *Kelly* standard.

Mr. K. Stinson is a Special Agent in Charge for the CDCR's Office of Internal Affairs ("OIA"). Dkt. No. 165-2 at 29. Mr. Stinson is familiar with CDCR's policies and procedures for OIA's confidential investigations, and the numerous ways in which disclosing OIA's confidential information to inmates would seriously threaten and undermine the safety and security of CDCR's prisons, staff, and inmates. *Id.* at 30. Mr. Stinson states that the results of OIA investigations into allegations of staff misconduct are confidential and cannot be disclosed; they are only released to the institution's hiring authority for us in confidential personnel decisions. *Id.* Mr. Stinson states that he has personally reviewed the material requested by Defendants' counsel for production, *i.e.*, the OIA investigation of Defendant J. Anderson's handling of her assigned position at SQSP's condemned inmate exercise yard on February 4, 2012, when Plaintiff was attacked (case number N-SQ-269-12-A, "file"). *Id.* at 31. These statements satisfy the first and second *Kelly* standards.

Mr. Stinson states that the file, in its entirety, especially the investigative memorandum, reveals the critical details of the types of investigative techniques used by OIA investigators to ascertain the truth or falsity of an inmate's accusations against a

prison staff member, and to learn what really transpired; to permit an inmate to review such materials would be like handing over a plan on how to best falsify misconduct accusations against an officer so that the untruthfulness of the allegations will be less likely to be discovered during the investigative process, thereby resulting in potentially unmerited adverse action against the officer. *Id.* at 31-32. Mr. Stinson states that the file also contains biographical information about CDCR staff which, if disclosed, would pose a threat to staff and their families. *Id.* at 33. The file also contains witness information, including confidential informants, which if disclosed, would seriously compromise CDCR's ability to conduct efficient, effective, accurate, and reliable investigations. *Id.* at 34-35. Lastly, Mr. Stinson states that the file contains numerous documents, the disclosure of which poses risks in addition to those already discussed. *Id.* at 35. Mr. Stinson states that the threat posed by disclosure of the file is substantial and not mitigated by a protective order. *Id.* at 32, 33, 36, 36. These assertions satisfy the third and fifth *Kelly* standards.

With respect to the fourth *Kelly* standard, Mr. Stinson states that a protective order would not eliminate the substantial risks of harm to either the significant governmental or privacy interests at stake. *Id.* at 36. Defendants assert it is unlikely that an inmate would be deterred from sharing such information by threat of civil or criminal contempt. *Id.* Furthermore, Defendants assert that seemingly trivial information may be deliberately or inadvertently disclosed to Plaintiff in casual conversation. *Id.* at 37. Mr. Stinson also asserts that a protective order which provided a secure copy of limited redacted portions of the file for Plaintiff to review under supervision of CDCR staff would not eliminate the substantial risks of disclosure; for example, the confidential information, including the identify and location of informants and voluntary witnesses, could be revealed by the context of their statements or by the description of events provided in the reports. *Id.* These persons, who were not required to participate in the investigative process, would

1  simply not want to run the risk that they could be identified, regardless of a protective

2  order purported to protect them.  *Id.*  In conclusion, Mr. Stinson asserts that there is simply

3  no way for a protective order to guarantee that the information will not make its way into

4  the inmate population.  *Id*. at 38.  This statement satisfies the fourth *Kelly* standard.

5       The burden then shifts to Plaintiff to prove the following in his motion to compel:

6  (1) how the requested information is relevant to the litigation or is reasonably calculated to

7  lead to the discovery of admissible evidence; (2) identify his interest that would be harmed

8  if the material were not disclosed; and (3) how that harm would occur and how extensive it

9  would be.  *Kelly*, 114 F.R.D. at 671.  Plaintiff fails to do so.  Rather, he merely asserts that

10  full disclosure is necessary to establish his credibility over the CDCR staff and to uncover

11  a conspiracy to coverup Defendants' culpability.  *See supra* at 5.  Plaintiff claims that Mr.

12  Cervantes and Stinson's declarations are "perjurious throughout because they make claims

13  of confidential privileges which are known by them to be completely false."  Dkt. No. 245

14  at 5.  He asserts that the documents which they claim are privileged are not actually

15  confidential and submits copies of documents containing similar information to prove that

16  the information is not confidential.  *Id.*  However, as Defendants point out, Plaintiff's

17  possession of these documents of unknown origin does not undermine their declarations

18  because he has not established that he is authorized to possess these documents, that they

19  were obtained through legitimate means, that they were released to inmates, or that they

20  have any bearing on the nature of the document requests or discovery in this case.  Dkt.

