UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

HOOMAN PANAH,

          Plaintiff,

    v.

STATE OF CALIFORNIA DEPT. OF
CORRECTIONS AND
REHABILITATION, et al.,

          Defendants.

Case No. 14-00166 BLF (PR)

**ORDER DENYING DEFENDANT
ODOM'S MOTION FOR SUMMARY
JUDGMENT; REFERRING CASE TO
SETTLEMENT PROCEEDINGS;
STAYING CASE; INSTRUCTIONS
TO CLERK**

(Docket No. 237)

Plaintiff, an inmate on death row at California's San Quentin State Prison ("SQSP"), filed a civil rights complaint under 42 U.S.C. § 1983, alleging unconstitutional acts by SQSP correctional officers. Dkt. No. 1. The operative complaint in this action is Plaintiff's second amended complaint ("SAC") along with a supplemental complaint. Dkt. Nos. 54, 67. The Court found the SAC and supplemental stated cognizable claims, and ordered the matter served on Defendants. Dkt. No. 69. On September 29, 2020, the Court granted Defendants' motion to dismiss several claims as untimely. Dkt. No. 206. The only remaining claim is Plaintiff's deliberate indifference to safety claim under the Eighth Amendment against Defendants Anderson and Odom; all other defendants were terminated from this action. *Id.* at 31.

///

1
2
3
4

Defendant Odom filed a motion for summary judgment.[1]  Dkt. No. 237.  Plaintiff filed opposition, Dkt. No. 249, and Defendants filed a reply, Dkt. No. 259.  Subsequently, Plaintiff filed a notice of errata, Dkt. No. 254, and declarations under seal, Dkt. No. 261, which will be considered alongside his opposition papers.  Dkt. No. 269 at 20-21.

5
6

For the reasons set forth below, Defendant Odom's motion for summary judgment is **DENIED**.

7
8

**DISCUSSION**

9

**I.    Statement of Facts[2]**

10
11
12

Plaintiff has been housed in SQSP's condemned housing unit for over two decades. Dkt. No. 237-1 at 1.  Inmate Barrett, the inmate who attacked Plaintiff during the incident at issue, was in the same housing unit since 2009.  Dkt. No. 237-2 at 8, 25-26.

13
14
15
16
17
18

According to Plaintiff, he has been a victim of "terroristic abuses" by several correctional officers "engaging in racist, ethnic & religious taunts and slurs, as [they] engaged in stalking-harassment, bullying, oppression… and conspiracies to terrorize [Plaintiff] and have him murdered by other prisoners."  Second Amended Complaint, Dkt. No. 54-15 at 2.  Plaintiff asserts that he reported to at least one officer that he had "great fear of 'physical harm' [and] 'being murdered.'"  *Id.*

19
20
21
22
23

With regards to Defendant Odom, Plaintiff claims Defendant "openly engaged in an ongoing pattern and practice of verbally instigating, agitating, provoking, encouraging, facilitating and aiding and/or abetting… inmates to join in abuses…."  *Id.*  During his deposition, Plaintiff alleged that Defendant Odom "openly said he hated [Plaintiff]" and called Plaintiff names such as "camel jockey" and "Iranian scum."  Dkt. No. 237-2 at 19.

24
25
26

[1] Defendants admit that there are factual disputes as to Defendant Anderson that cannot be resolved at summary judgment.  Dkt. No. 237 at 1, fn. 1.

27

[2] The following facts are undisputed unless otherwise indicated.

28

United States District Court
Northern District of California

United States District Court
Northern District of California

1   Plaintiff claims that Defendant's "openly spoken hostility towards [him] bred an

2   atmosphere of hate and terror which gave other inmates encouragement to join in on the

3   abuses of [him] verbally." Dkt. No. 54-15 at 4.  Plaintiff claims Defendant Odom

4   encouraged and praised this conduct by shouting, "Yeah! You tell him! Thank you, thank

5   you!" *Id.*  Plaintiff argues that this conduct "gave other inmates the green light to attack

6   and kill [him]." *Id.*  Several inmates state in declarations that Defendant Odom often made

7   racist comments regarding Plaintiff and encouraged other inmates to do the same. Dkt. No.