21  No. 250 at 8.  Neither does his production of these documents establish that Mr. Cervantes

22  and Mr. Stinson knowingly made "perjurious" statements in their declarations.  Rather,

23  their declarations set forth lengthy and detailed explanations for asserting the official-

24  information privilege and satisfy all the *Kelly* elements.  *See supra* at 8-12.

25       Furthermore, the Court agrees with Defendants that Plaintiff's requests are overly

26  broad and vague.  Even if all the discovery he seeks were neither confidential nor

27

28                                          13

privileged, Plaintiff provides no explanation, for example, as to how a full disclosure of Inmate Barrett's administrative and mental health records or the biographical, demographic, and employment information of staff, which will likely include matters that are unrelated to his Eighth Amendment claim, is "reasonably calculated to lead to the discovery of admissible evidence." *Kelly*, 114 F.R.D. at 671.  Nor does he identify his interest that would be harmed if the material were not disclosed, how that harm would occur, and how extensive it would be.  *Id.*  Accordingly, the Court finds Defendants have adequately responded to Plaintiff's first set of discovery and are entitled to the official-information privilege.

Based on the foregoing, the Court finds no merit to Plaintiff's conclusory assertion that Defendants submitted "perjurious" declarations.  Accordingly, his request to strike the declarations, Defendants' opposition, and their summary judgment is DENIED.  Dkt. No. 257 at 1.  His motion to compel further disclosure with respect to Set One of his discovery requests is DENIED.

### b.  <u>Plaintiff's Second Set of Discovery</u>

In his second discovery request on May 26, 2020, Plaintiff requested documents related to matters identified in three exhibits: (1) a letter dated April 24, 2000, from California State Senator Richard G. Polanco to Inspector General Steve White, requesting an investigation into allegations that Plaintiff was being singled out for mistreatment due to his Iranian nationality after he received a letter from Plaintiff alleging staff misconduct; (2) a letter dated May 11, 2010, from California State Senator Darrell Steinberg to Governor Schwarzenegger, requesting immediate briefing on the "allegations of abuse and racist treatment of inmates at California Department of Corrections and Rehabilitation behavior management units"; and (3) an article from the April 2020 edition of Prison Legal News by Michael Fortino, claiming that state prisons were orchestrating "gladiator fights" between inmates.  Dkt. No. 187 at 3-4.

The scope of discovery under Federal Rule of Civil Procedure 26(b)(1) is as follows: "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. Proc. 26(b)(1).

Defendants responded to Plaintiff's second discovery request on June 18, 2020, stating that they object to the requests as seeking documents that are not proportional to the needs of the case, considering the importance of the issues at stake, the amount of controversy, the parties' relative access to the information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Dkt. No. 250-2 at 3, 4-5.  Plaintiff's requests involve matters that predate the February 4, 2012 attack, and Plaintiff has failed to establish that the issues of staff misconduct in these requests are relevant to his allegations against Defendants this action.  Furthermore, Defendants state that nevertheless, they did a search and reasonable inquiry into Senator Polanco's letter and were unable to determine whether responsive records ever existed.  *Id.* at 3.  With regards to the second request based on Senator Steinberg's letter, Defendants assert that it calls for information over which they have no possession, custody, or control, i.e., the Governor's records, such that they could demand a search for responsive documents.  *Id.* at 4.  Lastly, Defendants assert that with respect to the third request, Plaintiff has not alleged that he was subject to the alleged "gladiator fights" nor does the article identify Plaintiff as being involved.  *Id.* at 5.

The Court finds Defendants adequately responded to Plaintiff's second set of discovery because he failed to establish that the requests were at all relevant to his Eighth Amendment claim against Defendants Odom and Anderson and therefore important to

United States District Court
Northern District of California

resolving the issues in this case.  Fed. R. Civ. Proc. 26(b)(1).  The first two items of discovery relate to issues of staff misconduct that occurred *before* the February 4, 2012 attack.  Other than the fact that allegations of staff misconduct at SQSP had been a concern during the preceding years, Plaintiff has failed to establish the relevance of this concern specifically with respect to him, Defendants Odom and Anderson, and his claim against them.  Lastly, Plaintiff has failed to explain how the alleged "gladiator fights" in 2020 are at all relevant to his claim involving an unexpected attack by an inmate at SQSP in 2012.  There is no indication that Plaintiff, Defendants or SQSP were named in that article or that the "gladiator fights" were connected to the underlying incident.  Accordingly, Plaintiff has failed to show that the discovery he requested was within the scope of Rule 26(b)(1) such that Defendants' response was inadequate.  Therefore, his motion to compel further disclosure with respect to Set Two of his discovery is DENIED.