8   249-1 at 39; Dkt. No. 261-2 at 26, 32, 34.  In his declaration, Plaintiff states that he relayed

9   his safety concerns regarding Defendant Odom to a supervisor on December 5, 2011,

10  explaining that he felt threatened by the continual abuse and harassment, and he feared

11  physical harm and death.  Dkt. No. 249 at 29.

12        According to Defendant Odom, he denies making any comments regarding

13  Plaintiff's ethnic or racial background or that he called him derogatory names.  Dkt. No.

14  237-1 at 2.  Defendant Odom denies verbally abusing, harassing, or otherwise making

15  inappropriate comments about Plaintiff, or ever encouraging, inciting or soliciting

16  inappropriate comments about Plaintiff. *Id.*

17        Plaintiff also alleges that Defendant Odom maintained a wall of newspaper articles

18  about inmate convictions in his office, the "wall of shame," and that Defendant discussed

19  these articles with other inmates and officers.  Dkt. No. 237-2 at 10-11.  Plaintiff claims he

20  saw a photograph of himself on that wall a "couple" of times, and that there was an article

21  associated with the photograph which he never actually read. *Id.* at 13-14, 17.  Plaintiff

22  estimates this photograph was on the wall "within the past year, year and a half, two years"

23  before the attack. *Id.* at 16.  According to their declarations, several inmates saw and read

24  those articles.  Dkt. No. 261-2 at 28, 34.

25        According to Defendant Odom, he did not post any photographs of Plaintiff or any

26  articles regarding him on the office wall.  Dkt. No. 237-1 at 2.

27        On February 4, 2012, Plaintiff was attacked on the exercise yard by Inmate Barrett.

28                                                      3

United States District Court
Northern District of California

Dkt. No. 237-2 at 7.  Defendant Odom was not at work that day because it was his scheduled day off.  Dkt. No. 237-1 at 2.  The attack surprised Plaintiff because he and Inmate Barrett never had any issues between them since the latter's arrival in 2009.  Dkt. No. 237-2 at 8, 25-26.  At the time of the attack, Plaintiff had been at SQSP for seventeen years, "never had any enemies, issues, concerns," and did not suspect any inmate would attack him.  *Id.*  Accordingly, Plaintiff had not informed Defendant Odom, or any staff, of any particularized threat to his safety from inmates.  *Id.* at 28-29; Dkt. No. 237-1 at 2. Plaintiff asserts that this was the case because his safety concerns involved Defendant Odom and other staff, not inmates.  Dkt. No. 249 at 30.

According to an incident report written on the same day by Officer K. R. Runge, not a party to this action, Inmate Barrett stated that he stabbed Plaintiff "because he was a child molester," and that after he had been reading about another death row inmate's case in the news, it "got him inspired to attack" Plaintiff.  Dkt. No. 249-1 at 28.  When asked during an investigation into the incident by Officer Severino Salais, not a party to this action, if anyone else was involved, Inmate Barrett stated, "no, none assisted me. I acted alone and no one helped me."  *Id.* at 30.

According to Plaintiff, Defendant Odom relocated his job to Inmate Barrett's tier, and began hanging out at his cell.  Dkt. No. 249 at 6.  Witnesses saw Defendant Odom frequently hanging out at Inmate Barrett's cell, "whispering for hours" days before the incident.  Dkt. No. 261-2 at 27.  Plaintiff asserts that during these talks, Defendant Odom must have incited Inmate Barrett by talking about the nature of Plaintiff's case.  *Id.* at 6. Plaintiff points to an interview after the incident when in response to being asked why he attacked Plaintiff, Inmate Barrett responded, "because that little punk bastard killed a little girl and shoved her in a suitcase and it needed to be done, no one [] else was going to do it."  *Id.*; Dkt. No. 249-1 at 30.

According to Defendant Odom, he was unaware of any threat to Plaintiff's safety before the attack, and that neither Plaintiff nor anyone else informed him that Plaintiff had

any particularized concern for his safety. Dkt. No. 237-1. Defendant Odom states that he did not foresee that Plaintiff would be attacked by Inmate Barrett or any other inmate, and that he did not do anything to put Plaintiff's safety in jeopardy. *Id.*

## II.   <u>Summary Judgment</u>

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Cattrett*, 477 U.S. 317, 322-23 (1986). A fact is material if it might affect the outcome of the lawsuit under governing law, and a dispute about such a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).