### 2.    Meet and Confer for Additional Discovery

The Court must next determine whether Plaintiff has satisfied the "meet-and-confer" requirement of Rule 37(a)(1) with respect to his most recent discovery requests.  Plaintiff asserts that he met and conferred through a letter dated May 9, 2021.  Dkt. No. 245 at 1, 11.  Plaintiff filed a copy of this letter and Defendants' response, with his motion to compel.  Dkt. No. 244.  In opposition, Defendants assert that Plaintiff's May 9, 2021 letter was a list of categories of documents that were either entirely new or broader than or different from the previously served Requests for Production of Documents, Set One or Set Two.  Dkt. No. 250 at 4, citing to Dkt. Nos. 107, 187; Dkt. No. 244.  Defendants assert the list contained fourteen numbered sections, each containing multiple subsections; and each subsection contains "vague, overbroad, rambling, or nonsensical descriptions of various documents."  *Id.*  Defendants assert that they explained these defects to Plaintiff or referred him to their corresponding discovery response.  *Id.*, citing Dkt. No. 244 at 16-26.  Defendants state that their response applied the plain language of Plaintiff's discovery

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

requests in both sets and identified differences from Plaintiff's May 9, 2021 categories of documents. *Id.* Contrary to Plaintiff's claim that defense counsel is "feigning ignorance" and making "double-talk nonsense," Defendants assert that Plaintiff's own discovery requests speak for themselves, which defense counsel relied on in formulating Defendants' responses and producing responsive, non-privileged documents. *Id.* at 6. Defendants assert that adding discovery requests or demanding documents not covered by properly served discovery requests is not a good-faith attempt to meet and confer with defense counsel to resolve the dispute. *Id.*

The Court has reviewed Plaintiff's May 9, 2021 letter and finds it contains substantially new requests for discovery. Dkt. No. 244. In comparison with Set One and Set Two discussed above, his recent request includes the following new discovery: "any findings by staff of inconsistencies of or lack of credibility; verified to be false info.: re: any statements he made about the Feb. 4, 2012 attempted murder attack; against plaintiff"; "FULL names of all ICC & UCC classification committee members at S.Q. prison, in both: ADJUSTMENT CENTER ("AC") or EAST BLOCK ("E.B.") Condemned unit; who classified the attacker…"; "All S.Q. PRISON'S STATE ISSUED TELEPHONES' & PERSONAL PHONES': Emails, & 'TEXT MESSAGES' for both: SAT. 2-4-12 date of 'attempted murder incident', and, SUN. 2-5-12; Mon. 2-6-12 (return to work from the weekend)"; more specific information regarding Defendant Odom which was not previously requested, including the dates he worked in East Block, and specific tiers therein, his days off, why he left, and other information; a copy of East Block's visitor log-book; the date and manner of disposal of "racist, slanderous, highly incendiary NATIONAL GEOGRAPHIC MAGAZINE ISSUE, falsely dubbed & re-titled as "I-RANICA"; Defendant Odom's employee files, including disciplinary file; investigation into a threatening note found on Plaintiff's breakfast tray on Nov. 5, 2012; all notes & reports prepared by CCII. Brandy Ebert; all audio and video recordings of two inmates,

United States District Court
Northern District of California

one of whom was the attacker; surveillance videos of Plaintiff depicting his condition while at the hospital for treatment after the attack; list of all officers at S.Q. since the reinstatement of the death penalty in late 1980's who were fired, disciplined, reprimanded, or charged with misdemeanor or felony criminal charges for introducing contraband to S.Q.; and list of all cases involving officers involved in and identified as "instigating, inciting, setting up/staging 'INMATE ON INMATE ACTS OF VIOLENCE/ATTACKS, ASSAULTS, ATTEMPTED MURDER & ACTUAL MURDERS." Dkt. No. 244 at 16-26.

The Court has determined that Defendants adequately responded to Plaintiff's two sets of discovery filed under Docket Nos. 107 and 187. *See supra* at 13, 15. Accordingly, the repeated requests made in his May 9, 2021 letter for the production of the same discovery is DENIED. With respect to the new requests in the May 9, 2021 letter, the Court agrees that Plaintiff has not shown that he first attempted to meet and confer with Defendants prior to seeking court action. He was required to attempt to resolve "all disputed issues" in good faith. Plaintiff has not done so since the May 9, 2021 letter was his first and only effort to obtain the new discovery before filing the instant motion to compel. Accordingly, the motion to compel this new discovery is DENIED for failure to satisfy the meet-and-confer requirement. Dkt. No. 245.