Generally, the moving party bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp.*, 477 U.S. at 323. Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. But on an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325. If the evidence in opposition to the motion is merely colorable, or is not significantly probative, summary judgment may be granted. *See Liberty Lobby*, 477 U.S. at 249-50.

The burden then shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial.'" *Celotex*

*Corp.*, 477 U.S. at 324 (citations omitted).  If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law."  *Id*. at 323.

The Court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a material fact.  *See T.W. Elec. Serv., Inc. V. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The evidence must be viewed in the light most favorable to the nonmoving party, and the inferences to be drawn from the facts must be viewed in a light most favorable to the nonmoving party.  *See id*. at 631.  It is not the task of the district court to scour the record in search of a genuine issue of triable fact.  *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996).  The nonmoving party has the burden of identifying with reasonable particularity the evidence that precludes summary judgment.  *Id*.  If the nonmoving party fails to do so, the district court may properly grant summary judgment in favor of the moving party.  *See id.; see, e.g., Carmen v. San Francisco Unified School District*, 237 F.3d 1026, 1028-29 (9th Cir. 2001).

### A.   Deliberate Indifference to Safety

Plaintiff claims that Defendant Odom was deliberately indifferent to his safety by encouraging inmates to join in the abuse against him, leading to the attack on February 4, 2012, by Inmate Barrett.

The Eighth Amendment requires that prison officials take reasonable measures to guarantee the safety of prisoners.  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  In particular, prison officials have a duty to protect prisoners from violence at the hands of other prisoners.  *Id*. at 833; *Cortez v. Skol*, 776 F. 3d 1046, 1050 (9th Cir. 2015); *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005); *Hoptowit v. Ray*, 682 F.2d 1237, 1250 (9th Cir. 1982); *Gillespie v. Civiletti*, 629 F.2d 637, 642 & n.3 (9th Cir. 1980).  The failure of prison officials to protect inmates from attacks by other inmates or from dangerous conditions at the prison violates the Eighth Amendment when two requirements are met: (1) the deprivation alleged is, objectively, sufficiently serious; and (2) the prison official is,

United States District Court
Northern District of California

United States District Court
Northern District of California

subjectively, deliberately indifferent to inmate health or safety.  *Farmer*, 511 U.S. at 834.

A prison official is deliberately indifferent if he knows of and disregards an excessive risk

to inmate health or safety by failing to take reasonable steps to abate it.  *Id*. at 837.

A prisoner may state a § 1983 claim under the Eighth Amendment against prison

officials only where the officials acted with "deliberate indifference" to the threat of

serious harm or injury to an inmate by another prisoner, *Berg v. Kincheloe*, 794 F.2d 457,

459 (9th Cir. 1986); *see also Valandingham v. Bojorquez*, 866 F.2d 1135, 1138 (9th Cir.

1989) (deliberately spreading rumor that prisoner is snitch may state claim for violation of

right to be protected from violence while in state custody), or by physical conditions at the

prison.  The official must both be aware of facts from which the inference could be drawn

that a substantial risk of serious harm exists, and he must also draw the inference.  *See*

*Farmer*, 511 U.S. at 837.  However, an Eighth Amendment claimant need not show that a

prison official acted or failed to act believing that harm actually would befall an inmate; it

is enough that the official acted or failed to act despite his knowledge of a substantial risk

of serious harm.  *See id.* at 842; *see also Lemire v. Cal. Dept. Corrections &*

*Rehabilitation*, 726 F.3d 1062, 1078 (9th Cir. 2013) (articulating two-part test for

deliberate indifference: plaintiff must show, first, that risk was obvious or provide other

evidence that prison officials were aware of the substantial risk to the inmates' safety, and

second, no reasonable justification for exposing inmates to risk); *Robins v. Meecham*, 60

F.3d 1436, 1439-40 (9th Cir. 1995) (bystander-inmate injured when guards allegedly used

excessive force on another inmate need not show that guards intended to harm bystander-

inmate).  This is a question of fact.  *Farmer*, 511 U.S. at 842; *see, e.g., Cortez*, at 1050-52

(reversing grant of summary because, when viewed in the light most favorable to plaintiff,

sufficient evidence showed (1) that undermanned escort by one prison guard of three

mutually hostile, half-restrained, high-security inmates through an isolated passage posed a

substantial risk of harm; and (2) that escorting officer was aware of the risk involved);

*Labatad v. Corrections Corp. of America*, 714 F.3d 1155, 1160 (9th Cir. 2013) (finding no

deliberate indifference to prisoner's safety where the record, viewed objectively and subjectively, did not lead to an inference that the prison officials responsible for making the prisoner's cell assignment were aware that he faced a substantial risk of harm).