Although this action initially involved multiple claims against numerous defendants, it has since been whittled down to an Eighth Amendment deliberate indifference claim against two Defendants, Correctional Officers Anderson and Odom. Dkt. No. 206 at 29. The claim against them is based on an unexpected inmate attack on Plaintiff on February 4, 2012, and Defendants' alleged failure to prevent or respond adequately to the attack. *Id.* Plaintiff is reminded that all discovery requests must be relevant to this sole Eighth Amendment claim against Defendants Anderson and Odom and be proportional to the needs of the case. Fed. R. Civ. Proc. 26(b)(1).

### C.      Motion to Defer Briefing on Summary Judgment Motion

A few days after filing the above motion to compel, Plaintiff filed a request to defer briefing on his opposition to Defendant Odom's summary judgment motion until after Defendants provided requested discovery.  Dkt. No. 247.  Plaintiff asserts that the discovery "will likely establish Defendant Odom's declaration denying culpability are perjurious" and that he knows that "discoverable material discovery [*sic*] is in possession of Defendants Odom and CDCR staff."  *Id.* at 1, 2.  Nevertheless, within two weeks of his request to defer briefing, Plaintiff went ahead and filed an opposition to Defendant's summary judgment, which is 27 pages long, accompanied by a 14-page declaration, declarations from 6 anonymous inmate witness, and other exhibits totaling over 200 pages.  Dkt. No. 249.  Based on this filing, Defendants oppose Plaintiff's motion to defer briefing as moot.  Dkt. No. 252 at 1.  Defendants also assert that Plaintiff's motion fails to meet the legal standard to extend time for "further discovery" under Rule 56(d).  *Id.*

Rule 56(d) provides that if a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations to take discovery; or (3) issue any other appropriate order.  Fed. R. Civ. Proc. 56(d)(1)-(3).  Defendants assert that Plaintiff's request is without merit because he need not prove that Defendant Odom's sworn statements are untrue; he need only present evidence to create a dispute.  Dkt. No. 252 at 2.  They also assert that Plaintiff's assertion that Defendant Odom is in "possession of discoverable material" sounds like a "fishing expedition or is non-specific."  *Id.*  With regards to Plaintiff's argument that "Panah, Lee Max Barnett, Steve Hornick, and other prisoners gave statements against Defendant Odom," Dkt. No. 247 at 2, Defendants assert that this statement is vague and ambiguous, without any explanation as to how these alleged statements create genuine or material disputes in the deliberate indifference claim against Defendant Odom as required by Rule

56(d).  Dkt. No. 252 at 2.  Defendants assert that Plaintiff's opposition does in fact contain declarations from himself, inmate Lee Max Barrett, and six anonymous inmate declarants.  *Id.*, citing Dkt. No. 249-1 at 11-13, all of which belie Plaintiff's position that briefing should be deferred pending discovery.  In reply, Plaintiff asserts that because the Court gave no response, he was forced to file an "'incomplete, unedited, rushed' opposition by the due date or be forced to "risk forfeiting opposition."  Dkt. No. 260 at 3.

Plaintiff's argument that he feared "forfeiting opposition" is not persuasive.  From the long record of filings in this matter, Plaintiff is clearly well aware that he can request an extension of time to file papers in this matter.  *See, e.g.,* Dkt. No. 48, 65, 115, 147, 167, 174, 240.  The fact that Plaintiff was able to file a substantive opposition along with substantial supporting exhibits indicates that far from being unable to "present facts essential to justify its opposition," Plaintiff had sufficient information to proceed, notwithstanding his outstanding discovery requests.  Furthermore, Plaintiff fails to explain with specificity what discoverable material was lacking for him to prepare an adequate opposition.  Although his May 9, 2021 letter includes a request for more specific information regarding Defendant Odom which was not previously requested, including the dates he worked in East Block, and specific tiers therein, his days off, why he left, and other information," *see supra* at 17, nowhere in his motion to defer briefing does Plaintiff explain how this outstanding discovery request is necessary for him to raise genuine or material disputes to defeat Defendant Odom's summary judgment motion.  Furthermore, the Court has denied Plaintiff's motion to compel and found that Defendants' responses to his numerous requests thus far have been adequate.  *See supra* at 13, 15.  Accordingly, the motion to defer briefing is DENIED.  Defendant Odom's summary judgment motion is deemed submitted as of the filing of Defendant's reply.  Dkt. No. 259.