A trier of fact may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious; a plaintiff therefore may meet his burden of showing awareness of a risk by presenting evidence of very obvious and blatant circumstances indicating that the prison official knew the risk existed.  *Foster v. Runnels*, 554 F.3d 807, 814 (9th Cir. 2009) ("risk that an inmate might suffer harm as a result of the repeated denial of meals is obvious").  But while obviousness of risk may be one factor in demonstrating subjective knowledge, a defendant's liability must still be based on actual awareness of the risk rather than constructive knowledge.  *Harrington v. Scribner*, 785 F.3d 1299, 1304 (9th Cir. 2015).  While a prisoner's failure to give prison officials advance notice of a specific threat is not dispositive with respect to whether prison officials acted with deliberate indifference to the prisoner's safety needs, deliberate indifference will not be found where there is no other evidence in the record showing that the defendants knew of facts supporting an inference and drew the inference of substantial risk to the prisoner.  *Labatad*, 714 F.3d at 1160-61.

Defendant Odom asserts that Plaintiff never informed him of any threat to his safety, and that if he never drew the inference that there would be an inmate attack on Plaintiff, then he did not violate the Eighth Amendment by failing to protect Plaintiff from harm.  Dkt. No. 237 at 10.  Defendant asserts that Plaintiff has failed to show that Defendant Odom knew of and disregarded an excessive risk to Plaintiff's safety, that he was aware of facts from which the inference could be draw that a substantial risk of serious harm exists, and Defendant actually drew that inference.  *Id.*  Defendant argues that Plaintiff admits he did not foresee the attack and that he never informed Defendant Odom that he would be attacked by Inmate Barrett or any other inmate; therefore, Plaintiff cannot seriously contend that there was a substantial risk of serious harm to him if the attack was

sudden and unexpected.  *Id.* at 11.  Furthermore, Defendant Odom declares that he did not know that Inmate Barrett, or any other inmate, was going to attack Plaintiff; therefore, there is no evidence that he knew of and disregarded any risk of harm to Plaintiff.  Dkt. No. 237-2 at 12.  Lastly, Defendant asserts that there is no evidence that his alleged conduct led to Plaintiff's attack.  *Id.* at 14-15.

In opposition, Plaintiff repeats his claim that Defendant Odom "deliberately instigated, agitated, solicited, encouraged, and requested the attack" on Plaintiff based on his case factors.  Dkt. No. 249 at 4.  Plaintiff asserts that although it is true that Defendant Odom was not on duty during the incident, there is strong circumstantial evidence that he requested Inmate Barrett to attack Plaintiff on the day Defendant was not working.  *Id.* Plaintiff claims that contrary to Defendant Odom's denials, Defendant Odom did make verbal racial attacks against him, and that he also posted photographs and articles of Plaintiff and invited inmates and officers to read the highly inflammatory material, knowing it would eventually result in an attack on Plaintiff.  *Id.*  In support, Plaintiff submits the declaration of several inmates who attest to these facts, which the Court has reviewed under seal.  Dkt. No. 261-2 at 22-40.  At least three inmates attest to hearing Defendant Odom voicing animosity towards Middle-Easterners, referring to them as "rag heads," camel jockeys," and "carpet riders," and other racial slurs.  *Id.* at 26, 32; Dkt. No. 249-1 at 39.  One of these inmates also states that at some time during late 2011 through early 2012, before Plaintiff was attacked, he overheard Defendant Odom encouraging another inmate who was cursing Plaintiff and calling him derogatory names.  Dkt. No. 261-2 at 26.  Another inmate also attests to hearing the same encouragement.  Dkt. No. 249-2 at 27.  Three inmates attest that Defendant Odom had a collection of newspaper articles of prisoners which he displayed on the wall of his office, i.e., a "wall of shame."  Dkt. No. 261-2 at 28, 31-32, 34-35.  Plaintiff claims Associate Warden John Curzon ordered Defendant Odom to take down the articles about Plaintiff and others.  Dkt. No. 249 at 4; Dkt. No. 261-2 at 34-35; Dkt. No. 249-2 at 21.  Plaintiff also submits the

declaration of another inmate who attests to seeing Defendant Odom speaking with Inmate Barrett at his cell for long periods of time during the two weeks preceding the attack. Dkt. No. 261-2 at 27.