**D.**     **Motion to File Inmate Depositions and Declarations Under Seal**

Plaintiff moves for a "protective order" to file inmate declarations under seal, which

United States District Court
Northern District of California

he submits in support of his opposition to Defendant Odom's summary judgment motion. Dkt. No. 248. Defendants oppose the motion because it does not comply with Local Rule 7-11, pursuant to Local Rule 79-5(d), since Plaintiff failed to file unredacted versions of the documents which he seeks to be sealed. Dkt. No. 251 at 2. Defendants also assert that the motion should be denied because Plaintiff provides no compelling reason to file anonymous witness statements under seal. *Id.* In reply, Plaintiff filed another motion to seal correcting the deficiencies from his first motion by providing redacted and unredacted versions. Dkt. No. 261. Good cause appearing, the Court will grant the motion. Plaintiff's new administrative motion is GRANTED, and the dockets filed therewith shall remain under seal. Dkt. No. 261. The Court will consider these declarations as part of Plaintiff's opposition to Defendant's summary judgment motion.

**E.**     **<u>Motion to Add Newly Obtained Material Evidence and Motion to Strike</u>**

On January 7, 2022, Plaintiff filed a motion to add newly obtained material evidence, namely a declaration by inmate Lee Max Barnett stating that Inmate Barrett, the attacker on February 4, 2012, recently confessed to attempting to murder Plaintiff at Defendant Odom's direction. Dkt. No. 263. Plaintiff states that this evidence was not available to him previously and that Inmate Barrett was uncooperative until recently. *Id.* at 1. Plaintiff asserts that Inmate Barrett's statements to Inmate Barnett are admissible based on the following: "against Barrett's penal interests & other exceptions to hearsay rule;… admission of co-conspirator;…; statement of declarant whose liability or breach of duty is in issue;…; declarations against interest;… inconsistent statement." *Id.* Plaintiff cites to Federal Rule of Evidence 804(b)(3) and California Rules of Evidence. *Id.* Defendants move to strike this new evidence as inadmissible hearsay, asserting that no exception to the hearsay rule applies. Dkt. No. 264 at 1-2.

Inmate Barnett's statement about what Inmate Barrett recently told him is clearly hearsay as an out-of-court statement offered to prove the truth of the matter asserted. Fed.

United States District Court
Northern District of California

R. Evid. 801(c), 802.  Hearsay evidence is inadmissible at trial and thus may not be considered on summary judgment.  *See Orr v. Bank of America, NT & SA*, 285 F.3d 764, 778-80 (9th Cir. 2002) (upholding the exclusion of evidence submitted in opposition to a motion for summary judgment because those exhibits contained inadmissible hearsay). Plaintiff specifically cites to the hearsay exception for statement against interest under Federal Rule of Evidence 804(b)(3).[3]  Dkt. No. 263 at 1.  However, as Defendants correctly point out, this exception requires that the declarant be "unavailable."  Fed. R. Evid. 804(a)-(b).  Defendants assert that Inmate Barrett is clearly not "unavailable."  Dkt. No. 264 at 3.  According to Inmate Barnett's declaration, Inmate Barrett is only two cells away from him, Inmate Barrett frequently initiates conversations with Barnett, and Inmate Barrett began to be cooperative during the "last few weeks," freely speaking about the attack.  *Id.* at 2-3.  Inmate Barnett also states that he "intend[s] to keep taking with Inmate Barrett and gather[] more information from him regarding the stabbing."  *Id.* at 3.  Far from being "unavailable," Inmate Barnett's declaration indicates that Inmate Barrett is alive, accessible, able, and willing to speak freely about the incident.

In response to Defendants' motion to strike, Plaintiff has filed a second declaration by Inmate Barnett, stating that Inmate Barrett refuses to testify at trial because he fears for his life. Dkt. No. 265-1 at 3-4.  Even though he knew Defendant Odom had retired, Inmate Barrett allegedly stated that he "knew better than that, because Odom could get his racist co-workers to kill him; or he could hire a gang to murder him."  *Id.* at 4.  Inmate Barnett states that he is willing to testify concerning what Inmate Barrett told him.  *Id.* at 5.  In reply,[4] Defendants assert that the Court should reject Plaintiff's claim that Inmate Barrett is

---

[3] Plaintiff also relies on the California Rules of Evidence, Dkt. No. 263 at 1, but those rules are not applicable to the federal court.

[4] Defendants requested a seven-day extension of time to file a reply to their motion to strike, stating additional time was necessary to investigate the issues and respond to Barnett's new declaration. Dkt. No. 266.  Plaintiff opposed the motion, stating that additional time was not necessary because his request to augment the record and opposition are not materially different to require more investigation, and that Defendants

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

unavailable because there is no evidence that Defendant Odom caused his unavailability, and a vague and generalized fear of harm is insufficient to support an unavailability claim. Dkt. No. 267 at 2.