In reply, Defendant asserts that Plaintiff fails to establish there was an objective, substantial risk of serious harm. Dkt. No. 259 at 1. Defendant asserts that the evidence only shows that Plaintiff and his attacker resided in the same housing unit without incident for approximately three years before the attack, and that neither Plaintiff nor Defendant Odom anticipated the attack. *Id.* Defendant points out that Plaintiff acknowledges that the circumstances surrounding his capital crime have been known by inmates and staff for quite some time, specifically as early as 1995. *Id.* at 2. Defendant asserts that the attacker's alleged motivations, i.e., Plaintiff's case factors, racial animus, or to gain favor with the police, is not connected to Defendant Odom or his alleged conduct. *Id.* Defendant also asserts that there is no evidence that Defendant Odom mentioned Plaintiff in the presence of Inmate Barrett, or that he specifically referred to Plaintiff's article to Inmate Barrett. *Id.* at 4-5. Defendant asserts that Plaintiff is merely speculating about what Defendant Odom was "whispering" to Inmate Barrett about in the days leading up to the attack. *Id.* at 4.

After viewing all the evidence submitted in the light most favorable to Plaintiff, the Court finds there exist genuine issues of material fact with respect to Plaintiff's claim that Defendant Odom acted with deliberate indifference to his safety. In response to Defendant Odom's assertion that there is no evidence to support his claim, Plaintiff has submitted evidence showing that there are specific facts indicating a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324. In contrast to Defendant Odom's sole declaration, Plaintiff has submitted significant evidence that Defendant harbored racial animus towards Plaintiff. Several inmates' declarations corroborate Plaintiff's allegation that Defendant Odom continuously referred to him using derogatory racial slurs. *See supra* at 9. The inmates also corroborate Plaintiff's claim that Defendant Odom had a "wall of shame" in

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

his office, displaying prisoners' photographs and articles related to their crimes, including that of Plaintiff.  *Id.*  There is also evidence that Defendant Odom was ordered to take down his "wall of shame" by an associate warden.  *See supra* at 10.  Plaintiff's affidavit and the declaration of other inmates is evidence that Defendant Odom intended to make the facts of Plaintiff's capital crime known to other inmates to expose Plaintiff to threats and derision.  *Id.* at 3.  In contrast, Defendant Odom offers no corroborating testimony to bolster his declaration denying all of Plaintiff's allegations.

Furthermore, Plaintiff has satisfied the two-part test for deliberate indifference under *Lemire*, 726 F.3d at 1078.  First, the risk to Plaintiff was obvious.  Although Defendant Odom denies knowing that Inmate Barrett intended to attack Plaintiff on February 4, 2012, Plaintiff's evidence in opposition is sufficient to establish the inference that Defendant Odom's hostile behavior was intended to bring harm to Plaintiff.  Because it is commonly known that crimes against children are considered especially heinous even amongst inmates, a trier of fact could conclude that Defendant Odom knew of a substantial risk to Plaintiff from the very fact that the risk was obvious.  *See Foster*, 554 F.3d at 814.  Secondly, there is no reasonable justification for Defendant Odom's abusive behavior in targeting Plaintiff.  Lastly, with respect to actual awareness, Defendant Odom does not deny that he was aware that speaking of an inmate's case factors could expose him to danger.  Nor does Defendant Odom deny that he frequently spoke to Inmate Barrett during the weeks preceding the attack or that he spoke to Inmate Barrett about the specific facts of Plaintiff's case.  Accordingly, based on the evidence submitted by Plaintiff, the inference could be made that Defendant Odom was aware that speaking to Inmate Barrett about the particulars of Plaintiff's case would eventually incite him to violence against Plaintiff, even if he did not know exactly when that would occur.  And if he was aware of such a substantial risk of serious harm, then Defendant Odom was deliberately indifferent for failing to take reasonable steps to abate it despite that knowledge, *e.g.*, by stopping his abusive behavior or reporting Inmate Barrett's intent.  *See Farmer*, 511 U.S. at 842.  As

11

such, with respect to causation, Plaintiff's evidence is sufficient to raise an inference that Defendant Odom's actions in speaking openly and often of Plaintiff's crime contributed to Inmate Barrett's decision to attack Plaintiff.