For hearsay to be admissible as a "statement against interest," Fed. R. Evid. 804(b)(3), or "statement offered against party that wrongfully caused the declarant's unavailability," Fed. R. Evid. 804(b)(6), the Court must first determine whether the predicate condition – the declarant's unavailability exists, as supported by a preponderance of the evidence.  Fed. R. Evid. 104(a); *Bourjaily v. United States*, 483 U.S. 171, 176 (1987).  A declarant may be unavailable if he (1) is exempted from testifying due to privilege; (2) refuses to testify despite a court order; (3) testifies to not remembering; (4) cannot be present or testify due to death or infirmity; or (5) is absent from trial or hearing and the statement's proponent has not been able to procure the declarant's attendance or testimony.  Fed. R. Evid. 804(a).  Other than the additional hearsay provided in Barnett's second declaration, Plaintiff offers no evidence that the declarant (Barrett) falls within any of these definitions of unavailability: (1) there is no assertion of privilege; (2) no court order  has been issued directing Barrett to testify to which he has refused to comply; (3) he has not testified to not remembering; (4) he is neither dead nor infirm; and (5) he is not absent from a trial or hearing.  Fed. R. Evid. 804(a).  Defendants also point out that Plaintiff admits to not knowing if Inmate Barrett will be available or unavailable as a witness, as he states in his opposition, "we will only know that when [the declarant] is on the witness stand."  Dkt. No. 265 at 3.  Accordingly, it cannot be said that Plaintiff has shown by the preponderance of the evidence that Inmate Barrett is unavailable such that the hearsay statements are admissible under the "statement against interest" exception.

have not been diligent.  Dkt. No. 268.  The Court disagrees as Inmate Barnett's new declaration provides more information from his first declaration, *i.e.*, the fact that Barrett would refuse to testify because he fears for his life.  Accordingly, the Court finds good cause to grant the short one-week extension of time.  Defendants' reply, filed on February 9, 2022, is therefore deemed timely filed.

23

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

With regards to the claim that Defendant Odom caused Inmate Barrett's unavailability, Defendants assert that declarant's alleged fear of harm is unsubstantiated and questionable. Dkt. No. 267 at 4. Defendants assert that Inmate Barnett is not a credible witness who has revealed his own bias against Defendant Odom and custodial officers generally, by reciting alleged past wrongs, and based on his involvement in this action as Plaintiff's legal assistant, has knowledge, motive, and opportunity to lie in his second declaration. Dkt. No. 265-1 at 4. Defendants also assert that the way Inmate Barnett obtained the hearsay statements from declarant is suspect because in the first declaration, he describes Inmate Barrett freely confessing to him about the decade-old attack on Plaintiff at Defendant Odom's direction, and in his second declaration asserts for the first time Inmate Barrett's unwillingness to testify due to a generalized fear of harm from Defendant Odom. *Id.* at 5. In contrast, Defendants submit Defendant Odom's declaration with their reply, stating that he retired from the CDCR in 2020, and moved out of state thousands of miles away. Dkt. No. 267-2 at 1. Defendant Odom states that he has not discussed any matter involving any inmate at SQSP with any person other than his attorney, and that he did not, nor would he, "threaten, dissuade, or otherwise prevent inmate Joseph Barrett from participating in any trial, hearing, or legal proceeding" nor would he "tell or instruct any officer or inmate to harm (or threaten to harm) another inmate." *Id.*

The Court finds Plaintiff has failed to show by the preponderance of the evidence that Defendant Odom is responsible for Inmate Barrett's unavailability. First the Court is struck by the wholly different tone and direction of Inmate Barnett's two declarations. In the first declaration, Inmate Barnett describes how the declarant (Barrett) made "several efforts to reach out" to him because of how their mail would often get mixed up, and that Inmate Barrett would frequently initiate conversations with him; Inmate Barnett sounded optimistic about getting more information from Inmate Barrett. Dkt. No. 263 at 2. He

1  does state that Inmate Barrett claimed Defendant Odom threatened his life "not to tell" and

2  that he felt he had "no choice" at the time.  *Id.*  Then in his second declaration, Inmate

3  Barnett states for the first time that the reason Plaintiff stated in his motion to augment the

4  record that he intended to subpoena Inmate Barrett to testify at trial was because Inmate

5  Barnett had informed Plaintiff that "Barrett told me he was in fear for his life if he testified

6  for Plaintiff in this action, and he would need to be subpoenaed."  Dkt. No. 265-1 at 3.