Based on the foregoing, the Court finds Plaintiff has shown that there remain genuine issues of material fact to preclude summary judgment in favor of Defendant Odom with respect to Plaintiff's claim against him. *See Celotex Corp.*, 477 U.S. at 324. Accordingly, Defendant Odom is not entitled to judgment as a matter of law. *Id*.

### B.   <u>Qualified Immunity</u>

Defendant asserts in the alternative that he is entitled to qualified immunity which bars liability. Dkt. No. 237 at 15.

The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The rule of qualified immunity protects "'all but the plainly incompetent or those who knowingly violate the law;'" defendants can have a reasonable, but mistaken, belief about the facts or about what the law requires in any given situation. *Saucier v. Katz*, 533 U.S. 194, 202 (2001) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). "Therefore, regardless of whether the constitutional violation occurred, the [official] should prevail if the right asserted by the plaintiff was not 'clearly established' or the [official] could have reasonably believed that his particular conduct was lawful." *Romero v. Kitsap County*, 931 F.2d 624, 627 (9th Cir. 1991).

A right is clearly established if it were "sufficiently clear [at the time of the conduct at issue] that every reasonable official would have understood that what he is doing violates that right." *Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015). "The right must be settled law, meaning that it must be clearly established by controlling authority or a robust consensus of cases of persuasive authority." *Tuuamalemalo v. Greene*, 946 F.3d 471, 477 (9th Cir. 2019). If the law did not put the officer on notice that his conduct would be

United States District Court
Northern District of California

clearly unlawful, summary judgment based on qualified immunity is appropriate.  *Saucier*, 533 U.S. at 202.

A court considering a claim of qualified immunity must determine whether the plaintiff has alleged the deprivation of an actual constitutional right and whether such right was clearly established such that it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.  *See Pearson v. Callahan*, 555 U.S. 223 (2009) (overruling the sequence of the two-part test that required determination of a deprivation first and then whether such right was clearly established, as required by *Saucier*, 533 U.S. at 194); *Henry A.*, 678 F.3d at 1000 (qualified immunity analysis requiring (1) determining the contours of the clearly established right at the time of the challenged conduct and (2) examining whether a reasonable official would have understood that the challenged conduct violated such right).  The court may exercise its discretion in deciding which prong to address first, in light of the particular circumstances of each case.  *See Pearson*, 555 U.S. at 236 (noting that while the *Saucier* sequence is often appropriate and beneficial, it is no longer mandatory).  "[U]nder either prong, courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment," and must, as in other cases, view the evidence in the light most favorable to the non-movant.  *See Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014).

The qualified immunity inquiry is separate from the constitutional inquiry for a claim of deliberate indifference under the Eighth Amendment.  *Estate of Ford v. Caden*, 301 F.3d 1043, 1053 (9th Cir. 2002) (extending *Saucier* to Eighth Amendment claims).  A determination that there is a triable issue of fact as to whether defendants were deliberately indifferent does not necessarily preclude a finding of qualified immunity.  *Id.*  For a qualified immunity analysis, the court need not determine whether the facts alleged show that defendants acted with deliberate indifference.  *See Osolinski v. Kane*, 92 F.3d 934, 936 (9th Cir. 1996).  Rather, the court need only review the relevant law to determine whether, in light of clearly established principles at the time of the incident, the officials could have

reasonably believed their conduct was lawful.  *See id.* at 939.  It is possible for a prison official to know all of the facts alleged by plaintiff and to understand that he cannot recklessly disregard a substantial risk of harm to a prisoner, and yet to mistakenly, though reasonably, perceive that the risk of harm is not too high; such an official is entitled to qualified immunity.  *Estate of Ford*, 301 F.3d at 1049-50.