7  However, at the time he made his initial statements to Inmate Barnett, there was no

8  indication that Inmate Barrett was presently in fear for his life since Defendant Odom's

9  threats were made nearly a decade ago.  Furthermore, Inmate Barrett's statement that he

10 "would need to be subpoenaed" indicates that he *would* be available to testify, but only if

11 subpoenaed, not that he refused to testify at all.  Accordingly, the Court finds that Plaintiff

12 has not shown by the preponderance of the evidence that Defendant Odom wrongfully

13 caused Inmate Barrett's unavailability such that the hearsay statements are admissible

14 against him.

15      Plaintiff also asserts in opposition that he did not only plead "statement against

16 interest" of Inmate Barrett, but rather against the interests of "Barrett *and of* Odom."  Dkt.

17 No. 265 at 3.  He asserts that Inmate Barrett's statements were made against his penal

18 interests "and other interests of Barrett and his admitted co-conspirator [Odom]."  *Id.*  In

19 reply, Defendants assert that Plaintiff offers little explanation as to why they would be

20 against interest.  Dkt. No. 267 at 5.  To be admissible as a statement against interest, the

21 declarant's statement would need to be one that "a reasonable person in the declarant's

22 position would have made only if the person believed it to be true because, when made, it

23 was so contrary to the declarant's proprietary or pecuniary interest or had so great a

24 tendency to invalidate the declarant's claim against someone else or expose the declarant

25 to civil or criminal liability" and "is supported by corroborating circumstances that clearly

26 indicate its trustworthiness…"  Fed. R. Evid. 804(b)(3).  Here, there is no indication that

27

28

United States District Court
Northern District of California

Inmate Barrett made these statements against his interest: there is no evidence of his proprietary or pecuniary interest, no tendency to invalidate his claim against someone else, and because the attack happened nearly a decade ago (February 2012), there is no likelihood that he would be exposed to civil or criminal liability. Furthermore, Plaintiff points to no corroborating circumstances that clearly indicate its trustworthiness. Accordingly, the Court finds the statements are still not admissible as statement against interest.

Plaintiff also attempts to assert the "inconsistent statement" rule, asserting that Inmate Barnett's statements are inconsistent with Defendant Odom's declaration supporting his summary judgment motion. Dkt. No. 263 at 1. Defendants assert that Federal Rule of Evidence 613 ("Witness's Prior Statement") is inapplicable because it governs a witness's prior statement and extrinsic evidence of that statement "is admissible only if the witness is given an opportunity to explain or deny the statement and an adverse party is given an opportunity to examine the witness about it, or if justice so requires." Fed. R. Evid. 613(b). Here, as Defendants correctly point out, Plaintiff is not seeking to introduce a prior inconsistent statement by Defendant Odom but rather an entirely new statement by another individual. Accordingly, the inconsistent statement rule does not apply. Plaintiff's argument in opposition that the hearsay statement is being admitted to show an inconsistency between Defendant Odom's declaration in support of his summary judgment motion and the prior statements he allegedly made to Inmate Barrett (instructing him to murder Plaintiff), Dkt. No. 265 at 5, does not beg a different result because in any case, Defendant Odom is not a witness being subjected to an examination. Accordingly, this exception does not apply.

Plaintiff also asserts that Inmate Barnett's declaration describes misconduct by Defendant Odom and are therefore admissible against him because he failed to deny them

1   under Rule 801(d)(2)(B).[5]  Dkt. No. 265 at 4.  Plaintiff asserts that Defendant Odom

2   "adopted all of them as true because they describe reprehensible actions the law requires

3   him to deny, if not true; otherwise the statements become admissible as an admission

4   adopted by Odom."  *Id.*  Plaintiff asserts that "Odom's agent was authorized to speak on

5   Odom's behalf – to deny the accusations in the Barnett declaration" but that they failed to

6   do so.  *Id.* at 5.  This assertion is simply not true, and Plaintiff provides no legal citations to

7   support this conclusion.  Defendants' failure to deny the truth of Barrett's statements does

8   not "manifest[] that [Defendants] adopted or believed" them to be true under Federal Rule

9   of Evidence 801(d)(2)(B).  Accordingly, this argument is without merit.

10      Plaintiff also asserts that statements attributed to Defendant Odom in Inmate

11   Barnett's declaration are admissible under Fed. R. Evid. 801(d)(1), "Declarant-Witness's

12   Prior Statement."  Dkt. No. 265 at 5.  This is without merit.  Rule 801(d)(1) provides that a

13   prior statement by a witness may be admitted during cross-examination about a prior

14   inconsistent statement which was given "under penalty of perjury at a trial, hearing, or

15   other proceeding or in a deposition."  Fed. R. Evid. 801(d)(1)(A).  Here, Defendant Odom

16   is not being cross-examined nor was the alleged prior inconsistent statement given under

17   any of the circumstances described under Rule 801(d)(a)(A); rather, Defendant Odom

18   allegedly made these statements in private to Inmate Barrett.  Accordingly, Rule

19   801(d)(1)(A) does not apply.