The plaintiff bears the burden of proving the existence of a "clearly established" right at the time of the allegedly impermissible conduct.  *Maraziti v. First Interstate Bank*, 953 F.2d 520, 523 (9th Cir. 1992).  The defendant bears the burden of establishing that his actions were reasonable, even if he violated the plaintiff's constitutional rights.  *White v. Pauly*, 137 S. Ct. 548, 552 (2017).

Viewing the evidence in the light most favorable to Plaintiff, the Court finds Defendant is not entitled to qualified immunity.  First of all, Plaintiff has clearly alleged the deprivation of an actual constitutional right, *i.e.*, an Eighth Amendment right to be protected from violence at the hand of others.  *See Valandingham*, 866 F.2d at 1138. Secondly, Defendant Odom has failed to establish that his conduct was reasonable. Viewing the evidence in the light most favorable to Plaintiff, Defendant Odom is alleged to have intentionally incited Inmate Barrett to attack Plaintiff by discussing the latter's heinous case factors which involved a child victim.  At the time of this alleged conduct, it was sufficiently clear that every reasonable official would have understood that he has a duty to protect prisoners from the violence at the hands of other prisoners.  *See Farmer*, 511 U.S. at 833; *see also id.* at 834, 837.  It thus would have been "clear to a reasonable officer that [his] conduct [of increasing the threat of harm to Plaintiff] was unlawful in the situation [Defendant Odom] confronted." *Saucier*, 533 U.S. at 202; *see also Valandingham*, 866 F.2d at 1138 (deliberately spreading rumor that prisoner is snitch may state claim for violation of right to be protected from violence while in state custody). Therefore, it cannot be said that a reasonable officer in Defendant Odom's position would have understood that it was lawful to spread knowledge about Plaintiff's underlying

14

conviction, which involved a child victim, knowing it was likely to subject Plaintiff to violence at the hand of other prisoners.  In other words, in light of clearly established principles at the time of the incident, it cannot be said that Defendant Odom could have reasonably believed that his conduct was lawful.  *See Osolinski*, 92 F.3d at 939. Furthermore, Defendant denies doing any of the alleged conduct, so it cannot even be argued that he acted with a mistaken belief that his conduct was reasonable.  *See Estate of Ford*, 301 F.3d at 1049-50.  Accordingly, Defendant Odom's motion based on qualified immunity is DENIED.

III.    **Referring Case to Settlement Proceedings**

The Court has established a Pro Se Prisoner Settlement Program under which certain prisoner civil rights cases may be referred to a neutral Magistrate Judge for settlement.  In light of the existence of triable issues of fact as to whether Defendants Odom and Anderson violated Plaintiff's rights under the Eighth Amendment, the Court finds the instant matter suitable for settlement proceedings.  Accordingly, the instant action will be referred to a neutral Magistrate Judge for mediation under the Pro Se Prisoner Settlement Program.

**CONCLUSION**

For the reasons stated above, the Court orders as follows:

1.      Defendant Odom's motion for summary judgment is **DENIED**.  Dkt. No. 237.  Plaintiff's Eighth Amendment deliberate indifference to his safety claim remains against both Defendants Odom and Anderson.  *See supra* at 2, fn. 1.

2.      The instant case is **REFERRED** to Judge Robert M. Illman pursuant to the Pro Se Prisoner Settlement Program for settlement proceedings on the claim in this action against Defendants Odom and Anderson, as described above.  The proceedings shall take place **within ninety (90) days** of the filing date of this order.  Judge Illman shall coordinate a time and date for a settlement conference with all interested parties or their

1    representatives and, within ten (10) days after the conclusion of the settlement

2    proceedings, file with the court a report regarding the prisoner settlement proceedings.

3         3.    Other than the settlement proceedings ordered herein, and any matters

4    Magistrate Judge Illman deems necessary to conduct such proceedings, this action is

5    hereby **STAYED** until further order by the court following the resolution of the settlement

6    proceedings.

7         4.    The Clerk shall send a copy of this order to Magistrate Judge Illman in

8    Eureka, California.

9         This order terminates Docket No. 237.

10        **IT IS SO ORDERED.**

11   **Dated:  __March 1, 2022_____**

                                              BETH LABSON FREEMAN
12                                            United States District Judge

Order Denying Def.'s MSJ; Refer to Settlement
PRO-SE\BLF\CR.14\00166Panah_deny-msj&refer.Illman

United States District Court
Northern District of California

16