20      Plaintiff also asserts Inmate Barnett's declaration is admissible under Rule

21   801(d)(2) as an opposing party's statement, and specifically under Rule 801(d)(2)(B) &

22   (E) as a statement by a party's coconspirator during and in the furtherance of the

23   conspiracy.  Dkt. No. 265 at 5.  Rule 801 provides exclusions from the hearsay rule, and

24   under subsection (d)(2), specifies that an opposing party's statements is not hearsay if the

25

26   [5] In reply, Defendants assert simply that this and all the other arguments lack merit because
    Plaintiff offers no evidence or meaningful analysis as to why any of these other exceptions
27   apply.  Dkt. No. 267 at 6.

28

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

following conditions are satisfies: "The statement is offered against an opposing party and: (A) was made by the party in an individual or representative capacity; (B) is one the party manifested that it adopted or believed to be true; (C) was made by a person whom the party authorized to make a statement on the subject; (D) was made by the party's agent or employee on a matter within the scope of that relationship while it existed; or (E) was made by the party's coconspirator during and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(A)-(E).  Plaintiff's arguments under Rule 801(d)(2) are also without merit because none of the qualifiers under subsection (2) apply: (A) Inmate Barrett was not speaking in a representative capacity; (B) as stated above, there is no indication that Defendant Odom adopted or believed Inmate Barrett's statements are true; (C) Inmate Barrett was not authorized to made the statement; (D) Inmate Barrett was not Defendant Odom's agent or employee; and (E) there is no evidence, other than the hearsay statement, that Inmate Barrett was a "coconspirator."

Based on the foregoing, Plaintiff's motion to add newly obtained evidence is DENIED.  Dkt. No. 263.  Defendants' motion to strike the declaration is GRANTED.  Dkt. No. 264.  The two declarations from Inmate Barrett shall be STRICKEN as containing inadmissible hearsay.  Dkt. Nos. 263, 265.

Lastly, Plaintiff claims he did not receive Defendants' reply to their summary judgment, and therefore the summary judgment motion or the reply should be stricken. Dkt. No. 265-1 at 1.  Plaintiff provides no legal authority for such a drastic remedy.  In reply, Defendants point to the certificate of service showing that their reply was mailed to Plaintiff on July 29, 2021.  Dkt. No. 267 at 6, citing Fed. R. Civ. P. 5(b)(2)(3).  Defendants also point to Plaintiff's exhibit 2, Dkt. No. 265-1 at 6), which indicates that he knew as of August 13, 2021, that Defendants had filed their reply, yet he raises the issue for the first time over five months later.  *Id.*  Nevertheless, Defendants state that they will serve another copy of their reply on Plaintiff concurrently with this filing.  *Id.*; *id.* at 8.

United States District Court
Northern District of California

1  Accordingly, Plaintiff's motion to strike Defendant's summary judgment motion and their

2  reply is DENIED.

3

4                                    **II.  CONCLUSION**

5          For the forgoing reasons, the Court orders as follows:

6          1.      Plaintiff's motion for a protective order and renewed motions for

7  appointment of counsel are **DENIED**.  Dkt. Nos. 235, 262; *see supra* at 3.

8          2.      Plaintiff's motion and renewed motion to compel discovery is **DENIED**.

9  Dkt. No. 245; *see supra* at 14, 16, 18.

10         3.      Plaintiff's request to defer briefing on his opposition is **DENIED**.  Dkt. No.

11  247; *see supra* at 20.

12         4.      Plaintiff's motion for protective order to file inmate declarations under seal

13  is **GRANTED**.  Dkt. Nos. 248, 261; *see supra* at 20-21.

14         5.      Plaintiff's motion to add newly obtained material evidence is **DENIED**, and

15  Defendants' motion to strike the newly obtained material evidence is **GRANTED**.  Dkt.

16  Nos. 263, 264; *see supra* at 28.  Defendants' motion for extension of time to file reply to

17  their motion to strike is **GRANTED**.  Dkt. No. 266; *see supra* at 22, fn. 4.

18         This order terminates Docket Nos. 235, 245, 247, 248, 262, 263, 264, and 266.

19         **IT IS SO ORDERED.**

20  Dated:  __February 22, 2022____

                                         BETH LABSON FREEMAN
21                                       United States District Judge

22

23

24

25  Order Addressing Pending Motions
    PRO-SE\BLF\CR.14\000166Panah_pending.mots

26

27

28                                          29